UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                             :
                                                   :           Chapter 11
AMPAL-AMERICAN ISRAEL CORPORATION,  :           Case No. 12-13689 (SMB)
                                                   :
                          Debtor.                  :
-------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER DIRECTING
## THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

**A P P E A R A N C E S:**

BROWN RUDNICK LLP
*Attorneys for the Official*
  *Committee of Unsecured Creditors*
7 Times Square
New York, NY 10036

    Edward S. Weisfelner, Esq.
    Daniel J. Saval, Esq.
        Of Counsel

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Attorneys for Yosef A. Maiman and Merhav (M.N.F.) Limited*
1633 Broadway
New York, New York 10019

    David M. Friedman, Esq.
    Daniel A. Fliman, Esq.
    Nii-Amar Amamoo, Esq.
        Of Counsel

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
*Attorneys for the Ampal Non-Independent*
  *Officers and Directors*
900 Third Avenue, 16th Floor
New York, NY 10022

    Michael D. Sirota, Esq.
    Steven L. Klepper, Esq.
        Of Counsel

CLARICK GUERON REISBAUM LLP
*Attorneys for the Ampal Independent Directors*
40 West 25th Street, 12th Floor
New York, NY 10010

>Nicole Gueron, Esq.
>Isaac B. Zaur, Esq.
>>Of Counsel

TRACY HOPE DAVIS
United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004

>Andrew D. Velez-Rivera, Esq.
>>Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

This case involves numerous disputes regarding, *inter alia*, the control of the debtor, Ampal-American Israel Corporation ("Ampal" or the "Debtor"), pending the confirmation of the plan. The warring factions include the Official Committee of Unsecured Creditors (the "Committee"), Yosef Maiman, Ampal's controlling shareholder, president and chairman of its board of directors (the "Board"), the other seven directors and certain non-director officers. The Committee now asks me to approve a corporate governance stipulation that Maiman and the United States Trustee oppose, and the directors support without much fervor. For the reasons that follow, the Court declines to approve the stipulation and directs the United States Trustee to appoint a chapter 11 trustee.

## BACKGROUND

Ampal is a public New York corporation founded in 1942. It does not operate, and is primarily engaged in the business of acquiring interests in businesses located in the State of Israel or that are Israel-related. Ampal's subsidiaries have not filed for chapter 11 protection in the United States or commenced restructuring proceedings outside of the United States.

2

Maiman, the president and chairman, directly or indirectly owns or controls approximately 62% of Ampal's common stock.  Excluding Maiman, there are four non-independent directors and three independent directors.  These seven will be referred to collectively as the Directors.  Ampal has no secured debt; its principal obligations consist of three series of debentures which currently aggregate approximately $235 million.

Ampal filed this chapter 11 petition on August 29, 2012.  The United States Trustee appointed a Committee consisting of the trustees of the three series of debentures.  Following a good deal of skirmishing between the Debtor and the Committee, the Committee proposed a plan, and the Court approved the Committee's modified disclosure statement by order dated February 26, 2013.  No confirmation hearing has been scheduled because the solicitation process cannot begin until the Israeli authorities grant permission to solicit acceptances and rejections in Israel.  The proposed plan is a complicated document, but for present purposes, it is sufficient to say that while existing equity will retain some of its economic interest in Ampal, the majority of the economic interest and control of the company will pass to the creditors (*i.e.*, the debenture holders) who will become preferred shareholders.

This case has been marked by strife between the Committee on the one hand and the Debtor and Maiman on the other.  The Directors have been drawn into the battle.  All sides have traded charges which are unnecessary to detail.  One recent example will suffice.  By order dated January 22, 2013, the Court awarded interim fees to the Committee's counsel (Brown Rudnick LLP) in the approximate amount of $634,000 and expenses in the approximate amount of $16,000.  By separate order also dated January 22, 2013, the Court awarded the Debtor's counsel (Bryan Cave LLP) approximately $700,000 in interim fees and $10,000 in interim expenses.

