HEARING DATE: NOVEMBER 14, 2013
HEARING TIME: 10:00 A.M.

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Mishmeret-Trust Company*
*Services Ltd and Shapira & Co.*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
In re:                                             :
                                                   :   Chapter 11
AMPAL-AMERICAN ISRAEL                              :
CORPORATION,                                        :   Case No.: 12-13689 (SMB)
                                                   :
                          Debtor.                  :
-------------------------------------------------------------------- x

**OBJECTION OF MISHMERET-TRUST COMPANY SERVICES LTD AND
SHAPIRA & CO. TO MOTION TO (I) ENFORCE THE AUTOMATIC STAY AND,
IF NECESSARY, CONFER STANDING ON THE MOVANTS RELATING
THERETO AND (II) TO AWARD DAMAGES FOR WILLFUL STAY VIOLATIONS**

TO:   THE HONORABLE STUART M. BERNSTEIN,
        UNITED STATES BANKRUPTCY JUDGE

Mishmeret-Trust Company Services Ltd, the Trustee (the "Series C Trustee") of the

Debenture Holders (Series C) (the "Series C Bondholders") of Ampal-American Israel

Corporation (the "Debtor") and Shapira & Co. ("Shapira", together with the Series C Trustee, the

"Respondents") respectfully submit this objection to the motion of Yosef Maiman, Irit Eluz,

Yoram Firon, Amit Mantsur, Erez Meltzer, Leo Malamud, Sabih Saylan, Revital Degani, Daniel

Vaknin, and Menachem Morag (collectively, the "Movants") (i) to enforce the automatic stay

and if necessary, confer standing on the Movants relating thereto, (ii) to award damages for

willful stay violations by the Series C Trustee and Shapira, and (iii) to direct that the Trustee

terminate Shapira as counsel for the Debtor's non-debtor subsidiaries (the "Motion"). In support

of the Objection, the Respondents respectfully state as follows:

## PRELIMINARY STATEMENT

The Motion is not well founded.  The Movants, all of whom are non-debtor individuals, are essentially requesting that this Court find that the mere delivery of a letter, dated October 4, 2013, by the Series A and C Trustees to Movants is a violation of the automatic stay. It is black letter law, however, that the automatic stay under section 362 of the Bankruptcy Code only stays actions against a debtor or "property of the estate".  First, the Movants are not "debtors" and therefore the letter and demand therein were not acts against a debtor, such that the automatic stay was violated.  Second, the letter which raises a host of potential claims also does not implicate "property of the estate" because (i) some of the possible causes of action may be viewed as direct/personal claims of the bondholders, and (ii) even if some claims raised in the letter in fact belong to the estate, no formal complaint by the indenture trustees has been filed and no action has been take to exert control over "property of the estate".

Another flaw in the Movants position is that they are not the parties that have standing to assert that the letter constituted a violation of the automatic stay that harmed the Debtor's estate.  Yet, solely on the premise that the claims raised in the letter may be causes of action belonging to the Chapter 7 Trustee, the Movants claim that the Respondents have violated the stay.  Meanwhile, the Chapter 7 Trustee, the party that can rightfully claim that there has been an automatic stay violation has indicated that he does not view the letter as a violation of the automatic stay, but merely an effort to preserve rights under a directors and officers insurance policy.

The letter sent by the Series A and C Trustees to the Movants was merely intended to preserve claims under the Debtor's directors and officers policy, rather than intended to pursue claims that actually belong to the Chapter 7 Trustee.  No present action has been

commenced against the Movants by the indenture trustees and the Movants do not intend to usurp control over any estate causes of action.    Under the circumstances, there has been no violation of the automatic stay and to the extent that the mere sending of a letter to a non-debtor can be construed to be a violation of the automatic stay, such violation was inadvertent, and not "willful" so as to warrant any damages or sanctions whatsoever.  On the other hand, while it is very clear that there could be no sanctions or damages imposed on the Respondents under the circumstances, ironically, this Court may wish to consider whether the Movants, by their Motion, have presented frivolous arguments to this Court, which may justify sanctions and the payment of legal fees to the Respondents.

## **RELEVANT BACKGROUND**

1.      On August 29, 2012 (the "Petition Date"), the Debtor filed a petition seeking relief under Chapter 11 of the Bankruptcy Code.

2.      On May 3, 2013, Alan Nisselson was appointed as the interim Chapter 7 Trustee. Thereafter, on May 20, 2013, after an undisputed election, Alex Spizz was elected as the permanent Chapter 7 Trustee in the Debtor's case (the "Chapter 7 Trustee").

3.      On October 4, 2013, the Series C Trustee, together with the trustee for the Series A Debentures (the "Series A Trustee") delivered a letter to the Movants, who are each former officers and directors of the Debtor and non-debtor subsidiaries to advise them that their actions and conduct in their roles as officers and directors may expose them to damages in favor of the Series A and Series C Bondholders and their respective trustees (the "October 4th Letter").  The Series C Trustee advised the Movants that there were possible causes of action that could be asserted against them.  Thereafter, in an effort to preserve claims under a certain directors and officers insurance policy (the "D&O Policy"), on behalf of the Series A Trustee and Series C Trustee on behalf of the Series C Trustee sent the insurance carrier a one page letter on October

4, 2013 preserving claims that may exist against the Movants.  <u>See</u> **Exhibit A**.  A copy of the

relevant pages of the D&O Policy requiring notification of claims by October 5, 2013 is annexed

to this Motion as **Exhibit B**.

4.      According to the Motion, on October 11, 2013, the Movants contacted the

Chapter 7 Trustee and claimed that the October 4th Letter was a violation of the stay.  Upon

receipt, as per the Motion, the Chapter 7 Trustee appropriately responded that he did not believe

there was any violation of the stay by virtue of the October 4th Letter sent to non-debtors,

especially since the Chapter 7 Trustee viewed such letter as an effort to preserve claims under the

D&O Policy.  The Chapter 7 Trustee also advised Movants that he had no intention of allowing

the Series C Trustee or others to prosecute claims that belong to the Debtor's estate.  Despite this

correspondence from the Series C Trustee that indicated that the estate was not harmed in any

way by the October 4th Letter and that he alone would be pursuing claims of the Debtor's estate,

the Movants decided to file the Motion anyway.  To make matters worse, before filing this

Motion, the Movants did not contact the Respondents with respect to their position, objections or

arguments pertaining to the October 4th Letter, thereby foreclosing any opportunity between the

parties to resolve any objections or arguments before wasteful litigation before this Court.

<u>**THE MOTION SHOULD BE DENIED IN ITS ENTIRETY**</u>

5.      The Motion is without merit and should be denied on all counts for the reasons

that follow.

**A.  <u>The Automatic Stay Only Applies To Debtors And Property of the Estate.</u>**

6.      It is black letter law that the automatic stay is not intended to protect a non-debtor

from causes of action that may be commenced against them.  <u>See</u> <u>Sav-A-Trip v. Belfort</u>, 164

F.3d 1137 (8th Cir. 1999) (as a general rule, the automatic stay applies only to the debtor and not

to third parties, even if the third parties are codefendants with the debtor in a lawsuit); <u>see also</u>

<u>Lukas, Nace, Guiterrez & Sachs, Chartered v. Havens</u>, 245 B.R. 190 (D.D.C. 2000) (same).  The Motion conveniently fails to point out that the Movants are not debtors here.  Therefore, the October 4th Letter that was directed to the Movants cannot constitute a violation of the automatic stay that is in place to stay actions commenced against a debtor only.

7.    The Movants rely on section 362(a)(3) to support their position that the stay has been violated by the mere delivery of a letter to a non-debtor party.  Section 362(a)(3) of the Bankruptcy Code provides, in relevant part, that "a petition filed under section 301…of this title…operates as a stay, applicable to all entities, of…any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate".

8.    The Movants argue that the claims alleged in the October 4th Letter are possible causes of action that belong to the estate such that they are "property of the estate" as that phrase is defined under section 541 of the Bankruptcy Code and as used in section 362(a)(3).  However, there has been no determination by this Court or any other court that all of the possible causes of action highlighted in the October 4th Letter belong to the Chapter 7 Trustee or to other creditors or parties in interest harmed by the Movants' conduct.[1]  The Respondents have advised the Chapter 7 Trustee that they have no interest in pursuing estate claims that the Chapter 7 Trustee has the right to pursue against Movants.  However, as Judge Posner pointed out in <u>Steinberg v. Buczynski</u>, 40 F.3d 890, 893 (7th Cir. 1994), "when a third party has injured not the bankrupt corporation itself, but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party.  He has no interest in the suit."  Here, the Respondents will coordinate

---

[1] Under Israeli law, issuers and their directors, CEO and the controlling shareholder principals making misrepresentations to the bond market concerning the terms of a bond in a prospectus or company report, notice of document may become civilly liable and face criminal prosecution.  <u>See</u> Securities Law, 1968, Sections 31 - 34 (liability for misrepresentation as to terms of a bond in a prospectus); <u>see also</u> Israeli Securities Law, 1968, Sections 38b and 38c (liability and damages for misrepresentation as to terms of a bond in company report, notice or document).  Also, under Israeli Torts Law, acts and omissions by directors and officers toward third parties in violation of their personal duties of care of fiduciary duties toward such third parties create independent and direct causes of action that may be raised by third parties against directors and officers.

with the Chapter 7 Trustee to clarify which claims are estate claims and belong to the Chapter 7

Trustee and which claims are "personal" and belong to the Series C or A Trustees so that the

Movants are pursued by the appropriate parties at all times.

9.      The cases cited by the Movants in the Motion help demonstrate the fallacy of their

arguments.  In paragraph 28 of the Motion, the Movants cite to a litany of cases in an attempt to

support the allegation in paragraph 27 that the October 4th Letter's demand for payment from the

non-debtors is a violation of the automatic stay.  Yet, each of the cases cited by the Movants

makes clear that the demands (including letters and phone calls) that were viewed as violations

of the automatic stay were all made on the <u>debtor</u>, not a non-debtor.  <u>See</u> <u>In re Enron Corp.</u>, 300

B.R. 201, 212 (Bankr. S.D.N.Y. 2003); <u>In re Connor</u>, 366 B.R. 133, 136 (Bankr. D. Haw. 2007);

<u>In re Dennison</u>, 321 B.R. 378, 384 (Bankr. D. Conn. 2005).  Likewise, the Movants' arguments

that a mere demand letter is the equivalent of an actual complaint should fall on deaf ears.  The

fact is that there has been no harm to the Movants from receipt of the October 4th Letter, which

as stated was sent to preserve claims under the D&O Policy.  Any "demand" was harmless to the

estate, and in fact the October 4th Letter, coupled with a separate letter to the insurance carrier,

was designed to preserve claims for the estate and all other parties.

10.      For all of the foregoing reasons, the delivery of the October 4th Letter to non-

debtor individuals was not a violation of the automatic stay.

**B.  The Movants Have No Standing To Enforce the
    Automatic Stay On Behalf of the Chapter 7 Trustee**

11.      Even if the October 4th Letter could somehow be viewed by this Court as a

violation of the automatic stay, it is the Debtor, or in this case, the Chapter 7 Trustee, that has the

right to seek to enforce the automatic stay in order to protect the Debtor's estate.  In this case, as

demonstrated, the Chapter 7 Trustee's position is that there has been no automatic stay violation

and that he will pursue estate causes of action at the appropriate time.  Thus, there is no need for

this Court to provide standing to the Movants to enforce the automatic stay. If the Series C

Trustee actually received D&O proceeds to the detriment of the estate or commenced an action

against the Movants involving property of the estate, then perhaps some colorable argument

could be made to this Court. However, here, there has been no action concerning property of the

estate that is pending that is causing harm to the estate and the Series C Trustee has not yet

received any insurance proceeds to the detriment of the estate. Therefore, there is really nothing

that can actually be gained by giving the Movants standing to enforce the automatic stay.

### C. The Movants Are Not Entitled To An Award of Damages, Costs, and Fees

12.     In another blatant misinterpretation of the law, the Movants cite to section

362(k)(1) for the proposition that the non-debtors here are entitled to damages for some alleged

violation of the automatic stay. Section 362(k)(1) states that "an individual injured by any

willful violation of a stay provided by this section shall recover damages, including costs and

attorneys' fees, and in appropriate circumstances, may recover punitive damages". The Movants

go on to state that since they are "individuals" that they fall within the strictures of 362(k)(1).

This is an unbelievable assertion. The use of the word "individual" in Section 362(k)(1) is meant

to provide a remedy for stay violations to individual debtors, as distinct from corporate debtors.

See In re Chategayugay Corp., 920 F.2d 183 (2d Cir. 1993) (the remedy under section 362(k) is

not available to corporate debtors and instead is limited to debtors that are natural persons). This

section of the Code is simply not meant to provide a remedy to non-debtor individuals against

third party creditors. Furthermore, any potential damage as a result of the October 4th Letter was

suffered by the bankruptcy estate and the Movants have no standing to seek damages. See

Havelock v. Taxel (In re Pace), 159 B.R. 890, 906 (B.A.P. 9th Cir. 1993). It is noteworthy that

none of the Movants' cases in support of their improper request for damages involves a non-

debtor's request for damages relating to a purported violation of the automatic stay.

13.    The fact is that other than possibly some hurt feelings that the non-debtor Movants may have regarding the receipt of a letter that merely highlights their unlawful conduct, the Respondents have simply not caused any harm to the non-debtor Movants or to the estate in order to warrant the relief requested.  See e.g. Aiello v. Providence Fin. Corp., 239 F.3d 876 (7th Cir. 2001) (a chapter 7 debtor whose only evidence of injury is an affidavit stating that, upon receipt of a creditor's threatening letter, she cried, felt nauseous and frightened, and quarreled with her spouse does not have an emotional injury compensable under section 362(h) [redesignated as section 362(k)(1) in 2005] because there is no allegation of financial injury).  It is very important to note that before the Motion was filed, there was no effort by the Movants to contact the Respondents to request clarifications regarding the purpose of the October 4th Letter or otherwise object to the October 4th Letter.

14.    This Court should view this entire Motion for what it is: an attempt by former officers and directors to try to protect themselves from meritorious lawsuits that will most certainly be pursued against them relating to their unlawful conduct which caused significant damage to public bondholders in Israel that have suffered incredible losses.  Against that backdrop, these Movants have filed a frivolous Motion in this Court seeking damages for alleged violations of the stay, thereby causing the Respondents to waste more money and time defending against such a frivolous endeavor.  This conduct by the Movants cannot withstand scrutiny with this Court.  As such, the Respondents respectfully request that the Court consider sanctions against Movants equal to the legal fees that were required in preparing this Objection and argument in Court.  The Respondents are convinced that unless this Court authorizes sanctions against the Movants for their continuous frivolous positions that waste estate resources and the resources of the Series C Trustee, the Movants' conduct will continue unabated.

**D. Termination of Shapira & Co. Firm As Counsel
to Non-Debtor Subsidiaries Is Inappropriate**

15.    The Movants' request that this Court compel the Trustee to terminate the firm of

Shapira & Co. as counsel to the Debtor's non-debtor subsidiaries is simply improper.  Notably,

the Movants have not provided any case law to support their inappropriate request.  As an initial

matter, as the Court may recall, at a prior hearing in this case, the Court noted that the non-debtor

subsidiaries were not required to seek the Court's permission for retention under section 327 of

the Bankruptcy Code since these subsidiaries were no-debtors.  Similarly, if this Court cannot

approve retention of non-debtors, it is very questionable that this Court would have jurisdiction

to terminate counsel retained by non-debtors.

16.    If, on the other hand, the Court determined that it maintains jurisdiction to compel

the Trustee to terminate the retention of a law firm retained by a non-debtor, Shapira respectfully

submits that this type of severe sanction of disqualifying counsel is very rare "because

disqualification interferes with the attorney-client relationship and is at odds with a client's right

to select counsel of his or her choosing."  See GSI Commerce Solutions, Inc. v. Baby-Center,

L.L.C., 618 F.3d 204, 209 (2d Cir. 2010).   "Courts scrutinize motions to disqualify an

adversary's counsel with special care because of the obvious potential for abuse."  See In re

Persaud, 467 B.R. 26, 37 (Bankr. E.D.N.Y. 2012).

17.    Aside from the obvious jurisdictional infirmities and the fact that disqualification

of counsel is rare, there simply is no basis that has been provided which would justify

disqualification of Shapira as counsel to non-debtor subsidiaries.  Shapira's actions in placing the

D&O carrier on notice of potential claims as required by the D&O Policy for the benefit of all

parties, including the Debtor and its estate, as well as the former officers and directors, should be

applauded as all parties would seem to benefit from preserving insurance rights.  The Court

should not lose sight of why the Movants included this improper disqualification request in their

frivolous Motion. It is because the Movants are well aware of their bad conduct and the Movants realize that Shapira is very well positioned to pursue appropriate judgments against them. Unfortunately, these tricks and scare tactics aimed at intimating their adversary's law firm will not work and only further embolden the Respondents' efforts to pursue the Movants (in coordination with the Chapter 7 Trustee) for their wrongful conduct.

**WHEREFORE**, it is respectfully requested that the Court deny the Motion in its entirety, grant the Respondents legal fees in connection with this Objection, and grant such other and further relief as may be just and proper.

Dated: New York, New York
         November 8, 2013

TARTER KRINSKY & DROGIN LLP
*Attorneys for Mishmeret-Trust*
*Company Services Ltd and Shapira & Co.*


By:    /s/ Scott S. Markowitz
         Scott S. Markowitz
         Rocco A. Cavaliere
         1350 Broadway, 11th Floor
         New York, New York 10018
         (212) 216-8000

# EXHIBIT A

# SHAPIRA & CO.

advocates

5 Azrieli Center
Square Tower, 27th fl.
Tel Aviv 67025 Israel
Tel: 972 3 77 66 999
Fax: 972 3 77 66 996
info@oshapira.com
www.oshapira.com

October 4, 2013

**Without prejudice**

**AON Limited Financial Services Group**
8 Devonshire Square
London, EC3M 4PL
United Kingdom

**XL Insurance Company Plc**
XL House
70 Gracechurch Street
London EC3V 0XL
United Kingdom

Dear Sirs;

Re: **Merhav-Ampal Group Ltd (formerly: Ampal Energy Ltd)**
    **Ampal American-Israel Corp.**
    **Ampal Israel Ltd.**

Attached please find our letter to officers and directors of the above companies regarding claims of our clients, the bondholders and trustees of series A and C of Ampal American-Israel Corp, against the officers and directors of the companies.

Needless to say that the attached notice was sent without derogating from our clients' rights and claims against the companies and/or third parties, and of course without derogating from any other rights and claims of our clients toward the above directors and officers – claims and rights which are hereby fully safeguarded.

Sincerely Yours,

Ofer Shapira, Adv.

Ofer Shapira, Adv.
ofer@oshapira.com

# EXHIBIT B

# Contract of Insurance

**Insured:**    ***AMPAL ENERGY LTD***

**Policy No:**  *FD1260975*

**Period:**     *05 Oct 2012 to 05 Oct 2013*



**823**

**Aon UK Limited**
Registered Office: 8 Devonshire Square | London | EC2M 4PL | United Kingdom
Registered in London No. 210725 | VAT Registration No. 480 8401 48
t +44 (0)20 7623 5500
f +44 (0)20 7621 1511

Aon UK Limited is authorised and regulated by the Financial Services Authority in respect of insurance mediation
activities only.

**Policy Number:** FD1260975

---

**Schedule**

**Unique Market Reference**  B0823FD1260975

**Type**  Directors and Officers Liability and Company Reimbursement Liability Insurance

**Policyholder**  Ampal Energy Ltd

**Address**  33 Havatzelet Hasharon Str. Hertzelia Pituach

**Policy Period**  From:   5 October 2012
To:     5 October 2013
Both days at 12.01am Local Standard Time at the Address shown above

**Interest**  Directors and Officers Liability

**Limit of Liability**  USD 10,000,000 in the aggregate for the Policy Period including costs and expenses

Plus

In addition 20% Defence Costs outside limit of liability (Israel Only) USD 2,000,000

**Basis of Loss**  Claims made

**Excess**  USD 0 each and every claim under Insurance Cover A

Insurance Cover B and Indemnifiable Loss:

USD 50,000 each and every claim worldwide except USA / Canada
USD 150,000 each and every claim in USA / Canada
USD 300,000 each and every SEC/Securities Entity Cover Claim in the USA/Canada

**Territorial Limits**  Worldwide

**Conditions**  
1. Wording as attached
2. Retroactive Date: 05th October 2012. It is understood and agreed that notwithstanding any other provision of this policy, the insurer shall not be liable under this policy to make any payment for loss in connection with any claim arising out of, based upon or attributable to any wrongful act occurring before the Retroactive Date.

    Continuity Dates:
    Prior and Pending Litigation: 5th October 2012
    Pollution Claims: 5th October 2012
3. Extension 4.2 New Subsidiary asset threshold Subsidiaries registered and /or listed worldwide(excluding USA and/or Canada listed subsidiaries): 25% of the total assets of the policyholder, however not less than USD 25,000,000

---

Market Submission - Schedule          Page 4 of 49          CM 29/11/12 01

**Policy Number:** FD1260975

the *company* in a form acceptable to the *insurer* that such reimbursement shall be paid back by the *company* to the *insurer* in the event the *claim* (or any other *claim* which is subject to the same single retention by virtue of this General provision 5.4) is brought after such 90 day period.

**5.5**    How to Give Notice and Report a Claim

(i)    Notice of a *claim* or of circumstances which may result in a *claim* shall be given in writing to Insurers via Aon Limited, Financial Services Group, 8 Devonshire Square, London, EC3M 4PL. If posted the date of posting shall constitute the date that notice was given, and proof of posting shall be sufficient proof of notice.

(ii)    The *company* or the *insured* shall, as a condition precedent to the obligations of the *insurer* under this policy, give written notice to the *insurer* of any *claim* made against an *insured* as soon as practicable and either:

(a)    any time during the *policy period* or during the *discovery period*;

*or*

(b)    within 30 days after the end of the *policy period* or the *discovery period*, as long as such *claim(s)* is reported no later than 30 days after the date such *claim* was first made against an *insured*.

(iii)    If, during the *policy period* or during the *discovery period* written notice of a *claim* against an *insured* has been given to the *insurer* pursuant to the terms and conditions of this policy, then any *claim* arising out of, based upon or attributable to the facts alleged in the *claim* previously notified to the *insurer* or alleging a *single wrongful act* which is the same as or related to any *wrongful act* alleged in the previously notified *claim*, shall be considered made against the *insured* and reported to the *insurer* at the time the first notice was given.

(iv)    If during the *policy period* or during the *discovery period*, the *company* or the *insured* shall become aware of any circumstances which may reasonably be expected to give rise to a *claim* being made against an *insured* and shall give written notice to the *insurer* of the circumstances and the reasons for anticipating a *claim*, with full particulars as to dates and persons involved, then any *claim* which is subsequently made against an *insured* and reported to the *insurer* arising out of, based upon or attributable to the circumstances or alleging any *wrongful act* which is the same as or related to any *wrongful act* alleged or contained in those circumstances, shall be considered made against the *insured* and reported to the *insurer* at the time the notice of the circumstances was first given.

5.6    **Advancement of Costs**

The *insurer* shall advance to the *insured* or the *company defence costs* under all insurance covers under this policy before the final disposition of the *claim*.

The advance payments by the *insurer* shall be repaid to the *insurer* by the *company* or the *insured*, severally according to their respective interests, in the event and to the extent that the *company* or the *insured* shall not be entitled to payment of the *loss* under the terms and conditions of this policy.

In the event and to the extent that the *company* is permitted or required to indemnify the *insured* but for whatever reason fails to do so, the *insurer* will advance all *defence costs* to the *insured* on behalf of the *company*. In this case, however, the retention amount specified in the Schedule shall be repaid by the *company* to the *insurer*, unless the *company* is insolvent.

5.7    **How Defence Will Be Conducted**

The *insured* shall have the right and duty to defend and contest any *claim*. The *insurer* shall have the right to effectively associate with the *insured* and the *company* in the defence and settlement of any *claim* that appears reasonably likely to involve the