UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                           :
                                                 :
AMPAL-AMERICAN ISRAEL CORP.,      :                      Chapter 7
                                                 :                      Case No.: 12-13689 (SMB)
                    Debtor.              :
------------------------------------------------------X

**MEMORANDUM DECISION
DENYING MOTION FOR RELIEF BASED
ON VIOLATION OF THE AUTOMATIC STAY**

**A P P E A R A N C E S :**

KASOWITZ, BENSON, TORRES &
   FRIEDMAN LLP
1633 Broadway
New York, New York 10019

      David M. Friedman, Esq.
      Daniel A. Fliman, Esq.
      Nii-Amar Amamoo, Esq.
         Of Counsel

*Counsel for Movant Yosef A. Maiman*

CLARICK GUERON REISBAUM LLP
40 West 25th Street, 12th Floor
New York, New York 10010

      Nicole Gueron, Esq.
      Isaac B. Zaur, Esq.
         Of Counsel

*Counsel for Movants Revital Degani, Daniel Vaknin
   and Menachem Morag*

AKIN GUMP HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, New York 10036

      Arik Preis, Esq.
         Of Counsel

*Counsel for Series A Bondholders*

COLE, SCHOTZ, MEISEL, FORMAN
  & LEONARD, P.A.
900 Third Avenue, 16th Floor
New York, New York 10022

    Michael D. Sirota, Esq.
    Steven L. Klepper, Esq.
      Of Counsel

*Counsel for Movants Irit Eluz, Yoram Firon,*
*  Amit Mantsur, Erez Meltzer, Leo Malamud*
*  and Sabih Saylan*

TARTER KRINKSY & DROGIN LLP
1350 Broadway, 11th Floor
New York, New York 10018

    Scott S. Markowitz, Esq.
    Rocco A. Cavaliere, Esq.
      Of Counsel

*Counsel for Mishmeret-Trust Company*
*  Services Ltd and Shapira & Co.*

NACHAMIE SPIZZ COHEN & SERCHUK, P.C.
425 Park Avenue
New York, New York 10022

    Alex Spizz, Esq.
    Janice B. Grubin, Esq.
    Arthur Goldstein, Esq.
    Jill Makower, Esq.
      Of Counsel

*Counsel for Alex Spizz, Chapter 7 Trustee*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

    The Movants Irit Eluz, Yoram Firon, Amit Mantsur, Erez Meltzer, Leo Malamud, Sabih

Saylan, Revital Degani, Daniel Vaknin, and Menachem Morag are former officers and directors

of the debtor Ampal-American Israel Corporation ("Ampal"). In addition, the Movant Yosef A.

Maiman is the principal shareholder and was or is the Chairman of the Board and President and

Chief Executive Officer of Ampal.  Their motion seeks damages based on a violation of the

automatic stay relating to a demand for payment made upon them by Ofer Shapira, an attorney

for certain bondholders of Ampal.  They also ask the Court to enforce the automatic stay, grant

them standing to the extent necessary to enforce the automatic stay on behalf of the estate, and

direct the chapter 7 trustee to discharge Shapira as attorney for Ampal's non-debtor subsidiaries.

The Movants' request for prospective relief to enforce the automatic stay has been

rendered moot by subsequent events.  As explained below, the Movants have failed to

demonstrate that they have standing to seek damages, and even if they have standing, they have

failed to show that they are entitled to any damages.  Finally, their request that the trustee

discharge Shapira is premature.  Accordingly, their motion is denied.

## FACTS

Ampal is a New York corporation that was primarily engaged in the acquisition of

interests in businesses located in the State of Israel or that were Israel-related.  *In re Ampal-

American Israel Corp.*, No. 12-13689, 2013 WL 1400346, at *1 (Bankr. S.D.N.Y. Apr. 5, 2013).

Its assets consist mainly of its interests in non-debtor, foreign subsidiaries.  Ampal filed a chapter

11 petition in this Court on August 29, 2012, and at all relevant times, its principal non-affiliate

debt consisted of three series of debentures, A, B and C, in the approximate aggregate sum of

$234 million.  The following chart is taken directly from the information listed in the schedules

and identifies the trustees of each series of debentures and the amount that Ampal claimed it

owed with respect to each series:[1]

---

[1]      The schedules state that each of the debts is contingent and unliquidated.

| Series | Trustee | Amount ($) |
|--------|---------|-----------:|
| A | Hermetic Trust (1975) Ltd. | 53,679,212 |
| B | Reznik Paz Nevo R.P.N. Trusts 2007 Ltd. ("Reznik") | 136,288,554 |
| C | Mishmeret - Trusts Company Ltd. ("Mishmeret") | 43,994,397 |

According to Schedule H, there are no co-debtors liable with Ampal for the debenture obligations.  (*See Schedule H - Codebtors*, dated Oct. 12, 2012 (ECF Doc. # 37).)

On September 25, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") consisting of Hermetic, Reznik and Mishmeret. (*Appointment of Official Committee of Unsecured Creditors*, dated Sept. 25, 2012 (ECF Doc.  #27).) The chapter 11 case was marked by strife between the Committee on the one hand and Ampal's officers and directors, including Maiman, on the other.  *See Ampal*, 2013 WL 1400346, at *1-4. This discord led to the appointment of a chapter 11 trustee.  *Id.* at *7.  After a brief stewardship, the chapter 11 trustee moved to convert the case to chapter 7, and the motion was granted. (*Order Converting Chapter 11 Case to Chapter 7 and for Related Relief*, dated May 2, 2013 (ECF Doc. # 258).)  The members of the creditors committee duly elected Alex Spizz to act as chapter 7 trustee.  (*See United States Trustees' Report of Undisputed Election of Chapter 7 Trustee*, dated May 29, 2013, at 3-4 (ECF Doc. # 275).)  Shapira, an Israeli attorney who represented Hermetic and Mishmeret at the election, voted his clients' proxies in favor of Spizz. (*Id.* at 3.)

Spizz thereafter sought authority to retain Shapira & Co. Advocates, Shapira's law firm, as special counsel to represent the estate's interests in Israel *nunc pro tunc* to the date of his election.  (*See Chapter 7 Trustee's Application for Retention of Shapira & Co. Advocates as*

*Special Counsel to Trustee Pursuant to 11 U.S.C. § 327(e), Effective as of May 20, 2013*, dated

June 24, 2013 (ECF Doc. # 291).)  Maiman and the controlling shareholders objected, arguing,

*inter alia*, that Shapira's concurrent representation of Hermetic and Mishmeret, two of the

estate's largest creditors, was adverse to the estate.  (*See Objection of Yosef A. Maiman and the*

*Controlling Shareholders to Chapter 7 Trustee's Application to Retain Shapira & Co. Advocates*

*as Special Counsel to Trustee Pursuant to 11 U.S.C. § 327(e)*, dated July 1, 2013, at ¶¶ 6-9 (ECF

Doc. # 303).)  At the July 11, 2013 hearing, and following a colloquy with the Court, Spizz

withdrew his application with a view toward exercising Ampal's rights as shareholder to cause

the non-debtor subsidiaries to hire Shapira.

## A.    The October 4 Letter

On October 4, 2013, Shapira wrote a letter (the "October 4 Letter") to the Movants in his

capacity as attorney for Hermetic and Mishmeret that caused the current dispute.  (*Motion of*

*Yosef A. Maiman, Irit Eluz, Yoram Firon, Amit Mantsur, Erez Meltzer, Leo Malamud, Sabih*

*Saylan, Revital Degani, Daniel Vaknin, and Menachem Morag (I) to Enforce the Automatic Stay*

*and, if Necessary, Confer Standing on the Movants Relating Thereto and (II) to Award Damages*

*for Willful Stay Violations by the Debenture Parties and Shapira & Co. Advocates*, dated Oct.

22, 2013 (the "*Motion*"), at Ex. B-2 (ECF Doc. # 352).)  The letter charged that the Movants had

breached their fiduciary duties, committed waste and mismanaged Ampal and its subsidiaries by,

among other things, approving loans to Maiman and his affiliates that damaged the "Company,"[2]

disposing of assets, using their positions to obtain personal benefits to the detriment of the

Company and its creditors, negligently supervising and mismanaging the Companies' tax

---

[2]    The context of the letter indicates that "Company" referred to Ampal, and "Companies" referred to Ampal,
Ampal Israel Ltd. and Merhav-Ampal Group Ltd.

5

matters, filing chapter 11 without any settlement plan or reasonable purpose, presenting

unreasonable arguments in chapter 11, deepening the Company's insolvency and improperly

distributing funds.  The letter concluded with a demand for payment or security for payment:

> You are hereby required to pay our clients, immediately, the entire debts of the
> Company towards our clients or, alternatively, to immediately provide us with
> proper securities in order to guarantee full coverage of any sum that the Company
> does not pay our clients as part of the Company's liquidation proceedings.

(*Id.*)

The October 4 Letter provoked a response.  An attorney representing several of the

Movants sent an email to Spizz that protested the October 4, 2013 Letter, and confirmed a

discussion in which his clients demanded that Spizz (1) notify Shapira that his letter violated the

automatic stay, (2) insist that Shapira withdraw the letter and cease efforts to assert the claims

identified in his letter and (3) terminate Shapira's retention as attorney for the Ampal

subsidiaries.[3]  (*Motion*, Ex. C (email dated Oct. 14, 2013 1:22 PM).)  Spizz responded that

Shapira wrote the letter to preserve claims under Ampal's D&O policies, he had not taken any

action other than writing the letter and had not violated the automatic stay and Spizz had no

intention of allowing the bondholders or others to prosecute claims that belonged to the estate.

(*Id.*, Ex. C (email dated Oct. 14, 2013 1:38 PM).)

**B.    This Motion**

Not satisfied with Spizz's response, the Movants filed this motion.  Hermetic and the

Movants subsequently entered into a stipulation pursuant to which Hermetic withdrew the

October 4 Letter as to Hermetic and acknowledged that the causes of action set forth in the letter

---

[3]    The email referred to the author's October 11, 2013 letter which was not provided to the Court.

were property of Ampal's estate. (*Stipulation and Agreed Order*, dated Nov. 18, 2013, at ¶ 1

(ECF Doc. # 375).) The stipulation resolved all of the issues raised by the motion as between the

Movants and Hermetic. (*Id.* at ¶ 3.)

Spizz, Mishmeret and Shapira filed oppositions, and argued that the Movants lack

standing to seek to enforce the automatic stay or recover damages under 11 U.S.C. § 362(k).

(*Chapter 7 Trustee's Opposition to Motion of Yosef A. Maiman, Irit Eluz, Yoram Firon, Amit*

*Mantsur, Erez Meltzer, Leo Malamud, Sabih Saylan, Revital Degani, Daniel Vaknin, and*

*Menachem Morag (I) to Enforce the Automatic Stay and, if Necessary, Confer Standing on the*

*Movants Relating Thereto and (II) to Award Damages for Willful Stay Violations by the*

*Debenture Parties and Shapira & Co. Advocates*, Nov. 7, 2013 ("*Spizz Opposition*"), at ¶¶ 5-14,

20-22) (ECF Doc. # 362); *Objection of Mishmeret-Trust Company Services Ltd and Shapira &*

*Co. to Motion to (I) to Enforce the Automatic Stay and, if Necessary, Confer Standing on the*

*Movants Relating Thereto and (II) to Award Damages for Willful Stay Violations*, dated Nov. 8,

2013 ("*Mishmeret Opposition*"), ¶¶ 12-14 (ECF Doc. # 364).) Spizz also maintained that the

October 4 Letter did not seek to exercise control over property of the estate, and did not,

therefore, violate automatic stay, (*Spizz Opposition* at ¶¶ 17-18), the Movants had failed to prove

damages under Bankruptcy Code § 362(k), (*id.* at ¶¶ 23-30), and since the nondebtor subsidiaries

rather than the estate employed Shapira, there was no basis for the Court to direct Spizz to

terminate Shapira. (*Id.* at ¶¶ 32.)

Mishmeret and Shapira also contended that the October 4 Letter was not intended to

assert estate claims as opposed to claims personal to Mishmeret, and even if the demand touched

upon estate claims, it did not cause any injury to the estate. (*Mishmeret Objection* at ¶¶ 6-10.)

Finally, like Spizz, Mishmeret argued that the Court should not compel Spizz to terminate

Shapira because Shapira was retained by the non-debtor affiliates, (*id.* at ¶ 15), and moreover, disqualification is a harsh remedy and the Movants had failed to show a basis for disqualifying Shapira.  (*Id.* at ¶¶ 16-17.)

The Court conducted a hearing on the motion on November 14, 2013.  Counsel for Mishmeret and Shapira reiterated during oral argument that Mishmeret did not intend to assert claims that belonged to the estate, (Transcript of hearing, held Nov. 14, 2013, at 21, 23 ("Tr.") (ECF Doc. # 374)), and agreed not to pursue those claims.  (*Id.* at 25.)  I deem Mishmeret's and Shapira's concession to constitute a withdrawal of the October 4 Letter to the extent it demanded payment or security for a claims that belong to the estate.  In addition, at the end of the hearing, the Court directed Mishmeret and Shapira not to interfere with property of the estate or assert estate claims.  (*Id.* at 33-34.)

The request for prospective relief to enforce the automatic stay has been rendered moot by Mishmeret's and Shapira's concession and the Court's direction.[4]  This leaves for consideration the Movants' request for damages and a direction that Spizz discharge Shapira.

---

[4]    The Movants request for standing to the extent necessary to enforce the automatic stay is similarly moot. The Court can confer standing on an estate representative (usually the unsecured creditors' committee in a chapter 11 case) where the debtor in possession unjustifiably fails to bring the action or assert the right.  *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes* (*In re STN Enters.*), 779 F.2d 901, 904 (2d Cir. 1985).  The Court may also confer standing with the consent of the trustee provided the delegation of standing is in the best interest of the estate and necessary and beneficial.  *Commodore Int'l Ltd. v. Gould* (*In re Commodore Int'l Ltd.*), 262 F.3d 96, 98 (2d Cir. 2001).  Since there is no further need for prospective relief, the request for standing to procure that relief is also unnecessary.

**DISCUSSION**

A.    **Standing**

The party invoking federal jurisdiction bears the burden of establishing its standing.
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he question of standing is whether
the litigant is entitled to have the court decide the merits of the dispute or of particular issues.
This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential
limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Constitutional, or
Article III standing, "imports justiciability: whether the plaintiff has made out a 'case or
controversy' between himself and the defendant within the meaning of Art. III." *Id.* To qualify
for standing under Article III, "a claimant must present an injury that is concrete, particularized,
and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be
redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008).

In addition, the litigant must demonstrate prudential standing. "[P]rudential standing
encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule
barring adjudication of generalized grievances more appropriately addressed in the representative
branches, and the requirement that a plaintiff's complaint fall within the zone of interests
protected by the law invoked.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)
(quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *accord Devlin v. Scardelletti*, 536 U.S. 1, 7
(2002). Prudential limitations on standing are especially important in bankruptcy proceedings
which often involve numerous parties who may seek to assert the rights of third parties for their
own benefit. *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 644 (2d
Cir. 1988) ("The prudential concerns limiting third-party standing are particularly relevant in the
bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom

9

might find it personally expedient to assert the rights of another party even though that other

party is present in the proceedings and is capable of representing himself.")

The Movants have demonstrated Article III standing.  "All they need show in order to

demonstrate an Article III case or controversy is . . . some probability of a tangible benefit from

winning the suit."  *Tucker v. United States Dep't of Commerce*, 958 F.2d 1411, 1415 (7th Cir.

1992).  The Movants claim they suffered actual injury because they were forced to incur legal

fees and expenses in response to the October 4 Letter, including the prosecution of this motion.

Their injury is directly traceable to Mishmeret's and Shapira's actions and their injury will be

redressed by a favorable ruling if the Court awards damages.

Prudential standing is a tougher question because the Movants must show that their claim

falls within the zone of interests protected by the automatic stay and they are asserting their own

rights.[5]  The automatic stay is plainly intended to protect the debtor and property of the estate,

*see* H.R. REP. NO. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297, but it also

protects creditors against the acts of a creditor who attempts to jump the line and seize property

of the estate to satisfy its claim:

> The automatic stay also provides creditor protection.  Without it, certain creditors
> would be able to pursue their own remedies against the debtor's property.  Those
> who acted first would obtain payment of the claims in preference to and to the
> detriment of other creditors.  Bankruptcy is designed to provide an orderly
> liquidation procedure under which all creditors are treated equally.  A race of
> diligence by creditors for the debtor's assets prevents that.

*Id.*; S. REP. NO. 95-989, at 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835; *see Ostano*

*Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986) ("Since the purpose of

---

[5]    The parties' dispute does not implicate the rule that bars the adjudication of generalized grievances more
appropriately left to the representative branches.

the stay is to protect creditors as well as the debtor, the debtor may not waive the automatic

stay.")  Thus, any violation of the automatic stay that impairs a creditor's distribution falls within

the zone of interests protected by the automatic stay.

In addition, Bankruptcy Code § 362(k)(1) (formerly § 362(h))[6] confers a private right to

sue for damages on behalf of an *individual* injured by a willful violation of the automatic stay.

The opposition maintains that § 362(k) only applies to individual *debtors*, but the plain language

of the provision also applies to individual *creditors*.  *St. Paul Fire & Marine Ins. Co. v. Labuzan*,

579 F.3d 533, 543 (5th Cir. 2009) ("Accordingly, based on § 362(k)'s plain language, the above-

discussed congressional purpose of § 362(k) to provide both debtor and creditor protection, and

the weight of authority finding creditor-standing, we hold debtors and creditors are entities

whose grievances fall 'within the zone of interests' protected by § 362(k)."); *Homer Nat'l Bank*

*v. Namie*, 96 B.R. 652, 655 (W.D. La. 1989) ("If Congress intended to limit the remedies in

§ 362(h) to debtors it could have done so by the simple expedient of replacing the term

'individual' with 'debtor.'  Congress chose not to do so, and this court is unwilling to impose

limitations not supported by the statutory language, jurisprudence, or legislative history."); In re

*Int'l Forex of Cal., Inc.*, 247 B.R. 284, 291 (Bankr. S.D. Cal. 2000) ("Based on the weight of

authority on this issue, this Court finds that the Creditors have standing under § 362(h) to seek

damages for alleged stay violations."); *In re Prairie Trunk Ry.*, 112 B.R. 924, 929 (Bankr. N.D.

Ill. 1990) ("The weight of persuasive case authority is that only a debtor or creditor may attack

---

[6]     Section 362(k)(1) states:

        Except as provided in paragraph (2), an individual injured by any willful violation of a stay
        provided by this section shall recover actual damages, including costs and attorneys' fees, and, in
        appropriate circumstances, may recover punitive damages.

Originally designated as § 362(h), the section was redesignated as § 362(k)(1) under the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 305, 119 Stat. 23 (2005).

any acts in violation of the automatic stay." (internal quotation marks omitted)); *cf. Maritime
Asbestosis Legal Clinic v. LTV Steel Co.* (*In re Chateaugay Corp.*), 920 F. 2d 183, 186-87 (2d
Cir. 1990) (concluding that Bankruptcy Code § 362(h) cannot be invoked by a corporate debtor
and is limited to debtors who are natural persons).  Non-individuals and those individuals who
seek non-monetary relief still have recourse under the bankruptcy court's civil contempt power,
*Barnett Bank of Se. Ga., N.A. v. Trust Co. Bank of Se. Ga., N.A.* (*In re Ring*), 178 B.R. 570, 576
(Bankr. S.D. Ga. 1995), although § 362(k) does not require a finding of maliciousness or bad
faith and is less stringent than the standard for holding a person in civil contempt.[7]  *In re
Chateaugay Corp.*, 920 F.2d at 186; *Crysen/Montenay Energy Co. v. Essen Assocs., Inc.* (*In re
Crysen/Montenay Energy Co.*), 902 F.2d 1098, 1104-05 (2d Cir. 1990).

The Movants are individuals, they allege damages resulting from a violation of the
automatic stay, and § 362(k)(1) appears to grant them standing.  Nevertheless, § 362(k)(1) is
subject to two limitations.  First, the creditor seeking relief must allege an injury in his capacity
as a creditor of the estate rather than in some other capacity.  *Eakin v. Goffe, Inc.* (*In re 110
Beaver St. P'ship*), 355 F. App'x 432, 439 n. 9 (1st Cir. 2009) (To have standing under § 362(k),
"the creditor must be able to allege an injury as a creditor from the violation of the automatic
stay."); *Labuzan*, 579 F.3d at 545 ("[W]e hold: pursuant to § 362(k), the Labuzans, as *pre-
petition creditors* of CTL, have standing to assert a claim against St. Paul.  Accordingly, to the
extent the Labuzans' claims are based on their status as *owners/equity holders* of CTL, § 362(k)
cannot be invoked." (emphasis in original)); *cf. Siskin v. Complete Aircraft Servs., Inc.* (*In re
Siskin*), 231 B.R. 514, 519 (Bankr. E.D.N.Y. 1999) (debtor's spouse, who was not a creditor of

---

[7]      The Movants have not invoked the Court's contempt power.

12

the estate and was forced to satisfy a claim asserted in violation of the automatic stay, had no

standing under Bankruptcy Code § 362(h) to seek damages from violator); *Metro. Life Ins. Co.*

*v. Alside Supply Ctr.*  (*In re Clemmer*), 178 B.R 160, 165 (Bankr. E.D. Tenn. 1995) (concluding

that non-creditor garnishee lacked standing to seek relief under Bankruptcy Code § 362(h)); *In re*

*Prairie Trunk Ry.*, 112 B.R. at 927 (purchaser of debtor's assets lacked standing under

Bankruptcy Code § 362(h) to claim that secured creditor's seizure of collateral in violation of the

automatic stay was void).[8]  In other words, the fact that someone is a pre-petition creditor is not a

foot in the door that allows the creditor to recover damages for injuries suffered to its non-

creditor interests.

Second, the creditor must assert a claim for his own direct injury and not a claim that

belongs to the estate.  *See Labuzan*, 579 F.3d at 545.  "If a claim is a general one, with no

particularized injury arising from it, and if that claim could be brought by any creditor of the

debtor, the trustee is the proper person to assert the claim."  *See St. Paul Fire & Marine Ins. Co.*

*v. PepsiCo., Inc.*, 884 F.2d 688, 701 (2d Cir. 1989).

The typical example of a claim that satisfies these prudential limitations involves a

violation of the stay that impairs a pre-petition secured creditor's interest in specific property of

the estate.[9]  A recent decision by Chief Judge Morris, *In re Killmer*, No. 07-36011, 2013 WL

---

[8]        In *Meoli v. Huntington Nat'l Bank* (*In re Teleservices Group, Inc.*), 463 B.R. 28 (Bankr. W.D. Mich. 2012),
the court concluded that a defendant facing double liability based on an avoidance action brought by the trustee and
an unfair enrichment action brought by a creditor in violation of the automatic stay had standing to enjoin the
creditor's suit because it "clearly risks additional loss if both lawsuits proceed unabated."  *Id.* at 32.  The court did
not discuss the standing of a non-creditor to invoke the automatic stay.

[9]        This is not necessarily the only situation in which a creditor can assert a claim based upon the violation of
the automatic stay.  *See Labuzan*, 579 F.3d at 545 (declining to hold the only secured creditors have standing under
Bankruptcy Code § 362(k) to challenge automatic stay violations).

6038838 (Bankr. S.D.N.Y. Nov. 15, 2013), is instructive. There, Beneficial Home Service

Corporation ("Beneficial") held a security interest in the debtor's property. While the

bankruptcy case was open, the debtor's property was sold at a tax sale conducted in violation of

the automatic stay and title was transferred to the purchaser. The tax sale cut off Beneficial's

lien. Beneficial subsequently commenced a foreclosure action and moved to re-open the now-

closed bankruptcy case to assert that the tax sale violated the automatic stay, and was void.

Chief Judge Morris granted the motion over the objection of the tax sale purchaser. After

observing that the automatic stay "ensures that . . . all creditors will be 'treated in an organized

and equitable fashion,'" 2013 WL 6038838, at *3 (quoting *Barclays Bank of N.Y. v. Saypol* (*In

re Saypol*), 31 B.R. 796, 799 (Bankr. S.D.N.Y. 1983)), the Court addressed the question of

Beneficial's standing:

> The situation that is alleged to have occurred here is the type of scenario that
> Congress intended to prevent. Since the automatic stay is meant to prevent
> creditors from racing to the courthouse to the detriment of other creditors, the
> Court sees no reason why a creditor who has been harmed by a stay violation
> should not be able to seek redress for its injury.

2013 WL 6038838, at *3; *see also United States v. Miller*, No. Civ.A.5:02–CV–0168–C, 2003

WL 23109906, at *6 (N.D. Tex. Dec. 22, 2003) (the United States, a secured creditor, had

standing to challenge the validity of a post-petition tax sale made in violation of the automatic

stay); *Litton Loan Serving, L.P. v. Rockdale Cnty., Ga., Am. Lien Fund, L.P.* (*In re Howard*), 391

B.R. 511, 515 (Bankr. N.D. Ga. 2008) (assignee of debt secured by debtors' residence had

standing to invoke automatic stay, and to seek determination that tax sale was void); *In re Ring*,

178 B.R. at 577, 581) (junior secured creditor whose lien was impaired by foreclosure sale

conducted by senior secured creditor in violation of the stay had standing to seek compensation

for its damages as a civil contempt and for a declaration that the foreclosure sale was void);

14

*Namie*, 96 B.R. at 655 (affirming an award of damages under § 362(h) in favor of a secured

creditor whose collateral was seized and sold in violation of the automatic stay).[10]

Here, the Movants have failed to demonstrate their standing to assert a claim under 11

U.S.C. § 362(k)(1).  First, although the Court speculated that they might have indemnification

claims under New York law, they did not offer evidence to show that they hold claims against

the estate.  In fact, they did not allege much less show that they are creditors.

Second, they have failed to show that the injuries they allege fall within the zone of

interests protected by the automatic stay.  Clearly, the successful assertion of an estate claim by

Mishmeret would cause a generalized injury to the estate and an indirect injury to all creditors by

possibly reducing the pool of assets available for distribution.  Every creditor could assert the

same claim.  Hence, only the trustee has authority to assert the claim, and this rule no doubt

caused the Movants to ask for standing to the extent necessary to enforce the estate's rights.

This, however, is not the injury that the Movants allege.

In this regard, the Court asked Maiman's counsel what damages had been caused by the

October 4 Letter.  He responded:

---

[10]    The creditor's standing to challenge the validity of a post-petition lien or transfer that impairs its collateral may face a separate hurdle.  Under 11 U.S.C. § 549(a), the trustee is granted the exclusive authority to avoid an unauthorized post-petition transfer.  *See City of Farmers Branch v. Pointer* (*In re Pointer*), 952 F.2d 82, 87-88 (5th Cir. 1992).  This power is subject to a statute of repose, 11 U.S.C. § 549(d), and § 549(c) protects certain good faith transferees that pay value.  Yet an act in violation of the automatic stay is void, *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.* (*In re 48th St. Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied*, 485 U.S. 1035 (1988), and it is unnecessary to avoid the transfer.  *See In re Killmer*, 2013 WL 6038838, at *3 ("[A]n act entered in violation of the stay is void whether or not a party makes a motion to declare it so.").  For this reason, one bankruptcy court has concluded that even non-creditor third parties have standing to seek a declaration that an action in violation of the stay is void.  *Rehabilitated Inner City Hous., LLC v. Mayor and City Council of Balt. City* (*In re Lesick*), Adv. Proc. 05-10075, 2006 WL 2083655, at *5 (Bankr. D.D.C. July 19, 2006) (transferee of estate property had standing to seek a declaration that a tax sale made in violation of the automatic stay that impaired its title was void.")  As the Movants are not challenging a post-petition transfer and are seeking damages rather than avoidance, it is unnecessary to consider this question.

> Well, Your Honor, I think that the damages that we have -- the truth is that we
> don't know what the damages will be if this letter is not withdrawn.  And the
> reason is that we can't let the letter with a hundred-million-dollar demand, or I
> guess now with series A withdrawing it's [*sic*] forty-million-dollar demand, just
> stay out there. We're going to have to respond. We're going to have to take
> action. Right.

(Tr. at 14:18-25.)  In short, the Movants have or will be damaged not because they will receive a

smaller distribution on their claims but because they must defend against the demand for

payment.  As noted, the automatic stay was designed to protect pre-petition creditors' from a

grabbing creditor whose acts adversely affected their distribution; it was not designed to protect

potential defendants who also happen to be creditors of the estate.  *Cf. In re Sturman*, No. 10

Civ. 6725 (RJS), 2011 WL 4472412, at *4 (S.D.N.Y. Sept. 27, 2011) (reputational injury

allegedly suffered by the trustee as a result of acts in violation of the automatic stay "are too far

removed from the types of harm that usually fall upon debtors and property as a result of

interference with bankruptcy estates and proceedings.")  Moreover, if any of the Movants are not

creditors, they will still suffer precisely the same injury as the Movants that are creditors, a sure

sign that the injury is unrelated to any Movant's status as a creditor.  Nor have the Movants cited

any authority to support their underlying contention that an individual sued by a third party in

violation of the automatic stay is entitled to recover his attorneys' fees under 11 U.S.C.

§ 362(k)(1), a contention which, if accepted, would significantly alter the American Rule that

each litigant must bear its own legal fees and expenses.

Accordingly, the Court concludes that the Movants have failed to demonstrate standing to

recover their legal fees and expenses under 11 U.S.C. § 362(k)(1).

**B.      The Merits of the Claim**

Assuming that the Movants have demonstrated standing, they must prove that Mishmeret

and Shapira willfully violated the automatic stay and the violation proximately caused their

damages.  *See Bace v. Babitt*, No. 11 Civ. 6065(PAC)(HBP), 2012 WL 2574750, at * 3

(S.D.N.Y. July 3, 2012); *Sturman*, 2011 WL 4472412, at *2.  "Willful" in this context means

"any deliberate act taken in violation of the stay, which the violator knows to be in existence."

*Crysen/Montenay Energy Co.*, 902 F.2d at 1105; *accord Sturman*, 2011 WL 4472412, at *2.  A

"specific intent to violate the stay is not required; instead, 'general intent in taking actions which

have the effect of violating the automatic stay' is sufficient to warrant damages."  *Sturman*, 2011

WL 4472412, at *2 (quoting *In re Dominguez*, 312 B.R. 499, 508 (Bankr. S.D.N.Y. 2004)).

The Movants have demonstrated that Mishmeret and Shapira violated the stay by

demanding payment on account of an estate claim.  If a cause of action is property of the estate,

any "act" by a creditor to assert that claim for its personal benefit violates 11 U.S.C. § 362(a)(3).

*McHale v. Alvarez* (*In re 1031 Tax Group, LLC*), 397 B.R. 670, 682 (Bankr. S.D.N.Y. 2003).

State law determines whether claims belong to creditors or to the debtor prior to bankruptcy and

to the estate after bankruptcy ensues.  *See Sobchack v. Am. Nat'l Bank & Trust Co.* (*In re

Ionosphere Clubs, Inc.*), 17 F.3d 600, 604 (2d Cir. 1994); *St. Paul Fire & Marine Ins. Co. v.

PepsiCo., Inc.*, 884 F.2d at 700; *Goldin v. Primavera Familienstiftung Tag Assocs.* (*In re Granite

Partners, L.P.*), 194 B.R. 318, 324-25 (Bankr. S.D.N.Y. 1996).  Under New York law, claims for

waste, mismanagement and breach of fiduciary duty belong to the corporation, *Amfesco Indus.,

Inc. v. Greenblatt*, 568 N.Y.S.2d 593, 596-97 (App. Div. 1991), and once bankruptcy ensues,

17

become property of the estate that the trustee alone has standing to assert.[11]  *Mediators, Inc. v. Manney* (*In re Mediators, Inc.*), 105 F.3d 822, 826-27 (2d Cir. 1997) ("We agree that a bankruptcy trustee, suing on behalf of the debtor under New York law, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries."); *Keene Corp. v. Coleman* (*In re Keene Corp.*), 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994) ("Section 720 of New York's Business Corporation law expressly authorizes a corporation or bankruptcy trustee to sue the corporation's officers and directors for breach of fiduciary duty, including misappropriation or diversion of assets.").

Here, Shapira deliberately sent the October 4 Letter on behalf of Mishmeret at a time when they knew of the pendency of Ampal's bankruptcy case.  Mishmeret had served on the Committee during the chapter 11 and Shapira's vote was instrumental in electing Spizz as trustee.  The letter demanded immediate payment or security as compensation for claims sounding in breach of fiduciary duty, waste and mismanagement, claims that belonged to the estate.[12]  Accordingly, the Movants made a *prima facie* showing that Mishmeret and Shapira violated the automatic stay.

---

[11]      The trustee's standing may devolve upon others if the trustee abandons the claim, *Pub. Sch. Teachers' Pension & Ret. Fund v. Ambac Fin. Group, Inc.* (*In re Ambac Fin. Group, Inc.*), 487 F. App'x 663, 665 (2d Cir. 2012), or the Court authorizes an estate representative to prosecute the claim.  *See STN Enters.*, 779 F.2d at 904. Neither has occurred in this case.

[12]      Mishmeret argues that the October 4 Letter was not intended to assert estate claims, but intent to violate the stay is immaterial.  Furthermore, while it is possible that the October 4 Letter also asserted direct claims, it nonetheless violated the automatic stay to the extent it also asserted estate claims.  It would have been simple enough to put a disclaimer in the letter that it was not asserting estate claims and/or particularize the direct claims that it was asserting.  Mishmeret, in this regard, has not identified the source of those claims under Israeli law aside from a passing reference to Israeli law in a footnote.

18

The Movants have failed, however, to identify any damages proximately caused by the stay violation other than their attorneys' fees and legal expenses incurred in responding to the October 4 Letter and prosecuting this motion.  (*Motion* at ¶ 34.)  While § 362(k) is designed to discourage willful violations of the automatic stay, it does not permit recovery of unnecessary litigation costs.  *In re Prusan*, 495 B.R. 203, 208 (Bankr. E.D.N.Y. 2010) (quoting *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998) (internal quotation marks omitted)).  "[A]n 'excessively litigious approach' to violations of the automatic stay that do not cause damages in an[d] of themselves must be guarded against." *Yarinsky v. Saratoga Springs Plastic Surgery, PC* (*In re Saratoga Springs Plastic Surgery, PC*), No. 1:03CV896, 2005 WL 357207, at *5 n.4 (N.D.N.Y. Feb. 11, 2005), *aff'd*, 172 F. App'x 339 (2d Cir. 2006); *accord Sturman*, 2011 WL 4472412, at *3, *Prusan*, 495 B.R. at 208; *In re Beebe*, 435 B.R. 95, 101 (Bankr. N.D.N.Y. 2010 Accordingly, the Court may properly decline to award attorneys' fees and costs incurred in connection with the prosecution of a willful stay violation where the only damages incurred by the injured party are the legal fees and costs incurred in bringing the motion.  *Sturman*, 2011 WL 4472412, at *4; *Beebe*, 435 B.R. at 101.

The motion was an overreaction to the October 4 Letter, motivated by Movants' concern about being sued, and not about the size of the estate or their share of it.  Before they brought the motion, Spizz advised counsel for some of the Movants that he believed that Shapira sent the October 4 Letter to preserve D&O insurance coverage, Shapira's clients had not taken any other action and Spizz would not allow the bondholders to prosecute claims that belonged to Ampal's estate.  In fact, Mishmeret did not take any action against the Movants or otherwise affect their rights, and the letter did not harm the estate.  The legal fees and expenses that the Movants

incurred in first demanding that Spizz take action and then taking action themselves were

unnecessary, and in the absence of any other actual damages, do not merit an award.

The Movants are also not entitled to recover punitive damages.  To recover punitive

damages, a movant must show that he suffered actual damages, *Prusan*, 495 B.R. at 207, and the

violator acted maliciously or in bad faith.  *Crysen/Montenay Energy Co.*, 902 F.2d at 1105.  As

just stated, the Movants did not suffer any actual damages and their motion does not support a

suggestion much less a finding of malice or bad faith.

## C.       Discharging Shapira

Finally, the Movants ask the Court to direct Spizz to terminate Shapira's representation of

the non-debtor subsidiaries.  Spizz retained Shapira to represent Ampal's non-debtor subsidiaries

in his capacity as trustee of Ampal, their sole shareholder.  Spizz followed this route after he

applied to retain Shapira as special counsel to the estate, met with vigorous opposition and

withdrew the application at the Court's suggestion.  In addition, the retention by the subsidiaries

instead of Ampal made sense.  The subsidiaries rather than Ampal needed the representation,

they rather than Ampal were going to pay Shapira's bills and Spizz could get the benefit of

Shapira's representation without the cost by speaking to him at any time.  Nevertheless, the

October 4 Letter resurrected the concerns of conflict that triggered Maiman's earlier objection to

Shapira's retention.

At oral argument, the Court also expressed a concern that Shapira faced a conflict.  The

estate and Mishmeret each have an interest in the D&O insurance proceeds, a finite fund.

Shapira might seek to recover those proceeds for Mishmeret at the expense of the estate.

Furthermore, as discussed earlier, Shapira cast the votes that elected Shapira, Spizz immediately

sought to retain Shapira *nunc pro tunc* to the date of his election, and this might have created the impression that Spizz had already taken sides in the disputes between Mishmeret/Shapira and the Movants.  In same vein, the *Spizz Opposition* opposed the Movants' claim for damages – an issue that concerned Mishmeret and Shapira but not the estate.

Thus far, Shapira has not taken any steps to collect the D&O insurance proceeds on Mishmeret's behalf, and any conflict is potential and hypothetical.  The Court can reconsider this conclusion should the situation change and an actual conflict arise.

In conclusion, the Movants' motion is denied.  Settle order on notice.

Dated: New York, New York
       December 16, 2013

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge