Hearing Date: June 17, 2014
Hearing Time: 10:00 A.M.

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, Chapter 7 Trustee**
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Janice B. Grubin, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                    Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                        Case No. 12-13689 (SMB)

                                    Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NOTICE OF CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO 11
U.S.C. §§105(a) AND 362(d) AND FED.R.BANKR.P. 4001(d) AND
9019(a), FOR APPROVAL OF AGREEMENT CONCERNING SINKING
FUNDS AND ALLEGED PREFERENTIAL TRANSFERS

**PLEASE TAKE NOTICE** that upon the motion dated May 21, 2014 (the "Motion")

of Alex Spizz, the Chapter 7 trustee (the "Trustee") of the above-captioned debtor, Ampal-

American Israel Corporation ("Debtor"), by his counsel, Spizz Cohen & Serchuk, P.C., the

Trustee will move before the Honorable Stuart M. Bernstein, United States Bankruptcy

Court Judge, in his Courtroom at the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, New York, New York 10004, on the **17th day of**

**June 2014 at 10:00 A.M.**, or as soon thereafter as counsel can be heard (the "Hearing

Date"), for an order, substantially in the form annexed to the Motion as Exhibit 1, approving

the "Agreement Concerning Sinking Funds And Alleged Preferential Transfers" by and

between the Trustee, Hermetic Trust (1975) Ltd., Reznik Paz Nevo R.P.N. Trusts 2007

285042v1

Ltd. and Mishmeret Trust Services Company Ltd. (A copy of the Agreement is annexed to the Motion as Exhibit 2.)

**PLEASE TAKE FURTHER NOTICE**, that any objections to the Motion must be filed with the Clerk of the Bankruptcy Court with a copy delivered to the Chambers of the Honorable Stuart M. Bernstein and served upon: (i) Spizz Cohen & Serchuk, P.C., attorneys for the Trustee, 425 Park Avenue, New York, New York 10022, Attn: Alex Spizz, Esq. and Janice B. Grubin, Esq.; (ii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Andrew D. Velez-Rivera, Esq., (iii) Hermetic Trust (1975) Ltd., 113 Hayarkon Street, Tel Aviv 63573, Israel, Attn.: Dan Offer, Adv.; (iv) DBL Law Offices, attorneys for Reznik Paz Nevo R.P.N. Trusts 2007 Ltd., 1 Azrieli Center (Round Bldg., 22nd Fl.), Tel Aviv, 67201 Israel, Attn: Arye Danzinger, Adv.; and (v) Tarter, Krinsky & Drogin, LLP, Attorneys for Mishmeret Trust Services Company Ltd., 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq., so as to be filed and received at least seven (7) days prior to the Hearing Date.

Dated: New York, New York
     May 21, 2014

                    SPIZZ COHEN & SERCHUK, P.C.
                    Attorneys for Alex Spizz, Chapter 7
                    Trustee for Ampal-American Israel Corporation,
                    Debtor

                    By: _____
                        Alex Spizz
                        Janice B. Grubin
                        Arthur Goldstein
                        Jill Makower
                        425 Park Avenue
                        New York, New York 10022
                        (212) 754-9400

| | |
|---|---|
| **Hearing Date:** | **June 17, 2014** |
| **Hearing Time:** | **10:00 A. M.** |

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, Chapter 7 Trustee**
425 Park Avenue
New York, NY  10022
(212) 754-9400
Alex Spizz, Esq.
Janice B. Grubin, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                    Case No. 12-13689 (SMB)

                              Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO 11 U.S.C. §§105(a) AND 362(d) AND FED.R.BANKR.P. 4001(d) AND 9019(a), FOR APPROVAL OF AGREEMENT CONCERNING SINKING FUNDS AND ALLEGED PREFERENTIAL TRANSFERS_____

**TO:    THE HONORABLE STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

Alex Spizz, the Chapter 7 trustee (the "Trustee") of Ampal-American Israel

Corporation, the debtor herein (the "Debtor"), submits this motion (the "Motion")

seeking entry of an order pursuant to sections 105(a) and 362(d) of title 11 of the United

States Code (the "Bankruptcy Code") and Rules 4001(d) and 9019(a) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the form

annexed hereto as **Exhibit 1**, approving a certain "Agreement Concerning Sinking

Funds And Alleged Preferential Transfers" dated May 20, 2014 (the "Agreement")

285337

annexed hereto as **Exhibit 2,** by and between  (a) the Trustee, and (b) the following

indenture trustees (the "Indenture Trustees") located in Israel: (i) Hermetic Trust

(1975) Ltd. ("Hermetic"), (ii) Reznik Paz Nevo R.P.N. Trusts 2007 Ltd. ("Reznik") and (iii)

Mishmeret Trust Services Company Ltd. ("Mishmeret").   In support of this Motion, the

Trustee respectfully represents:

**JURISDICTION**

1.     This Court has subject matter jurisdiction to consider and determine this

Motion pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C.

§157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

**FACTS**

A.     **General**

2.     On August 29, 2012 (the "Petition Date"), the Debtor filed a voluntary petition

(the "Petition") for relief under Chapter 11 of the Bankruptcy Code.

3.     The Debtor is an investment company, incorporated in New York, which

primarily acquired interests in companies located or operating in Israel in the energy,

chemicals, real estate, project development and leisure sectors.  The Debtor's principal

assets are its direct and indirect equity holdings in over 80 corporations (the

"Subsidiaries"), and the Debtor's business consisted of managing its equity investments

in the Subsidiaries.  None of the Debtor's Subsidiaries is a debtor in this or any other

U.S. bankruptcy court and none is the subject of any bankruptcy case, insolvency

proceeding or receivership proceeding outside of the United States except for Gadot

Chemical Tankers and Terminals Ltd., which is in receivership in Israel.

4.     On September 25, 2012, the United States Trustee appointed an Official

2

Committee of Unsecured Creditors (the "Creditors' Committee").

5.      On April 8, 2013, the Court ordered the appointment of a Chapter 11 trustee and the Office of the U.S. Trustee thereafter designated Michael Luskin as Chapter 11 trustee.

6.      Michael Luskin, as Chapter 11 trustee, moved to convert this case to Chapter 7 on the grounds that, among other things, the Debtor was administratively insolvent.

7.      By Order dated May 2, 2013 (the "Conversion Date"), the Court converted the case to one under Chapter 7.

8.      On May 3, 2013, the Office of the U.S. Trustee appointed Alan Nisselson as interim Chapter 7 trustee.

9.      On May 20, 2013 (the "Election Date"), Alex Spizz was elected Chapter 7 Trustee of the Debtor pursuant to section 702 of the Bankruptcy Code and was duly qualified thereafter.

**B.      The Debtor's Issuance of Bonds Prior To The Petition Date**

10.      Prior to the Petition Date, the Debtor issued three series of bonds, Series A, Series B, and Series C (collectively, the "Bonds").

11.      Hermetic is the Indenture Trustee with respect to the Deed of Trust dated as of November 20, 2006 (as amended and supplemented, the "Series A Deed of Trust") that the Debtor entered into with Hermetic in connection with the Debtor's issuance of Series A Bonds in the original principal amount of 250,000,000 New Israeli Shekels[1] ("NIS") par value.  (A translated copy of the Series A Deed of Trust, with

---

[1] The conversion rate as of the drafting of this Motion is approximately $1 U.S. Dollar equals 3.48 NIS.

amendment dated July 30, 2007 is annexed hereto as **Exhibit 3)**.

12.     Reznik is the Indenture Trustee with respect to the Deed of Trust dated April 6, 2008 (as amended and supplemented, the "Series B Deed of Trust") that the Debtor entered into with Clal Finances Trusts 2007 Ltd. ("Clal") as indenture trustee in connection with the Debtor's issuance of Series B Bonds in the original principal amount of NIS 577,823,000 (approximately $166.8 Million U.S.D.) par value.   (Reznik subsequently replaced Clal as the Series B Indenture Trustee.) (A translated copy of the Series B Deed of Trust, with amendments dated April 17, 2008 and April 28, 2008, is annexed hereto as **Exhibit 4**.)

13.     Mishmeret, formerly known as Ziv Haft Trust Company Ltd., is the Indenture Trustee with respect to the Deed of Trust dated August 31, 2010 (the "Series C Deed of Trust") that the Debtor entered into with Mishmeret in connection with the Debtor's issuance of Series C Bonds in the original principal amount of NIS 170,000,000 par value. (A translated copy of the Series C Deed of Trust is annexed hereto as **Exhibit 5**.)

C.     **The Sinking Funds**

14.     Prior to the Petition Date, separate bank accounts were established in Israel as security for the Debtor's interest obligations under the debentures for the Series B Bondholders (the "Series B Sinking Fund") and the Series C Bondholders (the "Series C Sinking Fund" and, together with the Series B Sinking Fund, the "Sinking Funds").  (See Series B Deed of Trust, §6.1; Series C Deed of Trust, §6.1.)

15.     The Debtor listed the Sinking Funds as its property in its Schedule "B" filed with the Court on October 12, 2012 [Docket No. 37]: the Series B Sinking Fund was identified as deposited in "Account # XXXX-0026 at "Israel Discount Bank Ltd, 37 Derech

4

Begin St., Tel Aviv, Israel 65220" in the amount of $4,864,411.00 USD; and the Series C

Sinking Fund was identified as deposited in "Account #XXXX-3490" at "Bank Leumi Ltd,

32 Mashkit St., Herzlya, Israel 46733" in the amount of $9,117,714.00 USD.[2]

16.     As further detailed below, there is a dispute between the Trustee, on the one

hand, and Reznik and Mishmeret, on the other hand, as to whether the Sinking Funds

constitute property of the Debtor's estate pursuant to Bankruptcy Code section 541(a).

The Trustee maintains that the Series B Sinking Fund is property of the estate, and that

the Series C Sinking Fund is partially property of the estate.  The Series B and Series C

Indenture Trustees dispute the Trustee's position, asserting ownership of the respective

Sinking Funds and claiming that the Sinking Funds are not property of the estate.

17.     The Series B and C Bonds and the Series B and C Deeds of Trust are, by

their terms, governed by Israeli law, and exclusive jurisdiction over any conflict

concerning the Series B and C Deeds of Trust lies in the Israeli courts in Tel Aviv-Jaffa.

See Series B Deed of Trust §§ 28, 29; Series C Deed of Trust §§ 28, 29.

18.     Reznik, the Series B Indenture Trustee, by its counsel, filed a proceeding

(the "First Israeli Proceeding") in an Israeli District Court in May 2013, seeking authority to

distribute the Series B Sinking Fund to the Series B Bondholders.  The Trustee advised

Reznik that the filing of the First Israeli Proceeding violated the automatic stay.  Reznik

subsequently withdrew that proceeding.

19.     On or about September 11, 2013, Reznik, by its counsel, commenced

another proceeding (the "Second Israeli Proceeding") in an Israeli District Court, filing a

declaratory judgment motion (the "Declaratory Judgment Motion") for adjudication as to

---

[2] As of October 31, 2013, there was $10,603,131 USD (NIS 37,216,992) in the Series C Sinking Fund, according to the Mishmeret Motion (defined below) [Docket No. 357, at ¶4.]

the Series B Bondholders' and Series A Bondholders' respective rights to the Series B Sinking Fund. An English translation of the Declaratory Judgment Motion was provided to the Trustee and is annexed hereto as **Exhibit 6** (without appendices). Reznik contends that only the Series B Bondholders have rights to the Series B Sinking Fund. Hermetic did not respond to the Second Israeli Proceeding.

20.    In connection with the Second Israeli Proceeding, Reznik obtained a legal opinion of Professor Shalom Lerner, Adv., dated July 21, 2013, a translated copy of which is annexed hereto as **Exhibit 7** (the "Lerner Opinion"), and Hermetic obtained a legal opinion authored by Guy Gissin, Adv., dated June 16, 2013 (the "Gissin Opinion"), which disputed and criticized the Lerner Opinion. (A copy of the Gissin Opinion, which is written in Hebrew, is annexed hereto as **Exhibit 8**. An unofficial English translation of the Gissin Opinion provided to the Trustee by the Series A Indenture Trustee is annexed hereto as **Exhibit 9**). Professor Lerner provided a response to the Gissin Opinion, a translated copy of which is annexed hereto as **Exhibit 10** (the "Lerner Response" and, together with the Lerner Opinion, the "Lerner Opinions"). Gissin provided a supplemental opinion dated September 16, 2013 (the "Gissin Supplemental Opinion" and, together with the Gissin Opinion, the "Gissin Opinions"), to refute the Lerner Response. (A copy of the Gissin Supplemental Opinion, which is written in Hebrew, is annexed hereto as **Exhibit 11**. An unofficial English translation of the Gissin Supplemental Opinion provided to the Trustee by the Series A Indenture Trustee is annexed hereto as **Exhibit 12**).

21.    The Lerner Opinions relied upon by Reznik conclude that the Series B Sinking Fund is a trust asset which secures the Debtor's entire indebtedness to the Series B Bondholders. The Gissin Opinions support the Trustee's position that the Series

285337

6

B Sinking Fund is property of the Debtor's estate. The Trustee also submits that the Gissin Opinions support the Trustee's position that the Series C Sinking Fund, which is governed by a Deed of Trust substantially similar to the Series B Deed of Trust, is partially estate property.

22.   The Trustee advised Reznik that the filing of the Declaratory Judgment Motion violated the automatic stay, and Reznik ultimately withdrew the Declaratory Judgment Motion.

23.   Mishmeret contends that the Series C Sinking Fund is not property of the estate, and advanced that position in the Bankruptcy Court in its October 31, 2013 motion (the "Mishmeret Motion") [Docket No. 357].   The Mishmeret Motion, which remains pending, requested an order declaring that the Series C Sinking Fund is not property of the Debtor's estate and, therefore, that the automatic stay does not apply or, in the alternative, for relief from the automatic stay so that Mishmeret could exercise its rights under the Series C Deed of Trust and Israeli law for the benefit of the Series C Bondholders.

24.   The issues relating to the Trustee's and the Indenture Trustees' respective rights in the Sinking Funds (the "Sinking Funds Issue") has finally been resolved, subject to this Court's approval, in the Agreement for which approval is hereby sought.

**D.   The Creation of the Series B Sinking Fund and the Interest Payments Made by the Debtor**

25.   The Series B Deed of Trust provides, in relevant part:

> 5.   The Obligations of the Company
>
> … the Company hereby undertakes to pay all the Principal and interests amounts which shall be payable according to the terms of the Debentures (Series B), and to meet all the other conditions and

7

obligations imposed thereon according to the terms of the Debentures (Series B) and pursuant to this Trust Deed.

6.    <u>Securing the Debentures (Series B)</u>

6.1    … the Trustee will open a deposit account on its name, in trust for the Debenture Holders (Series B), for the purpose of securing the Company's undertaking with regard to the interest payments throughout the first four years of the aforementioned series, to the Debenture Holders (Series B) only… **The Company will deposit in the aforementioned account, an amount equal to four years of interest, whose rate will be determined in a tender on the interest rate (the "Deposit").**

6.2    **The Trustee shall return the Deposit to the Company after receiving the Company's written instruction and within two (2) Business Days from issuing an approval to the Trustee concerning the payment of the entire interest as of that date, as follows…**

\*    \*    \*    \*

6.4    In the event that the Debentures (Series B) are called for repayment at a date other than the repayment date, of any reason whatsoever, the Deposit funds will serve to complete the payments to the Debenture Holders (Series B), to the extent required.    **The remaining Deposit funds will be returned to the Company**.

Series B Deed of Trust, §§5, 6.1, 6.2, 6.4 (emphasis added).

26.    In accordance with the Series B Deed of Trust, Clal, as Series B Indenture Trustee, opened the Series B Sinking Fund on or about March 18, 2008.   See **Exhibit 6** at ¶18.  Pursuant to §6.1 of the Series B Deed of Trust, the Debtor deposited $44.6 Million U.S.D. into the account to secure four years of interest on the Series B Bonds.[3]

27.    Pursuant to §6.2 of the Series B Deed of Trust, one-eighth of the amount on deposit in the Series B Sinking Fund, including all accrued interest, was to be reimbursed

---

[3]  See Debtor's Form 10K for fiscal year ended December 31, 2011, an excerpt of which is annexed hereto as **Exhibit 13**, at Note 10 (p. 119 of 140).

to the Debtor after every semi-annual interest payment during the first four years.  See Series B Deed of Trust §§6.2.1 through 6.2.8.

28.     Prior to the Petition Date, the Debtor made payment of the entire interest due throughout the first four years of the Series B Bonds, which interest obligations the Series B Sinking Fund was established to secure.    However, the Debtor received no reimbursement, in violation of the terms of the Series B Deed of Trust.  No portion of the Series B Sinking Fund has ever been returned to the Debtor.

29.     Based on the above, and pursuant to Section 6.2 of the Series B Deed of Trust, it is the Trustee's position that the Debtor was entitled to return of the entire Series B Sinking Fund prior to the Petition Date, and that the Trustee is now entitled to turnover of the entire Series B Sinking Fund (containing $4,864,411.00 USD as of the Petition Date, plus accrued postpetition interest) pursuant to Bankruptcy Code section 542(a) and/or section 543(b)(1).    Reznik disputes this position, relying upon the Lerner Opinions. Reznik contends that only the Series B Bondholders have rights to the Series B Sinking Fund.

30.     Section 3.2 of the Series B Deed of Trust states:

> The Company maintains the right to purchase at any time, whether through the Stock Exchange or outside it, Debentures from this issuance at any price it deems fit, without damaging the duty of repayment of the Debentures (Series B), which will be held by others except the Company as aforementioned…

Series B Deed of Trust §3.2.

31.     During 2008 and/or 2009, the Debtor redeemed 76,652,713 Series B Bonds for NIS 30,800,000, and during 2011, the Debtor redeemed 38,778,155 Series B Bonds for NIS 28,000,000.  (The Series B Bonds redeemed by the Debtor from 2008 through 2011 are collectively referred to herein as the "Redeemed Series B Bonds".)

9

285337

32.    The Trustee therefore believes that the Debtor was not obligated to pay any

interest on the Redeemed Series B Bonds after the date of their redemption.

**E.    The Creation of the Series C Sinking Fund and the Interest Payments Made by the Debtor**

33.    The Series C Deed of Trust provides, in relevant part:

### 5.  The Obligations of the Company

… the Company hereby undertakes to pay all the Principal and interest amounts which shall be payable according to the terms of the Bonds (Series C), and to meet all the other conditions and obligations imposed thereon according to the terms of the Bonds (Series C) and pursuant to this Trust Deed.

### 6.  Securing the Bonds (Series C)

6.1    … the Trustee will open a deposit account on its name, in trust for the Bondholders (Series C), in order to secure the Company's undertakings with regard to the interest payments throughout the first four years of the aforementioned series, to the Bondholders (Series C) only. The funds held in the trust account shall be the property of the Trustee rather than the property of the Company… **The Company will deposit in the aforementioned account, an amount equal to four years of interest, whose rate will be determined in a tender for the interest rate ("the Deposit").**

\* \* \* \*

6.3    **The Trustee shall return the Deposit to the Company after receiving the Company's written instruction and within three Business Days from issuing an approval to the Trustee concerning the payment of the entire interest as of that date, as follows:**

6.3.1. **Against the execution of the first interest payment, 1/8 of the amount held in the Deposit at that time will be**

10

285337

reimbursed to the Company, as well as 1/8 of the revenues accrued from the date of depositing it;

6.3.2    **Against the execution of the second interest payment, 1/7 of the amount held in the Deposit at that time will be reimbursed to the Company, as well as 1/7 of the revenues accrued from the date of depositing it;**

6.3.3    **Against the execution of the third interest payment, 1/6 of the amount held in the Deposit at that time will be reimbursed to the Company, as well as 1/6 of the revenues accrued from the date of depositing it;…**

Series C Deed of Trust, §§5, 6.1, 6.3.1, 6.3.2, 6.3.3 (emphasis added).

34.    In accordance with the Series C Deed of Trust, Mishmeret, as Series C Indenture Trustee, opened the Series C Sinking Fund and the Debtor deposited into that account an account equal to four years of interest on the Series C Bonds. According to the Debtor's Form 10K, the Debtor deposited $12.5 Million U.S.D. into that account to secure the first four years of interest. See **Exhibit 13**, Note 10, at p. 117 of 140.

35.    As stated above, the Trustee and Mishmeret advance opposing arguments regarding ownership of the Series C Sinking Fund.

36.    The Debtor paid the first interest payment required under the Series C Deed of Trust (the "First Series C Interest Payment") on or about March 7, 2011 and paid the second required interest payment (the "Second Series C Interest Payment") on or about September 7, 2011.

37.    Pursuant to section 6.3.1 of the Series C Deed of Trust, the Series C Indenture Trustee was required, after the First Series C Interest Payment, to reimburse the Debtor one-eighth of the amount held in the Deposit at that time (i.e. at least $1.5 Million U.S.D.), as well as one-eighth of the revenues accrued from the date of the Deposit.

11

285337

Thus, it is the Trustee's position (disputed by Mishmeret) that on or about March 7, 2011, Mishmeret was required to reimburse the Debtor at least $1.5 Million U.S.D. The Series C Indenture Trustee did not make such payment to the Debtor.

38.    Pursuant to section 6.3.2 of the Series C Deed of Trust, the Series C Indenture Trustee was required, after the Second Series C Interest Payment, to reimburse the Debtor one-seventh of the amount held in the Deposit at that time (i.e. an amount which would have totaled approximately $1.5 Million U.S.D. had the first $1.5 Million U.S.D. been reimbursed to the Debtor on or about March 7, 2011 as required), as well as one-seventh of the revenues accrued from the date of the Deposit. The Trustee therefore believes (and Mishmeret disputes) that on or about September 7, 2011, Mishmeret was required to reimburse the Debtor at least another $1.5 Million U.S.D. (for a total of at least $3 Million U.S.D. as of September 7, 2011). The Series C Indenture Trustee did not make such payment to the Debtor.

39.    Pursuant to section 6.3.3 of the Series C Deed of Trust, the Series C Indenture Trustee was required, after receipt of the third interest payment required under the Series C Deed of Trust (the "Third Series C Interest Payment"), to reimburse the Debtor one-sixth of the amount held in the Deposit at that time (i.e. an amount which would have totaled approximately $1.5 Million U.S.D. had the first and second required reimbursements totaling approximately $3 Million U.S.D. been made), as well as one-sixth of the revenues accrued from the date of the Deposit. The Third Series C Interest Payment that was due to be paid to the Series C Bondholders on March 7, 2012 was paid to the Series C Bondholders out of the Series C Sinking Fund on or about March 29, 2012. (See **Exhibit 12**, at ¶49).

12

40.     In the early part of 2012, the Debtor and the Indenture Trustees entered into negotiations regarding the Debtor's ability to meet its obligations under the Bonds. In connection with those negations, the Debtor agreed to pay (and did pay) an additional NIS 7.06 Million (the "New Deposit") into the Series C Sinking Fund. (See **Exhibit 12**, at ¶50).

41.     It is the Trustee's position that the New Deposit is not subject to the terms and conditions of the Series C Deed of Trust and does not secure the Debtor's interest payment obligations to the Series C Bondholders. (See **Exhibit 12**, at ¶51). Thus, the Trustee believes that the Debtor's estate is entitled to be reimbursed the amount of the New Deposit, i.e., NIS 7,060,000 or $2,028,735 U.S.D.

42.     The Debtor, pursuant to section 3.2 of the Series C Deed of Trust, "maintain[ed] the right to purchase at any time, whether through the Stock Exchange or outside it, Bonds out of this issuance at any price it deems right, without damaging the duty of repayment of the Bonds (Series C), which will be held by others except the Company as aforementioned." Series C Deed of Trust, §3.2.

43.     During 2011, the Debtor redeemed 7,084,437 Series C Bonds (the "Redeemed Series C Bonds") for NIS 5,600,000.

44.     Section 6.8 of the Series C Deed of Trust states:

> 6.8.     …where the Company acquired bonds out of this series, as mentioned in clause 3.2 above and subject to the aforesaid therein, the Company…**will instruct the Trustee to release the relative part of the Deposit, which is attributed to the amount of Bonds purchase [sic] by the Company** as part of said acquisition, provided that the Company has issued approvals concerning acquisitions as aforesaid, to the satisfaction of the Trustee.

Series C Deed of Trust, §6.8 (emphasis added).

45.     The Trustee believes (and Mishmeret disputes)  that, pursuant to section

6.8 of the Series C Deed of Trust, the Debtor was entitled to return of the part of the

Series C Sinking Fund attributable to the Redeemed Series C Bonds, i.e. NIS 5,600,000

($1,609,195.40 U.S.D. at the exchange rate applicable as of the date of this Motion).

However, no part of the Series C Sinking Fund was returned to the Debtor.

46.      Section 7.1.4 of the Series C Deed of Trust states:

> 7.1.4. On the date of the early redemption, the Company will pay for the
> Bonds (Series C) which the Bondholders have asked to redeem,
> according to their par value balance, together with linkage and
> interest differences accrued on the Principal **until the actual early
> redemption date**, and the interest will be calculated in relation to the
> period commencing on the day following the last day for which an
> interest has been paid, and **until the above early redemption date**
> (the calculation of interest for part of a year will be made on the basis
> of 375 days per year).
>
>         * * * *
>
> **An early redemption of the Bonds (Series C) as aforesaid shall
> not grant any of the Bondholders (Series C) who will redeem as
> mentioned the right to the payment of interest for the period
> following the early redemption date**.

Series C Deed of Trust, §7.1.4.

47.      The Trustee believes that pursuant to section 7.1.4 of the Series C Deed

of Trust, the Debtor was not obligated to pay any interest on the Redeemed Series C

Bonds for any period subsequent to the early redemption date in 2011.

48.      No portion of the Series C Sinking Fund has ever been returned to the

Debtor.

49.      Based on the above, the Trustee believes that the estate is entitled to

turnover of the funds in the Series C Sinking Fund which constitute property of the

Debtor's estate (i.e. at least $6.6 Million U.S.D. as of the date of this Motion), pursuant

to Bankruptcy Code section 542(a) and/or section 543(b)(1).  Mishmeret disagrees and

asserts that numerous documents filed in the bankruptcy case and representations in

Court by respective counsel to the Debtor and Creditors Committee confirm the

separate property interest that the Series C Trustee maintains in the Sinking Fund for

the sole benefit of the Series C Bondholders.  (Mishmeret Motion, ¶21).

**F.**    **The Debtor's Payments On The Bonds During The Preference Period**

50.    The Debtor made four (4) wire transfers totaling $89,725.70 USD to Clal

(Reznik's predecessor) within the ninety (90) day period prior to the Petition Date

(collectively, the "Clal Payments"), as follows:

| Wire Transfer Date | Amount (USD) | Clear Date |
|---|---|---|
| 07/12/12 | $ 4,004.52 | 07/12/12 |
| 07/12/12 | $27,192.69 | 07/12/12 |
| 08/22/12 | $30,595.15 | 08/22/12 |
| 08/22/12 | $27,933.34 | 08/22/12 |
| **TOTAL:** | **$89,725.70** | |

51.    The Debtor made three (3) transfers totaling $27,184.78 USD to Mishmeret

within the ninety (90) day period prior to the Petition Date (collectively, the "Mishmeret

Payments"), as follows:

| Transfer Date | Amount (USD) | Clear Date |
|---|---|---|
| 06/10/12 | $ 8,218.16 | 06/10/12 |
| 07/11/12 | 9,073.49 | 07/11/12 |
| 08/15/12 | 9,893.13 | 08/15/12 |
| **TOTAL:** | **$ 27,184.78** | |

52.    The Debtor made two (2) wire transfers totaling $34,319.90 USD to

Hermetic within the ninety (90) day period prior to the Petition Date (collectively, the

"Hermetic Payments" and, together with the Clal Payments and the Mishmeret Payments,

the "Payments"), as follows:

15

285337

| Transfer Date | Amount (USD) | Clear Date |
|---|---|---|
| 07/11/12 | $25,004.29 | 07/11/12 |
| 08/15/12 | $ 9,315.61 | 08/15/12 |
| **TOTAL:** | **$34,319.90** | |

53.    The Trustee believes that the Payments may be avoided as preferences pursuant to section 547 of the Bankruptcy Code and recovered from the Indenture Trustees pursuant to Bankruptcy Code section 550.  Each of the Indenture Trustees (Reznik, Mishmeret and Hermetic) dispute this, and claim that the Payments represent ordinary course of business disbursements that are excepted from avoidance pursuant to Bankruptcy Code section 547(c).

**G.    The Proofs Of Claim Filed By The Indenture Trustees On Behalf Of The Bondholders**

54.    Hermetic, on behalf of the Series A Bondholders, filed a general unsecured claim (the "Hermetic Claim") in the Debtor's case in the amount of "$54,209,981 on account of the Series A Debentures, plus $160,484 on account of the Series A Trustee's fees and expenses, plus accruing and unliquidated amounts."

55.    Reznik, on behalf of the Series B Bondholders, filed a general unsecured claim (the "Reznik Claim") in the Debtor's case in the amount of "$136,696,132 on account of the Series B Debentures, plus the Series B Trustee's fees and expenses ($193,906 as of January 2013), plus other accruing and unliquidated amounts."

56.    Mishmeret, on behalf of the Series C Bondholders, filed a general unsecured claim (the "Mishmeret Claim" and, together with the Hermetic Claim and the Reznik Claim, the "Claims") in the Debtor's case in the amount of "$43,790,378.26 on account of the Series C Debentures, plus $153,582 on account of the Series C Trustee's fees and expenses, plus accruing and unliquidated amounts."

285337

H.    **The Trustee's Demands For Return Of The Sinking Funds**

57.    By letter dated October 18, 2013, the Trustee made demand upon Reznik pursuant to section 6.2 of the Series B Deed of Trust for delivery of the Series B Sinking Fund, together with all earnings thereon.  Reznik rejected and refused such demand.

58.    By letter dated October 18, 2013, the Trustee made demand upon Mishmeret, pursuant to section 6.3 of the Series C Deed of Trust, for delivery of the Series C Sinking Fund, together with all earnings thereon.  Mishmeret rejected and refused such demand.

I.    **The Mishmeret Motion**

59.    As discussed above, Mishmeret filed the Mishmeret Motion on October 31, 2013, seeking an order declaring that the Series C Sinking Fund is not property of the Debtor's estate and, therefore, that the automatic stay does not apply or, in the alternative, for relief from the automatic stay so that Mishmeret could exercise its rights under the Series C Deed of Trust and Israeli law for the benefit of the Series C Bondholders.  The Mishmeret Motion has been adjourned several times and remains pending.  The next scheduled hearing date on the Mishmeret Motion is May 29, 2014 at 10:00 a.m.

## THE AGREEMENT

60.    The Trustee and the Indenture Trustees, after arduous negotiations over several months, agreed to a resolution of the Sinking Funds Issue, the issues concerning whether the Payments constitute voidable preferences under Bankruptcy Code section 547 (the "Preference Issues"), and the Mishmeret Motion.

61.    On May 20, 2014, the Trustee and the Indenture Trustees entered into the

Agreement, to resolve the Sinking Funds Issue, the Preference Issues and the Mishmeret

Motion (collectively, the "Subject Matter").  The salient terms of the Agreement are as

follows:

- In full settlement of any and all claims of the Trustee against Reznik, Mishmeret, and Hermetic involving the Subject Matter upon the Effective Date, the Series B and Series C Indenture Trustees shall, in a one-time payment, remit the sum of $1.5 million USD (the "Settlement Funds") to the Trustee as follows: Reznik will remit the amount of $975,000 USD from the Series B Sinking Fund and Mishmeret will remit the amount of $525,000 USD from the Series C Sinking Fund.

  Neither of the Series B nor Series C Indenture Trustees will be liable for the other party's share.

- The Settlement Funds shall be available for Chapter 7 administrative expenses, including professional fees and expenses, which professional fees and expenses will only be paid upon application to and approval by the Court, on notice to all creditors, including the Indenture Trustees.

- On the Effective Date  and upon the Trustee's receipt of the Settlement Funds, (i) Reznik, Mishmeret and Hermetic shall be released from any liability relating to the Payments; (ii) the Series B and Series C Indenture Trustees shall be entitled to exercise complete dominion and control over the Series B and Series C Sinking Funds, respectively, and shall distribute them to the Series B and C Bondholders, respectively, or use them according to the respective Deeds of Trust without need of any further orders or proceedings; (iii) the Trustee shall have no right, claim or demand and waives and relinquishes any and all claims with respect to the Sinking Funds; (iv) the Indenture Trustees shall have the right to issue a notice on the acceleration of the amounts due by the Debtor under the Bonds to the Bondholders and (v) each of the Indenture Trustees shall have no right, claim or demand and waives and relinquishes any and all claims with respect to the Sinking Funds held by the other Indenture Trustee.

- The Trustee agrees to convene monthly conference calls with a steering committee comprised of representatives of the Bondholders who sign a confidentiality agreement, and furnish the steering committee, from time to time, with financial reports regarding the revenues and expenses (sources and usages) of the Debtor's estate and MAG under their respective bank accounts.

- The Claims filed by the Indenture Trustees remain unaffected by the Agreement.

- Each Party to the Agreement shall bear its own attorneys' fees and costs in connection with the Subject Matter and the Agreement.

62.    The Trustee believes that the settlement is in the best interest of the Debtor's estate.

## REQUEST FOR RELIEF

63.    By this Motion, the Trustee seeks approval of the Agreement pursuant to Bankruptcy Code sections 105(a) and 362(d) and Bankruptcy Rules 4001(d) and 9019(a).

## THE AGREEMENT SHOULD BE APPROVED

64.    Bankruptcy Rule 9019(a) grants the bankruptcy court authority to approve settlement of legitimate disputes in bankruptcy cases. In re Drexel Burnham Lambert Group, 140 B.R. 347, 349 (S.D.N.Y. 1992); In re WorldCom, Inc., 347 B.R. 123, 136-137 (Bankr. S.D.N.Y. 2006).  Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the Trustee and after notice and a hearing, the Court may approve a compromise or settlement. "Fed. R. Bankr. P. 9019(a).

65.    The decision to approve a settlement lies within the discretion of the bankruptcy court.  Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618 (S.D.N.Y. 1997); In re Prudential Lines, Inc., 170 B.R. 222, 246 (S.D.N.Y. 1994), citing In re Texaco, Inc., 84 B.R. 893 (Bankr. S.D.N.Y.), appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988); WorldCom, 347 B.R. at 136-137.

66.    A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve the settlement. In re MF Global, Inc., 2013 Bankr. LEXIS 427 at *12 (Bankr. S.D.N.Y. Jan. 31, 2013); In re Drexel Burnham Lambert Grp., Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y.

1991) (citing <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.</u>
<u>Anderson</u>, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968)). <u>See also</u>
<u>Topwater Exclusive Fund III, LLC v. SageCrest II, LLC (In re SageCrest II)</u>, Nos.
3:10cv978 (SRU), 3:10cv979 (SRU), 2011 U.S. Dist. LEXIS 3517, 2011 WL 134893, at
*8-9 (D. Conn. Jan. 14, 2011); <u>Cousins v. Pereira (In re Cousins)</u>, No. 09 Civ.
1190(RJS), 2010 U.S. Dist. LEXIS 136139, 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22,
2010); <u>In re Chemtura Corp.</u>, 439 B.R. 561, 593-94 (Bankr. S.D.N.Y. 2010); <u>In re</u>
<u>Lehman Bros. Holdings</u>, 435 B.R. 122, 134 (S.D.N.Y. 2010).

67.    Courts in this Circuit have developed standards to evaluate if a settlement
is fair and equitable, based on the original framework announced in <u>Protective Comm.</u>
<u>for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 88 S. Ct.
1157, 20 L. Ed. 2d 1 (1968). <u>See, e.g.</u>, <u>Motorola, Inc. v. Official Comm. of Unsecured</u>
<u>Creditors (In re Iridium Operating LLC)</u>, 478 F.3d 452, 462 (2d Cir. N.Y. 2007)(citing
<u>TMT Trailer Ferry</u>). <u>See also</u> 10 Collier on Bankruptcy P 9019.02 (15th ed. rev.). Those
interrelated factors are: (1) the balance between the litigation's possibility of success
and the settlement's future benefits; (2) the likelihood of complex and protracted
litigation, "with its attendant expense, inconvenience, and delay," including the difficulty
in collecting on the judgment; (3) "the paramount interests of the creditors," including
each affected class's relative benefits "and the degree to which creditors either do not
object to or affirmatively support the proposed settlement"; (4) whether other parties
in interest support the settlement; (5) the "competency and experience of counsel"
supporting, and "[t]he experience and knowledge of the bankruptcy court judge"
reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by

officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." Motorola, 478 F.3d at 462, citing WorldCom, 347 B.R. at 137 (Bankr. S.D.N.Y. 2006).

68.     It is not necessary for the bankruptcy court to conduct a "mini trial" on the issue. Worldcom, 347 B.R. at 137; Drexel Burnham Lambert, 140 B.R. at 349.  The Court need only "canvass the issues" to determine if the "settlement falls below the lowest point in the range of reasonableness." In re Teltronics Serv., Inc., 762 F.2d 185, 189 (2d Cir. 1985); Worldcom, 347 B.R. at 137.

69.     It is respectfully submitted that when this Court "canvasses" the issues surrounding the proposed settlement, it should conclude, as the Trustee has, that the settlement does not "fall below the lowest point in the range of reasonableness". See Teltronics, 762 F.2d at 189.

### APPLICATION OF THE 9019 FACTORS TO THE AGREEMENT

70.     As demonstrated below, the relevant factors militate strongly in favor of approval of the Agreement.

(1)     The Balance Between The Litigation's Possibility
         Of Success And The Settlement's Future Benefits

71.     While the Trustee believes he may be successful if he were to seek (a) turnover, pursuant to sections 542(a) and/or 543(b)(1) of the Bankruptcy Code, of the entire Series B Sinking Fund and of the portion of the Series C Sinking Fund which constitute property of the Debtor's estate, and (b) avoidance and recovery of the Payments as preferences pursuant to Bankruptcy Code sections 547 and 550, the Trustee acknowledges that there are always risks in litigation.

72.     Reznik and Mishmeret vigorously dispute the Trustee's claims to the

21

Sinking Funds. Furthermore, Mishmeret has argued that numerous documents filed in the bankruptcy case and representations in Court by respective counsel to the Debtor and Creditors Committee confirm the separate property interest that the Series C Trustee maintains in the Sinking Fund for the sole benefit of the Series C Bondholders. (Mishmeret Motion, ¶21).

73.    Moreover, the Gissin Opinions and the Lerner Opinions are in conflict.

74.    The Trustee's ability to obtain turnover of the Sinking Funds from the Series B and C Indenture Trustees is also complicated by the fact that the Series B and C Bonds and the Series B and C Deeds of Trust are, by their terms, governed by Israeli law, and the fact that exclusive jurisdiction over any conflict concerning the Series B and C Deeds of Trust lies in the Israeli courts in Tel Aviv-Jaffa. See Series B Deed of Trust §§ 28, 29; Series C Deed of Trust §§ 28, 29.

75.    The Trustee believes that the interests of the creditors and of all parties in interest are best served by the settlement in that the settlement resolves the substantial disputes relating to the Sinking Funds Issue, the Preference Issues and the Mishmeret Motion fairly, eliminates the litigation risk associated with such matters, and provides that the Trustee will promptly receive Settlement Funds totaling $1.5 million USD from the Sinking Funds.

(2)    The Likelihood of Complex And Protracted Litigation, With Its Attendant Expense, Inconvenience, And Delay, Including The Difficulty In Collecting On The Judgment

76.    As demonstrated above, there is a substantial controversy regarding whether, and to what extent, the Sinking Funds are property of the Debtor's estate. The Indenture Trustees have demonstrated their willingness to engage in protracted

285337

22

litigation in this dispute, as evidenced by Reznik's filing of the First and Second Israeli Proceedings, by Hermetic's procuring of the Gissin Opinions, by Reznik's procuring of the Lerner Opinions, and by Mishmeret's filing of the Mishmeret Motion in this Court. Such protracted litigation would be expensive, and the expense of the litigation could be problematic for the Debtor's estate, which has limited funds.

77.   In the event that the Trustee were to obtain judgments against the Indenture Trustees after litigation before this Court, it would be difficult and costly to enforce those judgments in Israel, where the Indenture Trustees and the Sinking Funds are located.  Furthermore, the Court, as a practical matter, may be unable to prevent the Indenture Trustees from violating the automatic stay by exercising control of the Sinking Funds in Israel if the judgments are not timely paid.

78.   There would very likely be an undue and irreversible delay in the administration of the Debtor's case if the Agreement is not approved by the Bankruptcy Court, and if the Trustee were instead forced to litigate with the Indenture Trustees.

(3)   The Paramount Interests of The Creditors

79.   The paramount interest of creditors is served by the Agreement.  It is desirable and beneficial to creditors that the Sinking Funds Issue, the Preference Issues and the Mishmeret Motion be fully and finally settled in the manner and upon the terms and conditions set forth in the Agreement.

(4)   Whether Other Parties In Interest Support The Settlement

80.   This factor weighs in favor of the Agreement, as the Trustee believes that the Bondholders (who have authorized the Indenture Trustees to enter into the

285337

23

Agreement) hold over 95% of the unsecured claims in this case.

(5)     The "Competency and Experience of Counsel" Supporting the Settlement

81.     This factor militates in favor of approval of the settlement.  The settlement was negotiated by experienced counsel on both sides.

(6)     The Nature And Breadth of Releases To Be Obtained by
        Officers and Directors

82.     No releases of officers or directors are being provided in the Agreement.

(7)     The Extent To Which The Settlement Is The Product of
        Arm's Length Bargaining

83.     The Agreement is the product of arm's length bargaining between the Trustee and the Indenture Trustees.

84.     Based on the foregoing, it is clear that the relevant factors weigh heavily in favor of approval of the Agreement.  The Trustee believes that the terms of the Agreement are fair and reasonable and in the best interests of the Debtor's estate.

## COMPLIANCE WITH BANKRUPTCY RULE 4001(d)

85.     Since the Trustee contends that the Series B Sinking Fund and a portion of the Series C Sinking Fund are property of the Debtor's estate and the Agreement provides for a final allocation of the Sinking Funds between the Trustee and the Indenture Trustees, thereby releasing a portion of the Sinking Funds from the Debtor's estate and the automatic stay, the Trustee submits that Bankruptcy Code section 362(d) is applicable.

86.     Bankruptcy Rule 4001(d)(1)(A) requires that a motion for approval of an agreement to modify or terminate the automatic stay be accompanied by a copy of the agreement and a proposed form of order.  Copies of the proposed Order and

the Agreement are annexed to this Motion as **Exhibits 1** and **2**, respectively.  This Motion therefore satisfies the requirements of Bankruptcy Rule 4001(d)(1)(A).

87.    Bankruptcy Rule 4001(d)(1)(B) requires that this Motion list or summarize the location of the material provisions of the Agreement modifying the stay.  The Agreement provides in paragraph 1 that Reznik and Mishmeret will remit the Settlement Funds from the Sinking Funds.  Bankruptcy Rule 4001(d)(1)(B) is therefore satisfied.

88.    Based on the foregoing, the Trustee respectfully requests that this Court approve the Agreement pursuant to Bankruptcy Code sections 105(a) and 362(d) and Bankruptcy Rules 4001(d) and 9019(a).

## NOTICE

89.    Notice of this Motion has been given in accordance with this Court's Order Granting Chapter 7 Trustee's Motion to Limit Notice and to Establish Case Management Procedures, entered on September 12, 2013 [Docket No. 342].

## NO PRIOR MOTION

90.    No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

## CONCLUSION

91.    The Trustee respectfully requests that the Court approve the Agreement

annexed hereto as **Exhibit 2**, and that the Court grant such other and further relief as to

this Court appears just and proper.

Dated:   New York, New York
         May 21, 2014

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for Alex Spizz, Chapter 7 Trustee

By:    _____
         Alex Spizz, Esq.
         Janice B. Grubin, Esq.
         Arthur Goldstein, Esq.
         Jill Makower, Esq.
         425 Park Avenue
         New York, NY  10022
         (212) 754-9400

26