Hearing Date: **June 17, 2014**
Hearing Time: **10:00 A.M.**

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, Chapter 7 Trustee**
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Janice B. Grubin, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                                    Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                    Case No. 12-13689 (SMB)

                                    Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**NOTICE OF CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (I)
AUTHORIZING TRUSTEE TO ENTER INTO LITIGATION FINANCING
AGREEMENT PURSUANT TO 11 U.S.C. §§364(b) AND 364(e), AND (II)
MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d) TO
PERMIT TRUSTEE TO IMPLEMENT TERMS OF LITIGATION LOAN**

**PLEASE TAKE NOTICE** that upon the motion dated May 21, 2014 (the "Motion")

of Alex Spizz, the Chapter 7 trustee (the "Trustee") of the above-captioned debtor, Ampal-

American Israel Corporation ("Debtor"), by his counsel, Spizz Cohen & Serchuk, P.C., the

Trustee will move before the Honorable Stuart M. Bernstein, United States Bankruptcy

Court Judge, in his Courtroom at the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, New York, New York 10004, on the **17th day of**

**June 2014 at 10:00 A.M.**, or as soon thereafter as counsel can be heard (the "Hearing

Date"), for an order, substantially in the form annexed to the Motion as Exhibit "A",

(i)     authorizing the Trustee, pursuant to Bankruptcy Code
sections 364(b) and (e), Bankruptcy Rule 4001(c) and Local
Bankruptcy Rule 4001-2, to enter into a certain proposed
"Litigation Financing Agreement" dated May 20, 2014
annexed to the Motion as **Exhibit "B",** by and between  (a)
the Trustee, (b) the Debtor's indirect subsidiary, Merhav
Ampal Group Ltd. ("MAG") and (c) the following indenture
trustees: Hermetic Trust (1975) Ltd.,  Reznik Paz Nevo
R.P.N. Trusts 2007 Ltd., and Mishmeret Trust Services
Company Ltd.; and

(ii)    modifying the automatic stay pursuant to Bankruptcy Code
section 362(d) to permit the Trustee to implement the terms
of the Litigation Loan (as defined in the Motion).

**PLEASE TAKE FURTHER NOTICE,** that any objections to the Motion
must be filed with the Clerk of the Bankruptcy Court with a copy delivered to the
Chambers of the Honorable Stuart M. Bernstein and served upon: (i) Spizz Cohen &
Serchuk, P.C., attorneys for the Trustee, 425 Park Avenue, New York, New York 10022,
Attn: Alex Spizz, Esq. and Janice B. Grubin, Esq.; (ii) the Office of the United States
Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York,
New York 10014, Attn: Andrew D. Velez-Rivera, Esq., (iii) Hermetic Trust (1975) Ltd.,
113 Hayarkon Street, Tel Aviv 63573, Israel, Attn.: Dan Offer, Adv.; (iv) DBL Law
Offices, attorneys for Reznik Paz Nevo R.P.N. Trusts 2007 Ltd., 1 Azrieli Center (Round
Bldg., 22nd Fl.), Tel Aviv, 67201 Israel, Attn: Arye Danzinger, Adv.; and (v) Tarter,
Krinsky & Drogin, LLP, Attorneys for Mishmeret Trust Services Company Ltd., 1350
Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq., so as to be filed

and received at least seven (7) days prior to the Hearing Date.

Dated: New York, New York
       May 21, 2014

                                        SPIZZ COHEN & SERCHUK, P.C.
                                        Attorneys for Alex Spizz, Chapter 7
                                        Trustee for Ampal-American Israel Corporation,
                                        Debtor

                                By:_____
                                        Alex Spizz
                                        Janice B. Grubin
                                        Arthur Goldstein
                                        Jill Makower
                                        425 Park Avenue
                                        New York, New York 10022
                                        (212) 754-9400

|  | Hearing Date: | **June 17, 2014** |
|--|---------------|-------------------|
|  | Hearing Time: | **10:00 A. M.** |

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, Chapter 7 Trustee**
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Janice B. Grubin, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                    Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,            Case No. 12-13689 (SMB)

                              Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (I) AUTHORIZING TRUSTEE TO ENTER INTO LITIGATION FINANCING AGREEMENT PURSUANT TO 11 U.S.C. §§364(b) AND 364(e), AND (II) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d) TO PERMIT TRUSTEE TO IMPLEMENT TERMS OF LITIGATION LOAN

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE

Alex Spizz, the Chapter 7 trustee (the "Trustee") of Ampal-American Israel

Corporation, the debtor herein (the "Debtor"), submits this motion (the "Motion")

seeking entry of an order, substantially in the form annexed hereto as **Exhibit "A"**,

(i)       authorizing the Trustee, pursuant to sections 364(b) and (e) of title 11,

United States Code (the "Bankruptcy Code"), Rule 4001(c) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule ("LBR")

4001-2, to enter into a certain "Litigation Financing Agreement" dated May 20, 2014 (the

"LFA") annexed hereto as **Exhibit "B",** by and among (a) the Trustee, (b) the Debtor's

indirect subsidiary Merhav Ampal Group Ltd. ("MAG") and (c) the following indenture

trustees (the "Indenture Trustees"): Hermetic Trust (1975) Ltd. ("Hermetic"),  Reznik Paz

Nevo R.P.N. Trusts 2007 Ltd. ("Reznik"), and Mishmeret Trust Services Company Ltd.

("Mishmeret"); and

(ii)      modifying the automatic stay pursuant to Bankruptcy Code section 362(d)

to permit the Trustee to implement the terms of the Litigation Loan (defined below).  In

support of this Motion, the Trustee respectfully represents:

## JURISDICTION

1.      This Court has subject matter jurisdiction to consider and determine this

Motion pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C.

§157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## INTRODUCTION

2.      By this Motion, the Trustee seeks authority pursuant to Bankruptcy Code

sections 364(b) and (e) to enter into the LFA in order to borrow funds from the

participating bondholders (the "Participating Bondholders") that the Indenture Trustees

represent, to finance litigation by the Trustee (on behalf of MAG) against (a) Yosef A.

Maiman ("Maiman") and/or (b) Merhav (M.N.F.) Limited ("MNF"), and/or (c) the directors

and officers of any corporation which is part of the Ampal group of companies

(collectively, the "Maiman Litigation"). The Maiman Litigation will consist of claims to be

brought by the Trustee on behalf of MAG based on a Note and Guaranty (as such terms

are defined below) and based on Debtor's former directors' and officers' breaches of

fiduciary duty to the Debtor and its subsidiaries.

2

3.      This Motion also requests modification of the automatic stay, pursuant to Bankruptcy Code section 362(d), to permit the Trustee to implement the terms of the Litigation Loan (defined below).

4.      The Trustee believes that the proposed financing is in the best interest of the estate, as demonstrated below.

## FACTS

### A.    General

5.      On August 29, 2012 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code.

6.      The Debtor is an investment company, incorporated in New York, which primarily acquired interests in companies located or operating in Israel in the energy, chemicals, real estate, project development and leisure sectors.  The Debtor's principal assets are its direct and indirect equity holdings in over 80 corporations (the "Subsidiaries"), and the Debtor's business consisted of managing its equity investments in the Subsidiaries.  None of the Debtor's Subsidiaries is a debtor in this or any other U.S. bankruptcy court and none is the subject of any bankruptcy case, insolvency proceeding or receivership proceeding outside of the United States except for Gadot Chemical Tankers and Terminals Ltd., which is in receivership in Israel.

7.      On September 25, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee").

8.      On April 8, 2013, the Court ordered the appointment of a Chapter 11 trustee and the Office of the U.S. Trustee thereafter designated Michael Luskin as Chapter 11 trustee.

3

9.    Michael Luskin, as Chapter 11 trustee, moved to convert this case to Chapter 7 on the grounds that, among other things, the Debtor was administratively insolvent.

10.    By Order dated May 2, 2013 (the "Conversion Date"), the Court converted the case to one under Chapter 7.

11.    On May 3, 2013, the Office of the U.S. Trustee appointed Alan Nisselson as interim Chapter 7 trustee.

12.    On May 20, 2013 (the "Election Date"), Alex Spizz was elected Chapter 7 Trustee of the Debtor pursuant to section 702 of the Bankruptcy Code and was duly qualified thereafter.

13.    Pursuant to the "Order Authorizing Chapter 7 Trustee To Exercise Debtor's Shareholder Rights" entered on July 25, 2013 [Docket No. 325] (the "Shareholder Rights Order"), the Trustee was authorized, effective as of May 20, 2013, "to exercise the Debtor's shareholder rights with respect to the business and affairs of the Debtor's subsidiaries, as provided for under New York law or other applicable law that may be appropriate[.]" (Shareholder Rights Order at p. 1-2).

## B.    The Note And the Guaranty

14.    On December 25, 2007, Merhav (M.N.F.) Limited ("MNF") signed a promissory note, as amended on December 25, 2008 (the "Note"), in favor of the Debtor with regard to a Twenty Million Dollar ($20,000,000 USD) loan that MNF obtained from the Debtor (the "Loan"). According to the Note, the purpose of the Loan was facilitating an ethanol producing project in Columbia (the "Project") and funding the purchase of 11,000 hectares of real property located in Colombia with regard to the development of

the Project.  In connection with the Loan, the Debtor and MNF also signed a pledge agreement, an option agreement and an exercise agreement, and amendments thereto, between December 25, 2007 and December 31, 2009.

15.    On December 25, 2008, Maiman, the sole owner of MNF and the chairman of Debtor's board of directors and its president and chief executive officer until May 2013, signed an irrevocable, absolute and continuing guaranty (the "Guaranty") for repayment of all sums owed by MNF to the Debtor under the Note.

## C.    The Debtor's Assignment of the Note and Guaranty to MAG

16.    On December 31, 2010, the Debtor and MAG signed an Assignment and Assumption Agreement (the "Assignment Agreement"), in which Debtor contributed, conveyed, transferred, assigned and delivered to MAG (Debtor's indirect subsidiary) all of Debtor's rights, title and interest in and to the Note, the Guaranty and all other documents relating to the Project.    On December 8, 2011, MNF and MAG signed a second amendment to the exercise agreement.

## D.    The Debtor's Issuance of Bonds Prior To The Petition Date

17.    Prior to the Petition Date, the Debtor issued three series of bonds, Series A, Series B, and Series C (collectively, the "Bonds").  The Indenture Trustees represent the holders of the Bonds as follows: Hermetic[1] is the Series A Indenture Trustee, Reznik is the

---

[1] Hermetic is the Indenture Trustee with respect to the Deed of Trust dated as of November 20, 2006 (as amended and supplemented, the "Series A Deed of Trust") that the Debtor entered into with Hermetic in connection with the Debtor's issuance of Series A Bonds in the original principal amount of two hundred and fifty million (250,000,000) New Israeli Shekel ("NIS") par value.  The conversion rate as of the drafting of this Motion is $1 U.S. Dollar equals approximately 3.48 NIS.

Series B Indenture Trustee[2] and Mishmeret[3] is the Series C Indenture Trustee.

### E.      The Sinking Funds

18.      Prior to the Petition Date, separate bank accounts were established as security for the Debtor's interest obligations under the Bonds for the Series B Bondholders (the "Series B Sinking Fund") and the Series C Bondholders (the "Series C Sinking Fund" and, together with the Series B Sinking Fund, the "Sinking Funds").

### F.      The Proofs Of Claim Filed By The Indenture Trustees On Behalf Of The Bondholders

19.      Hermetic, on behalf of the Series A Bondholders, filed a general unsecured claim (the "Hermetic Claim") in the Debtor's case in the amount of "$54,209,981 on account of the Series A Debentures, plus $160,484 on account of the Series A Trustee's fees and expenses, plus accruing and unliquidated amounts."

20.      Reznik, on behalf of the Series B Bondholders, filed a general unsecured claim (the "Reznik Claim") in the Debtor's case in the amount of "$136,696,132 on account of the Series B Debentures, plus the Series B Trustee's fees and expenses ($193,906 as of January 2013), plus other accruing and unliquidated amounts."

21.      Mishmeret, on behalf of the Series C Bondholders, filed a general unsecured claim (the "Mishmeret Claim" and, together with the Hermetic Claim and the

---

[2]  Reznik is the Indenture Trustee with respect to the Deed of Trust dated April 6, 2008 (as amended and supplemented, the "Series B Deed of Trust") that the Debtor entered into with Clal Finances Trusts 2007 Ltd. ("Clal") as indenture trustee in connection with the Debtor's issuance of Series B Bonds in the original principal amount of NIS 577,823,000 (five hundred and seventy-seven million and eight hundred and twenty-three thousand) par value.  (Reznik subsequently replaced Clal as the Series B Indenture Trustee.)

[3]  Mishmeret, formerly known as Ziv Haft Trust Company Ltd., is the Indenture Trustee with respect to the Deed of Trust dated August 31, 2010 (as amended and supplemented, the "Series C Deed of Trust") that the Debtor entered into with Mishmeret in connection with the Debtor's issuance of Series C Bonds in the original principal amount of NIS 170,000,000 (one hundred and seventy million) par value.

Reznik Claim, the ("Claims") in the Debtor's case in the amount of "$43,790,378.26 on account of the Series C Debentures, plus $153,582 on account of the Series C Trustee's fees and expenses, plus accruing and unliquidated amounts.

**G.      The Trustee's Settlement with the Indenture Trustees**

22.      On May 20 2014, the Trustee and the Indenture Trustees entered into a certain "Agreement Concerning Sinking Funds and Alleged Preferential Transfers" dated May 20, 2014 (the "Sinking Funds Agreement"), which resolves, subject to the Court's approval, (a) the issue relating to the Trustee's and the Indenture Trustees' respective rights in certain monies held by Reznik and Mishmeret in Israel banks (the "Sinking Funds Issue"), (b) the Trustee's preference claims against the Indenture Trustees, and (c) Mishmeret's pending motion for an order declaring that the Series C Sinking Fund is not property of the Debtor's estate and, therefore, that the automatic stay does not apply or, in the alternative, for relief from the automatic stay so that Mishmeret could exercise its rights under the Series C Deed of Trust and Israeli law for the benefit of the Series C Bondholders [Docket No. 357].   The Trustee has filed a motion for approval of the Sinking Funds Agreement (the "9019 Motion").  The hearing on the 9019 Motion is scheduled for June 17, 2014 at 10:00 a.m.

**H.      The LFA**

23.      On May 20, 2014, the Trustee, MAG, and the Indenture Trustees on behalf of the Participating Bondholders, entered into the LFA, subject to Court approval. The LFA provides for a loan (the "Litigation Loan") in the sum of $1.5 Million U.S.D. to be made to the Trustee to finance the Maiman Litigation.

7

I.    **The Proposed Litigation Loan**

24.    The principal elements of the proposed Litigation Loan are summarized as follows:

a.    **Amount of Litigation Loan** - The Litigation Loan is in the sum of $1,500,000.00 U.S.D.  (LFA § 1)

b.    **Lenders** - The funds will be loaned by the Participating Bondholders. (LFA § 3)

c.    **Priority Status** - The LFA provides that the Trustee's obligations under the Litigation Loan shall, pursuant to Bankruptcy Code section 364(b), constitute a Chapter 7 administrative expense of the Debtor allowable under Bankruptcy Code section 503(b)(1). (LFA § 8)

d.    **Collateral Furnished By MAG** - The Trustee's obligations under the Litigation Loan shall be secured by MAG, by the proceeds recovered from any judgment or settlement reached in the Maiman Litigation (the "Proceeds") or other MAG sources, if possible, subject to the claims of the Israeli Taxing Authorities and Israel Discount Bank against MAG.  (LFA § 8)

MAG shall secure the repayment of the Litigation Loan by granting to the Participating Bondholders: (i) a first priority lien, unlimited in amount on all Proceeds received by MAG, and (ii) an irrevocable guaranty by MAG for the full amount due under Litigation Loan, subject to the prior claims set forth in section 8 of the LFA. The lien and guaranty shall be created, registered and governed exclusively by Israeli law, will be subject to the exclusive jurisdiction of the Israeli courts, and their terms shall be confirmed in advance by the Indenture Trustees. (LFA § 12)

MAG agrees to refrain from receiving any additional loans, without first requesting said additional loans from its existing creditors. (LFA § 13)

e.    **Interest Rate** - The entire Litigation Loan amount shall bear yearly interest at the rate of ten (10%) percent for the first year, eleven (11%) percent for the second year, twelve (12%) percent for the third year and thirteen (13%) percent for the fourth year on. In the event of default in the terms of the LFA, additional arrears interest shall be accrued in an annual rate of an additional five (5%) percent. The interest on the Litigation Loan shall be accrued to the principal and paid upon payment of the principal. (LFA § 14)

f.    **Maturity / Repayment** - The Litigation Loan (including the interest stipulated in section 14 of the LFA) shall be repaid within seven (7) days from Trustee's receipt of the Proceeds and/or from any other funds or proceeds received by the Debtor's estate from any other source received by the Debtor's estate in the future. For the avoidance of doubt, the Litigation Loan shall be repaid from any future proceeds received by the Debtor's estate and before any other expense of the estate subject to section 9 of the LFA. The Litigation Loan, if repaid in part, will be performed in minimal payments of $10,000. (LFA § 9)

The Trustee shall have the right to refrain from paying a part of the proceeds received by the estate in the future, in order to maintain a minimal cash balance in the estate in an amount of up to $1.5M. It is understood that as of the Effective Date the estate cash balance will be approximately $2M and no immediate loan repayment is required.  (LFA § 9)

    **g.**    **Prepayment** - The Trustee shall have the right to make a prepayment of the entire outstanding debt on the Litigation Loan and, in such case, shall not pay a penalty. If prepayment is made, the Trustee cannot request additional sums under the LFA.  (LFA § 18)

    **h.**    **Other Terms**

- The total sum of the Litigation Loan shall be raised from the Participating Bondholders within thirty (30) days from the resolution issued at a general meeting of the Indenture Trustees confirming the execution of this agreement by a special majority of each of the three series of Bondholders. (LFA § 4)

- No part of the Litigation Loan will be remitted to the Trustee prior to the Court's approval of the Sinking Funds Agreement and the distribution of the Sinking Funds to the Series B and C Bondholders under the terms thereof. If Court approval of the Sinking Funds Agreement is not received within sixty (60) days from the date of the Trustee's filing of a motion to approve it, then the LFA and the Sinking Funds Agreement shall be deemed null and void.  (LFA § 5)

- The Litigation Loan shall be remitted to the Trustee in full within seven (7) business days from the later of: (1) the collection of the Litigation Loan amount by the Indenture Trustees, or (2) proof of Court approval of the Sinking Funds Agreement being delivered to the Indenture Trustees.  (LFA § 6)

- After remittance of the Litigation Loan to the Trustee, the Trustee shall provide the Indenture Trustees with receipts for payments made from the Litigation Loan within seven (7) business days of such payment. (LFA § 7)

- The Trustee and MAG shall not use the Litigation Loan for any purpose except to fund the Maiman Litigation, and shall not use any Proceeds for any purpose except for the full repayment of the Litigation Loan, together with the interest of such loan and the legal and court costs and expenses in the event that enforcement proceedings are necessary.  (LFA § 10)

- The Trustee and MAG agree to use their reasonable efforts to commence the Maiman Litigation as soon as practicable. (LFA § 15)

- MAG and the Trustee shall provide the Indenture Trustees with monthly updates concerning the Maiman Litigation. (LFA § 17)

- Unless otherwise explicitly stated in the LFA, the Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of the LFA. (LFA § 22)

## REQUEST FOR RELIEF

25.    By this Motion, the Trustee seeks an order, substantially in the form annexed hereto as **Exhibit "A"**,

(i)    authorizing the Trustee, pursuant to Bankruptcy Code sections 364(b) and (e), Bankruptcy Rule 4001(c) and LBR 4001-2, to enter into the LFA annexed hereto as **Exhibit "B",** and

(ii)    modifying the automatic stay pursuant to Bankruptcy Code section 362(d) to permit the Trustee to implement the terms of the Litigation Loan.

## I.    THE TRUSTEE SHOULD BE AUTHORIZED TO ENTER INTO THE LFA PURSUANT TO BANKRUPTCY CODE SECTIONS 364(b) and (e)

26.    Under Bankruptcy Code section 364(b), a trustee or debtor in possession may obtain unsecured credit outside of the ordinary course of the debtor's business and provide the entity extending the credit with an administrative priority. See 11 U.S.C. §364(b); 3-364 Collier on Bankruptcy P 364.03 (16th ed. 2014). However, when the credit is obtained outside of the ordinary course of business, the trustee or debtor in possession must obtain prior court authorization, after notice and a hearing. See 11 U.S.C. §364(b); 3-364 Collier on Bankruptcy P 364.03 (16th ed. 2014).

27.    Section 364 of the Bankruptcy Code, entitled, "Obtaining Credit" provides in subsection (b) as follows:

> (b) The court, after notice and a hearing, may authorize the trustee
> to obtain unsecured credit or to incur unsecured debt other than
> under subsection (a) of this section, allowable under section
> 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(b).  Section 503(b)(1) permits administrative expenses for the "actual,

necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1).

28.     In moving for authorization to enter into the LFA, the Trustee seeks to

cause the Debtor's estate to incur unsecured debt to pursue estate assets.   This is a

proper exercise of Bankruptcy Code section 364(b).  See, e.g. In re Cyrus II

Partnership, 2008 Bankr. LEXIS 2320 (Bankr. S.D. Tex. July 31, 2008) (granting

Chapter 7 trustee's motion to enter into litigation funding agreement pursuant to

Bankruptcy Code section 364(b) and rejecting objectors' argument that the trustee had

the responsibility to pursue other forms of funding).

29.     The Trustee's pursuit of the Litigation Loan represents a sound exercise of

his business judgment, as demonstrated below.  Moreover, the Litigation Loan is proper

and appropriate notwithstanding the fact that the Litigation Loan will be made by the

Participating Bondholders, who are prepetition creditors of the Debtor.  Where, as here,

a bankruptcy trustee seeks to finance litigation through a postpetition loan from a

prepetition creditor of the debtor, courts have authorized such loans. See, e.g. In re

Hartley, 39 B.R. 273,278 (Bankr. W.D. Ohio 1984)(chapter 7 trustee authorized to

obtain unsecured credit allowed as an administrative expense under 364(b)); In re

McKenzie Energy Corp., 228 B.R. 854,875 (Bankr. S.D. Tex. 1998)(court granted

superpriority administrative claim for creditor's advance of credit and approved creditor

receiving 75% of net proceeds from the liquidation of any property and/or assets

recovered by the chapter 7 trustee on behalf of the estates other than avoidance actions

and derivative actions); Modanlo v. Ahan (In re Modanlo), 2006 U.S. Dist. LEXIS 96455 at *21 (D. Md. Aug. 16, 2006)(chapter 11 trustee granted authorization for postpetition loans from prepetition creditor).

30.     Here, as in Hartley, McKenzie Energy Corp and Modanlo, the financing from the Debtor's creditors does not impair the Trustee's ability to act independently. See Hartley, 39 B.R. at 278 (no evidence that the terms of the loan provided express or implied conditions that "might exert unacceptable control over the Trustee in the exercise of his fiduciary duties."); McKenzie Energy Corp., 228 B.R. at 875; Modanlo, 2006 U.S. Dist. LEXIS 96455 at *21.

31.     If Court approval of the Sinking Funds Agreement is not received within sixty (60) days from the date of the Trustee's filing of a Bankruptcy Rule 9019 motion to approve it, then the LFA and the Sinking Funds Agreement shall be deemed null and void.  However, neither the LFA nor the Litigation Loan was or is a condition to any party entering into the Sinking Funds Agreement (although the approval of the Sinking Funds Agreement is a condition precedent to the remittance of the Litigation Loan to the Trustee).  As demonstrated in the 9019 Motion, the Sinking Funds Agreement is fair and reasonable and serves the best interests of the Debtor's estate.

## A.     The Trustee's Need For Financing

32.     The Trustee anticipates instituting multiple litigations against Maiman and other former officers and directors of the Debtor (defined above as the "Maiman Litigation") both in New York and in Israel.  In order to properly prosecute the Maiman Litigation, the Trustee will require additional funding beyond what the estate currently possesses.  For these reasons, access to the Litigation Loan is critical.

285050v4

33.     Under Bankruptcy Code section 364(b), the Trustee is not required to pursue other forms of funding.  See Cyrus II Partnership, 2008 Bankr. LEXIS 2320 (Bankr. S.D. Tex. July 31, 2008).

**B.     The Terms of the Litigation Loan Are Fair, Reasonable, and Appropriate**

34.     The proposed terms of the Litigation Loan are fair, reasonable and adequate in that these terms reflect market dynamics and neither (a) tilt the conduct of this case or prejudice the powers and rights that the Bankruptcy Code confers on the Trustee for the benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their merits.

**C.     The Litigation Loan Represents Sound Business Judgment**

35.     Bankruptcy courts routinely defer to the trustee's business judgment on most business decisions.  See Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani), 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection.").

36.     In general, a bankruptcy court should defer to a trustee's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious.  See e.g. In re Cyrus II Partnership, 2008 Bankr. LEXIS 2320 (Bankr S.D. Tex. 2008).

37.     After thorough investigation and analysis, the Trustee has exercised sound business judgment in determining that the terms of the Litigation Loan are fair and reasonable and are in the best interests of the Debtor's estate.  This is especially true given that a non-debtor, MAG, is providing the security for the Litigation Loan.

38.    The terms and conditions of the Litigation Loan are fair and reasonable, and were negotiated by the parties in good faith and at arm's length. Accordingly, the Participating Bondholders, as lenders, should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the Litigation Loan.

39.    Based on the above, the Trustee should be granted authority to enter into the Litigation Loan and borrow funds from the Participating Bondholders on the grounds described above, pursuant to section 364(b) and (e) of the Bankruptcy Code.

## II.    THE AUTOMATIC STAY SHOULD BE MODIFIED TO PERMIT THE TRUSTEE TO IMPLEMENT THE TERMS OF THE LITIGATION LOAN

40.    The Trustee further requests, pursuant to Bankruptcy Code section 362(d), relief from the automatic stay pursuant to Bankruptcy Code section 362(d) to permit the Trustee to implement the terms of the Litigation Loan.  The Trustee submits that cause exists for such relief pursuant to Bankruptcy Code section 362(d)(1).

## COMPLIANCE WITH BANKRUPTCY RULE 4001(c)

41.    Bankruptcy Rule 4001(c)(1)(A) requires that a motion for authority to obtain credit be accompanied by a copy of the credit agreement and a proposed form of order.  Copies of the proposed Order and the LFA are annexed to this Motion as **Exhibits "A" and "B"**, respectively.  This Motion therefore satisfies the requirements of Bankruptcy Rule 4001(c)(1)(A).

42.    Bankruptcy Rule 4001(c)(1)(B) contains various requirements relating to this Motion and LBR 4001-2 supplements the requirements of Bankruptcy Rule 4001(c)(1)(B).  This Motion complies with all applicable requirements.

285050v4

15

## NOTICE

43.     Notice of this Motion has been given in accordance with this Court's Order Granting Chapter 7 Trustee's Motion to Limit Notice and to Establish Case Management Procedures, entered on September 12, 2013 [Docket No. 342].

## NO PRIOR MOTION

44.     No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

## CONCLUSION

45.     The Trustee respectfully requests that the Court

(a)  enter an order, substantially in the form annexed hereto as **Exhibit "A"**,

(i)     authorizing the Trustee, pursuant to Bankruptcy Code sections 364(b) and (e), Bankruptcy Rule 4001(c) and LBR 4001-2, to enter into the LFA annexed hereto as **Exhibit "B",** and

(ii)     modifying the automatic stay pursuant to Bankruptcy Code section 362(d) to permit the Trustee to implement the terms of the Litigation Loan; and

(b)  grant such other and further relief as to this Court appears just and proper.

Dated:   New York, New York
         May 21, 2014

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for Alex Spizz, Chapter 7 Trustee

By: _____

Alex Spizz, Esq.
Janice B. Grubin, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.
425 Park Avenue
New York, NY  10022
(212) 754-9400

285050v4

16

**EXHIBIT "A"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                          Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                Case No. 12-13689 (SMB)

                                  Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION  FOR ORDER (I) AUTHORIZING TRUSTEE TO ENTER INTO LITIGATION FINANCING AGREEMENT PURSUANT TO 11 U.S.C. §§364(b) AND 364(e), AND (II) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d) TO PERMIT TRUSTEE TO IMPLEMENT TERMS OF LITIGATION LOAN


Upon the motion dated May 21, 2014 (the "Motion") filed by Alex Spizz as the

Chapter 7 trustee (the "Trustee") of the above-captioned debtor, Ampal-American Israel

Corporation ("Debtor"), for an order (i) authorizing the Trustee, pursuant to sections

364(b) and (e) of title 11, United States Code (the "Bankruptcy Code"), Rule 4001(c) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local

Bankruptcy Rule ("LBR") 4001-2, to enter into the "Litigation Financing Agreement"

dated May 20, 2014 (the "LFA") annexed to the Motion as **Exhibit "B",** by and among

(a) the Trustee, (b) the Debtor's non-debtor indirect subsidiary Merhav Ampal Group

Ltd. ("MAG") and (c) the following indenture trustees (the "Indenture Trustees"):

Hermetic Trust (1975) Ltd., Reznik Paz Nevo R.P.N. Trusts 2007 Ltd., and Mishmeret

Trust Services Company Ltd.; and (ii) modifying the automatic stay pursuant to

Bankruptcy Code section 362(d) to permit the Trustee to implement the terms of the

Litigation Loan;[1] and the Motion having been heard on June 17, 2014; and upon the

record of the proceedings; and sufficient cause having been shown therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND**

**CONCLUSIONS OF LAW:**

> (i) *Post-Petition Financing*. The Participating Bondholders, as lender (the "Lender"), is willing to provide the Trustee with the Litigation Loan, subject to (1) entry of this Final Order (as hereinafter defined) in form and substance satisfactory to the Indenture Trustees' sole discretion, and (2) the terms and conditions of the LFA.

> (ii) *Need for Post-petition Financing*. The Trustee anticipates instituting multiple litigations against Maiman and other former officers and directors of the Debtor (defined in the LFA as the "Maiman Litigation") both in New York and in Israel, and, in order to properly prosecute the Maiman Litigation, the Trustee will require additional funding beyond what the estate currently possesses.

> (iii) *Business Judgment and Good Faith*. The terms and conditions of this Order and the LFA have been negotiated in good faith and at arm's length by the parties involved and are fair and reasonable under the circumstances, reflect the Trustee's exercise of his prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Accordingly, the Court finds that the LFA has been made in "good faith" as that term is used in section 364(e) of the Bankruptcy Code.

> (iv) *Immediate Entry*. Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001. No party appearing in this case has filed or made an objection to the relief sought in the Motion, or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED,**

that:

1.    The Motion is hereby granted as set forth herein.

---

[1] Capitalized terms not defined herein shall have the meanings given in the Motion.

2.     The Trustee is hereby authorized to enter into the LFA and to execute, deliver, perform and comply with all of the terms, conditions and covenants of the LFA and any and all other agreements, documents and instruments executed or delivered or to be executed or delivered in connection therewith and as all of the same have been heretofore been or may hereafter be amended, modified, supplemented, restated or replaced (collectively, the "Financing Agreements") and this Final Order, and to immediately borrow and obtain other financial accommodations from the Lender pursuant to the terms of this Final Order and the terms and conditions set forth in the Financing Agreements in the amount of $1,500,000.00 U.S.D. in accordance with the terms and conditions set forth in the Financing Agreements and this Final Order. No obligations incurred or payments or other transfers made by or on behalf of the Trustee on account of the Financing Agreements with Lender shall be avoidable or recoverable from Lender under sections 542, 544, 547, 548, 549, 550, 553 or any other provision of the Bankruptcy Code.

3.     The automatic stay is hereby modified pursuant to Bankruptcy Code section 362(d) to permit the Trustee to implement the terms of the LFA and the Litigation Loan.

4.     The Trustee's obligations under the Litigation Loan shall, pursuant to Bankruptcy Code section 364(b), constitute a Chapter 7 administrative expense of the Debtor allowable under Bankruptcy Code section 503(b)(1).

5. The Trustee and MAG shall not use the Litigation Loan for any purpose except to fund the Maiman Litigation, and shall not use any Proceeds for any purpose except for the full repayment of the Litigation Loan, together with the interest of such loan and the legal and court costs and expenses in the event that enforcement proceedings are necessary.

6. The Trustee's obligations under the Litigation Loan shall be secured by MAG, by the Proceeds recovered from any judgment or settlement reached in the Maiman Litigation or other MAG sources, if possible, subject to the claims of the Israeli Taxing Authorities and Israel Discount Bank against MAG.

7. MAG shall secure the repayment of the Litigation Loan by granting to the Participating Bondholders: (i) a first priority lien, unlimited in amount on all Proceeds received by MAG, and (ii) an irrevocable guaranty by MAG for the full amount due under Litigation Loan, subject to the prior claims set forth in section 8 of the LFA.

8. The lien and guaranty of MAG shall be created, registered and governed exclusively by Israeli law, will be subject to the exclusive jurisdiction of the Israeli courts, and their terms shall be confirmed in advance by the Indenture Trustees.

9. The Trustee may establish a separate bank account for the proceeds of the Litigation Loan and may pay from such account any and all reasonable professional fees and expenses of MAG in connection with the Maiman Litigation.

10.     The Lender has extended the Litigation Loan under the LFA in "good faith" in accordance with section 364(e) of the Bankruptcy Code.

11.     Unless otherwise explicitly stated in the LFA, the Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of the LFA.


Dated: New York, New York
        _____, 2014


                        _____
                        STUART M. BERNSTEIN
                        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT "B"**

## LITIGATION FINANCING AGREEMENT

This agreement (the "Agreement") is made as of April _may 20_, 2014 by and between AMPAL-AMERICAN ISRAEL CORP. (the "Debtor" or "Ampal"), by and through Alex Spizz, in his capacity as Chapter 7 trustee of (the "Trustee"), Merhav Ampal Group Ltd. ("MAG"), Hermetic Trust (1975) Ltd. ("Hermetic"), Reznik Paz Nevo R.P.N. Trusts 2007 Ltd. ("Reznik") and Mishmeret Trust Services Company Ltd. ("Mishmeret" and, together with Hermetic and Reznik, the "Indenture Trustees" and, together with the Trustee, the "Parties"), by and through their respective counsel.

### RECITALS

On December 25, 2007, Merhav (M.N.F.) Limited ("MNF") signed a promissory note, as amended on December 25, 2008 (the "Note"), in favor of Ampal-American Israel Corporation ("Ampal") with regard to a $20,000,000 USD (Twenty million) loan MNF obtained from Ampal (the "Loan"). According to the Note, the purpose of the Loan was facilitating an ethanol producing project in Columbia (the "Project") and funding the purchase of 11,000 hectares of real property located in Colombia with regard to the development of the Project. In connection with the Loan, Ampal and MNF also signed a pledge agreement, an option agreement and an exercise agreement, and amendments thereto, between December 25, 2007 and December 31, 2009.

On December 25, 2008, Yosef A. Maimon, the sole owner of MNF and the chairman of Ampal's board of directors and its president and chief executive officer until May, 2013, signed an irrevocable, absolute and continuing guaranty (the "Guaranty") for repayment of all sums owed by MNF to Ampal under the Note.

285085 v2

On December 31, 2010, Ampal and MAG signed an Assignment and Assumption Agreement (the "**Assignment Agreement**"), in which Ampal contributed, conveyed, transferred, assigned and delivered to MAG all of Ampal's rights, title and interest in and to the Note, the Guaranty and all other documents relating to the Project. On December 8, 2011 MNF and MAG signed a second amendment to the exercise agreement.

On August 29, 2012, Ampal filed a petition for voluntary protection under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

On September 25, 2012, the United States Trustee for the Southern District of New York appointed an official creditors' committee (the "**Committee**") pursuant to section 1102(a)(1) of the Bankruptcy Code.

On December 2, 2012, the Committee demanded from Mr. Maiman the immediate payment of the Loan pursuant to the Guaranty, on behalf of Ampal and MAG (the "**Demand**").

As of December 31, 2012, the obligations of MNF under the Note and the loan documents matured and became due and payable in full.

Despite the Demand and the maturity of the Loan, neither Mr. Maiman nor MNF repaid the outstanding balance of the Loan as of May 2, 2013, the date the Court converted the Ampal chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

On May 20, 2013, Alex Spizz was duly elected pursuant to section 702 of the Bankruptcy Code and he thereafter appointed Shlomi Kelsi as the MAG director.

To date, neither Mr. Maiman nor MNF have repaid the outstanding balance of the Loan.

After good faith, arms length negotiations, the Trustee, MAG and the Indenture Trustees have reached the following agreement:

285085 v2                                        2

1.      Upon the execution of this Agreement and its approval by the Court (the "Effective Date"), the Indenture Trustees, on behalf of their respective bondholders (the "**Bondholders**"), agree to raise from the Bondholders (each Indenture Trustee from its respective Bondholders), under Israeli Law and in a manner approved in advance by the Indenture Trustees, and provide the Trustee with a loan in the amount of $1.5 million dollars USD (One million and five-hundred thousand) (the "**Litigation Loan**"). The purpose of the Litigation Loan is to finance litigation against Mr. Maiman and/or MNF relating to the Note and Guaranty and/or against the directors and officers of any corporation which is part of the Ampal group (the "**Maiman Litigation**"). The Litigation Loan will be provided pro rata by the Bondholders from the three (3) series of bonds. Each Indenture Trustee shall facilitate the mechanism to raise among its respective Bondholders its part in the Litigation Loan without any liabilities or guaranties of any of the Indenture Trustees to any amount delivered or not delivered by another Indenture Trustee.

2.      The Indenture Trustees shall not be liable for any failure to raise the above-mentioned amount of the Litigation Loan or any part thereof.

3.      The Litigation Loan shall be raised by each of the Indenture Trustees from their respective Bondholders who wish to participate in the provision of the Litigation Loan, and shall be guaranteed by  the commitments of the Bondholders listed in **Annex A** herewith (the "**Underwriters**"). If the Litigation Loan is provided by the Underwriters, than it may be provided to the Trustee in a different ratio between the three (3) series of bonds.

4.      The total sum of the Litigation Loan shall be raised from the Bondholders or the Underwriters within thirty (30) days from the resolution issued at a general meeting of the Indenture Trustees confirming the execution of this agreement by a special majority of each of the three (3) series of Bondholders.

285085 v2

3

5.      The Parties agree that no part of the Litigation Loan will be remitted to the Trustee prior to the Court's approval of the "Agreement Concerning Sinking Funds And Alleged Preferential Transfers" (the "Sinking Funds/Alleged Transfer Agreement") and the distribution of the Sinking Funds to the Series B and C Bondholders under the terms thereof. If Court approval of the Sinking Funds/Alleged Transfer Agreement is not received within sixty (60) days from the date of the Trustee's filing of a motion to approve it, then this Agreement and the Sinking Funds/Alleged Transfer Agreement shall be deemed null and void.

6.      The Litigation Loan shall be remitted to the Trustee in full within seven (7) business days from the later of: (1) the collection of the Litigation Loan amount by the Indenture Trustees; or (2) proof of the Court approval under section 5 delivered to the Indenture Trustees.

7.      After remittance of the Litigation Loan to the Trustee, the Trustee shall provide the Indenture Trustees with receipts for payments made from the Litigation Loan within seven (7) business days of such payment.

8.      The Litigation Loan will be a Chapter 7 administrative expense of the Debtor pursuant to 11 USC §364(b) and secured by the proceeds recovered from any judgment or settlement reached in the Maiman Litigation (the "Proceeds") or other MAG sources, if possible, subject to the claims of the Israeli Taxing Authorities and Israel Discount Bank. The Litigation Loan (including the interest stipulated in section 14 below) shall be repaid within seven (7) days from receipt of such funds and/or from any other funds or proceeds received by the Debtor's estate from any other source received by the Debtor's estate in the future. For the avoidance of doubt, the Litigation Loan shall be repaid from any future proceeds received by the Debtor's estate and before any other expense of the estate subject to section 9 below. The Litigation Loan, if repaid in part, will be performed in minimal payments of $10,000.

285085 v2                                    4

9.      The Parties agree that the Trustee shall have the right to refrain from paying a part of the proceeds received by the estate in the future, in order to maintain a minimal cash balance in the estate in an amount of up to $1.5M. It is understood that as of the Effective Date the estate cash balance will be approximately $2M and no immediate loan repayment is required.

10.     The Trustee and MAG hereby undertake not to use the Litigation Loan for any purpose except to fund the Maiman Litigation, and further undertake not to use any Proceeds for any purpose except for the full repayment of the Litigation Loan, together with the interest of such loan and the legal and court costs and expenses in the event that enforcement proceedings are necessary.

11.     Repayment of the Litigation Loan shall have priority over all unsecured creditors of the Debtor and all Chapter 11 administrative and priority expenses.

12.     MAG shall secure the repayment of the Litigation Loan by granting to the Indenture Trustees: (i) a first priority lien, unlimited in amount on all Proceeds received by MAG, and (ii) an irrevocable guaranty by MAG for the full amount due under Litigation Loan, subject to the prior claims set forth in section 8 above. The lien and guaranty shall be created, registered and governed exclusively by Israeli law, will be subject to the exclusive jurisdiction of the Israeli courts, and their terms shall be confirmed in advance by the Indenture Trustees.

13.     MAG agrees to refrain from receiving any additional loans, without first requesting said additional loans from its existing creditors.

14.     The entire Litigation Loan amount shall bear yearly interest at the rate of ten (10%) percent for the first year, eleven (11%) percent for the second year, twelve (12%) percent for the third year and thirteen (13%) percent for the fourth year on. In the event of default in the terms of this Agreement, additional arrears interest shall be accrued in an annual rate of an additional five

285086 v2

5

(5%) percent. The interest on the Litigation Loan shall be accrued to the principal and paid upon payment of the principal.

15.    The Trustee and MAG agree to use their reasonable efforts to commence the Maiman Litigation as soon as practicable.

16.    The Parties understand, agree and acknowledge that litigation, by its nature, is uncertain and that the Trustee and MAG can give no guarantee as to the success of the Maiman Litigation and the collectability of any judgment or settlement.

17.    MAG and the Trustee shall provide the Indenture Trustees with monthly updates concerning the Maiman Litigation.

18.    The Trustee shall have the right to make a prepayment of the entire outstanding debt on the Litigation Loan and, in such case, shall not pay a penalty. If prepayment is made, the Trustee cannot request additional sums under this Agreement.

19.    This Agreement embodies the entire agreement and understanding of the Parties hereto with respect to the subject matter contained herein.  There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to herein.

20.    This Agreement supersedes all prior agreements and understandings between the parties with respect to its subject matter.

21.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall be deemed one in the same instrument.

22.    Unless otherwise explicitly stated hereunder, the Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Agreement

285085 v2                                      6

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date
and year first above written.

| Merhav Ampal Group Ltd. | Resnik Paz Nevo R.P.N. Trusts 2007 Ltd. |
|---|---|
| By: _____<br>Shlomi Kelsi, Director | By: _____<br>Mr. Yosi Resnik |
| Hermetic Trust (1975) Ltd. | Mishmeret Trust Services Company Ltd. |
| By: _____<br>Dan Offer, Adv. | By: _____ |
| Alex, Spizz, Chapter 7 Trustee of Ampal-American Israel Corp | |
| By: _____<br>Alex Spizz, Chapter 7 trustee | |

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

| Merhav Ampal Group Ltd.<br><br>By: _____<br>    Shlomi Kelsi, Director | Reznik Paz Nevo R.P.N. Trusts 2007 Ltd.<br><br>By: _____<br>    Mr. Yossi Reznik |
| Hermetic Trust (1975) Ltd.<br><br>By: _____<br>    Dan Offer, Adv. | Mishmeret Trust Services Company Ltd.<br><br>By: _____ |
| Alex, Spizz, Chapter 7 Trustee of Ampal-American Israel Corp<br><br>By: _____<br>    Alex Spizz, Chapter 7 trustee | |

7

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date
and year first above written.

| Merhav Ampal Group Ltd. | Reznik Paz Nevo R.P.N. Trusts 2007 Ltd. |
|---|---|
| By: _____<br>    Shlomi Kelsi, Director | By: _____<br>    Mr. Yossi Reznik |
| Hermetic Trust (1975) Ltd. | Mishmeret Trust Services Company Ltd. |
| By: _____<br>    Dan Offer, Adv. | By: _____<br>    Scott S. Markowitz, Esq |
| Alex, Spizz, Chapter 7 Trustee of Ampal-<br>American Israel Corp<br><br>By: _____<br>    Alex Spizz, Chapter 7 trustee | |

285085 v2

7

**Annex A**

Kllrmark Opportunity Fund

Meltav Gemel & Pension Ltd.