3

After the awards were entered, Ampal's counsel advised Brown Rudnick that the Debtor's board had only authorized payment of $250,000 to each firm. According to the Debtor, it did not have the cash flow to pay the entire awards. On January 31, 2013, Brown Rudnick submitted a proposed order to show cause by which it sought to hold the Directors and Maiman in contempt, compel the immediate payment of the interim award and reimburse Brown Rudnick's reasonable costs and expenses, including counsel's fees. The Court interlineated, somewhat inartfully but clear to everyone concerned, that it would also consider the appointment of a chapter 11 trustee. (*See Order to Show Cause*, signed Jan. 31, 2013 (ECF Doc. # 167).)

All of the Directors as well as Maiman filed objections to Brown Rudnick's motion. The Directors also argued for the appointment of a chapter 11 trustee which would allow them to resign immediately and extricate themselves from what they perceived to be an impossible position. Apparently seeking to avert this result, the debenture holders formed a selection committee for the purpose of locating suitable candidates to recommend to the Debtor as additional directors and as Chief Restructuring Officer (the "CRO"). The selection committee chose Shlomi Kelsi as CRO and Moshe Ingbir and Kelsi as their candidates for directors (collectively, the "Replacement Directors.") The Court has received their *curricula vitae*. Kelsi is a CPA in Israel, Ingbir is a lawyer in Israel, and both appear to have substantial experience in the banking and financial services industry in Israel.

These various efforts led to a stipulation (the "Original Stipulation") among the Committee, the Debtor, the Directors and certain non-director officers (who, collectively with the Directors, are referred to as the "Individual Parties"). Maiman did not join. The Original Stipulation was intended to resolve the fee dispute as well as the corporate governance issues. Among other things, (1) the Debtor agreed to provide the Committee and its counsel with cash

4

flow forecasts on a regular basis, (2) the Individual Parties would resign as directors and/or officers within five days of the effective date of the stipulation,[1] (3) prior to their resignation the Directors would take the necessary action to appoint Shlomi Kelsi as CRO and appoint Moshe Ingbir and Kelsi as Replacement Directors, and (4) then reduce the number of directors to three – Ingbir, Kelsi and Maiman. The Original Stipulation further stated that the CRO and the new directors would be Exculpated Parties under an amended version of the Committee's plan.

When presented with the Original Stipulation, the Court questioned the propriety of the corporate governance activities it was being asked to approve, and requested briefing. Toward that end, the Court signed an order to show cause, scheduled another hearing and directed that briefs be filed on the issues identified by the Court. (*See Order to Show Cause*, signed Mar. 20, 2013 (ECF Doc. # 227).) Shortly thereafter, the Committee, the Debtor, the Individual Parties and Maiman entered into a stipulation, which the Court so-ordered, that resolved the fee payment and cash flow reporting issues and withdrew the request for contempt and other sanctions. This still left the corporate governance issues.

At around the time that the briefs requested by the Court were due, the parties (other than Maiman) entered into a revised stipulation (the "Revised Stipulation") in an attempt to resolve the Court's concerns with the corporate governance aspects of the Original Stipulation.[2] According to the Committee, I am no longer being asked to approve the corporate governance actions because they have already occurred. The historical information in the Revised

---

[1] The Original Stipulation provided that Erez Meltzer was not resigning from his position(s) with Gadot Chemical Tankers & Terminals Ltd. and its subsidiaries.

[2] A copy of the Revised Stipulation is annexed as Exhibit A to the *Brief of the Official Committee of Unsecured Creditors of Ampal-American Israel Corporation in Response to the Court's Order to Show Cause*, dated March 29, 2013 ("*Committee's Brief*") (ECF Doc. # 232).

5

Stipulation states the Individual Parties have tendered their resignations effective on the earlier of the effective date of the stipulation or April 9, 2013; the Board has approved the appointment of Kelsi as CRO and Ingbir and Kelsi as "Replacement Directors;" and the Board has reduced the number of Directors to three, as a result of which the new Board will consist of the Replacement Directors and Maiman. Notwithstanding the Committee's characterization of the Revised Stipulation, its effectiveness depends on the Court so-ordering it. Thus, the Revised Stipulation substitutes *ex post* approval for *ex ante* approval, but still requires Court approval.

In addition, and among other things, the Revised Stipulation provides that the Committee will modify its plan to include the Individual Parties as Exculpated Parties for actions taken or omitted to be taken in good faith from March 19, 2013 through the resignation date with respect to a variety of actions, including all of the corporate governance actions reflected in the Revised Stipulation. (Revised Stipulation at ¶ 2.) The Individual Parties agree to consult with counsel to the Committee and the Debtor prior to the Debtor or any of its controlled subsidiaries or affiliates taking any action outside of the ordinary course of business. (*Id.* at ¶ 3.) The Directors will not approve or permit an amendment to the Debtor's or its subsidiaries' governance documents, other than the amendments to the by-laws contemplated in the Revised Stipulation, without the prior written consent of the Committee. (*Id.* at ¶ 6.) Finally, if the Court does not approve the Revised Stipulation by April 9, 2013, the Committee will not object to the appointment of the chapter 11 trustee provided that no party will object to the appointment of Kelsi as the chapter 11 trustee. (*Id.* at ¶ 8).

The Committee contends that the Revised Stipulation offers a better alternative to the appointment of a chapter 11 trustee. The appointment of a chapter 11 trustee will add to the

administrative insolvency of the estate.[3] (*See Committee's Brief* at ¶ 8.) The Committee also questions a chapter 11 trustee's ability to immediately and effectively operate Israeli businesses given their emergent needs. Finally, Maiman has conflicts with the Debtor,[4] and the appointment of Kelsi and Ingbir will strip him of control over the Debtor and its operating subsidiaries.

In addition to the Committee, three parties submitted pleadings in response to the Court's order to show cause. Not surprisingly, Maiman opposes the Revised Stipulation. He argues, in the main, that the Original Stipulation (and hence, the Revised Stipulation), strips him of his rights as the controlling shareholder of Ampal with the result that he will call a special meeting and remove the Replacement Directors.[5] He also contends that the selection of the Replacement Directors did not comply with Ampal's by-laws. Finally he argues that a chapter 11 trustee should be appointed to ensure the independence and disinterestedness of the Debtor's management. (*See Objection of Yosef A. Maiman and the Controlling Shareholders to Stipulation and Agreed Order Concerning Changes to the Debtor's Corporate Governance*, Mar. 29, 2013 (ECF Doc. # 231).)

The United States Trustee objects to the Revised Stipulation contending that it circumvents the appointment of a chapter 11 trustee which is the appropriate way to resolve the

---

[3]    The Committee will have to fund these increased administrative expenses in order to confirm its plan.

[4]    By Stipulation and Agreed Order, dated Jan. 31, 2013 (ECF Doc. # 168), the Committee was granted standing and authority to bring proceedings against Maiman on behalf of a subsidiary of the Debtor to enforce a $20 million guarantee.

[5]    In reply, the Committee confidently asserts that Maiman lacks the money to meet the requirements imposed on a public corporation, but even if he had the money, he could never accomplish anything before the effective date of the plan.

issues. (*See United States Trustee's Objection to Proposed Stipulation and Agreed Order, and Response to Order to Show Cause*, dated Mar. 29, 2013 (ECF Doc. # 234).)

Troubling is the response provided by the Individual Parties, who are parties to the Revised Stipulation. (*See Memorandum of Certain Individual Directors and Officers of Ampal-American Israel Corporation in Support of Application by Unsecured Creditors' Committee for Entry Of Stipulation Concerning Governance Transition*, dated Mar. 29, 2013 (ECF Doc. # 233).) They begin by stating that they find themselves in an "untenable position" as "fiduciaries of an entity paralyzed by discord between its controlling shareholder and CEO and the [Committee] whose eventual control of the Debtor is now a foregone conclusion." (*Id.* at ¶ 1.) They have been "caught between the warring camps" of the Committee and Maiman. (*Id.* at ¶ 4.) The Committee has threatened them with litigation whenever the Committee believed that they "were slow to accommodate the Committee's views on how the Debtor should be governed." (*Id.* at ¶ 5.) The Committee has attempted to bully the Individual Parties into "precipitous action," (*id.* at ¶ 6), and has brought contempt proceedings against the Directors when they failed to satisfy the Brown Rudnick fee award only eight days after it was entered. (*Id.* at ¶ 7.)

They also state that the Debtor has reached a crisis point. It is in a "precarious financial situation" that "requires leadership that can exercise unfettered business judgment; this has become near-impossible in the present environment of threats and discord. The present situation cannot continue." (*Id at* ¶ 1.) "To exit the impossible position," they have also submitted their resignations, effective upon the earlier of this Court's approval of the proposed CRO or April 9, 2013. (*Id.* at ¶ 2.) In order to provide for an orderly transition, they have "agreed to

accommodate the Committee's approach and resolve the Committee's baseless contempt motion concerning the payment of counsel fees and certain other matters." (*Id.* at ¶ 10.)

The Directors clearly imply that they acceded to the selection of the Committee's candidates as Replacement Directors and CRO. They did not independently verify the credentials of Ingbir and Kelsi other than to review their *curricula vitae*, although they have no reason to doubt their suitability for their proposed roles. (*Id.* at ¶ 19.) Nevertheless, they did not conduct an independent search for, and vetting of, candidates for the Board. (*Id.*) "Rather, the Board's action was taken at the urging and upon the recommendation of the Committee and upon the advice of the Debtor's counsel at Bryan Cave." (*Id.*)

## DISCUSSION

As a rule, a bankruptcy court will not interfere in the corporate governance of a debtor absent a "clear abuse." *See Manville Corp. v. Equity Security Holders Committee (In re Johns-Manville Corp.*), 801 F.2d 60, 64 (2d Cir. 1986); *In re Potter Instrument Co.,* 593 F.2d 470, 475 (2d Cir. 1979). While most of the cases, including *Manville*, involved efforts to prevent shareholders from exercising their rights, the broader principle applies to the selection of the directors to manage the corporation. *See In re 1031 Tax Group, LLC,* No. 07-11448 (MG), 2007 WL 2085384, at *3 n. 4 (Bankr. S.D.N.Y. 2007) ("Sections 105(a) and 1107(a) may empower a bankruptcy court to prevent a debtor from removing a manager, officer or director, but they do not provide the Court with an independent power of appointment [and the Bankruptcy Code] leaves state corporate governance law largely untouched, the primary exception being the power to order the appointment of a chapter 11 trustee pursuant to § 1104.") This does not mean that a bankruptcy court should automatically abstain from approving *consensual* resolutions to governance disputes that avoid the time and expense of litigation or the need to appoint a chapter

11 trustee. Bankruptcy courts should not, however, take sides in corporate governance disputes or approve the selection of one slate of directors over a competing slate.

Where corporate governance disputes spill over into areas that affect the debtor's ability to manage its affairs or conduct its business, the Bankruptcy Code provides a clear remedy. Bankruptcy Code section 1104 authorizes a bankruptcy court to appoint a chapter 11 trustee for cause, 11 U. S. C. §1104(a)(1), or "if such appointment is in the interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. §1104(a)(2). In determining whether a trustee should be appointed under section 1104(a)(2), "in the interests of creditors," courts "look to the practical realities and necessities." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (internal quotation omitted). Although decisions have articulated certain factors to guide the court, *see id.* ("Among the factors considered are (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence–or lack thereof–of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment." (citations omitted)), the standard is a flexible one. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989); *Ionosphere Clubs, Inc.*, 113 B.R. at 168; *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 527 n.11 (Bankr. E.D.N.Y. 1989) ("[T]he factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion."). Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no "cause" exists. *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998); *Sharon Steel Corp.*, 871 F.2d at 1226; *Ionosphere Clubs, Inc.*, 113 B.R. at 168. The Court has broad discretion, *Sharon Steel, Corp.*, 871 F.2d at 1226, and at bottom, "it seems

that § 1104(a)(2) reflects 'the practical reality that a trustee is needed.'" *V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 527 n.11 (quoting *Sharon Steel Corp.*, 86 B.R. 455, 458 (Bankr. W.D. Pa.1988)).

With this background, I turn to the Revised Stipulation. I assume, without deciding, that the Board satisfied the requirements under Ampal's by-laws and New York law when it resolved to increase the number of directors, selected Kelsi and Ingbir as Replacement Directors, and reduced the number of directors to three.[6] I nevertheless decline to approve the Revised Stipulation for two primary reasons. First, it purports to resolve a corporate governance dispute among Maiman, the Directors and the Committee, without Maiman's consent. In substance, the Committee is asking me to side with them, and approve a governance change that they have orchestrated arguably in derogation of Maiman's rights as a controlling shareholder of Ampal. The fact that time and expense may prevent Maiman from vindicating his rights is hardly a reason for ignoring them. The Revised Stipulation, if approved, will not resolve anything and will lead to more litigation.

Second, the Board's process in selecting Kelsi and Ingbir as Replacement Directors gives me pause. My comment is not intended to impugn their integrity or suitability as directors. Rather, the Directors' opposition implies that but for the pressures brought by the Committee, they would not have selected replacement directors at all or would have followed a different selection process and done more. In addition, the Directors will obtain personal benefits under the Revised Stipulation through the plan exculpation proffered by the Committee. While I have

---

[6] The corporate governance actions identified in the Revised Stipulation require either resolutions or by-law amendments. The Committee advised me at the hearing that the Board had effected the changes through resolutions, but neither the resolutions nor the meeting minutes reflecting those resolutions have been supplied to the Court.

11

no reason to doubt their devotion to their fiduciary duties, the fact remains that the Directors have personal interests in seeing that the Revised Stipulation is approved.

Kelsi's selection as CRO is less of a problem.  A debtor will frequently retain a CRO, subject to court order, at the insistence and with the approval of creditors, usually a secured creditor.  Kelsi appears to be well qualified, and although he was selected by the creditors, he doubtless understands that a CRO owes fiduciary duties to the estate.  Furthermore, the debtor does not operate; its subsidiaries and affiliates operate in Israel and elsewhere, and it is important to have someone on the ground that can run the businesses.  However, it is not clear whether his selection as CRO is contingent on my approval of the Revised Stipulation and intertwined with and inseparable from the other corporate governance issues and promised exculpation, or can stand alone.  In other words, it is not clear that the Board (*i.e.,* the Directors) selected him as CRO unconditionally, or only on the condition that I approve the Revised Stipulation.

Having concluded that I will not approve the Revised Stipulation, the only alternative is to appoint an operating trustee.  Maiman and the United States Trustee urge me to do it now, the Individual Parties have no objection if I do it now, and the Revised Stipulation provides that if I do not approve it by April 9, 2013, the Committee will not object to the appointment of the chapter 11 trustee.  I recognize that this will add a layer of administrative expense that will have to be paid on the effective date of the plan, but it is inevitable because Ampal will be without any officers or directors (except for Maiman who, as stated above, is conflicted) come April 9.

Accordingly, the United States Trustee is directed to appoint an operating trustee pursuant to Bankruptcy Code §1104(a)(2).

So ordered.

Dated: New York, New York
April 5, 2013

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge