Presentment Date and Time: **October 9, 2014 at 12:00 P.M.**
Objection Date and Time:   **October 9, 2014 at 11:30 A.M.**

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, as Chapter 7**
**Trustee of Ampal-American Israel Corporation**
425 Park Avenue
New York, NY  10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                          Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,              Case No. 12-13689 (SMB)

                          Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## NOTICE OF PRESENTMENT OF ORDER AUTHORIZING AND GRANTING RETENTION AND EMPLOYMENT OF FRESHFIELDS BRUCKHAUS DERINGER LLP, AS SPECIAL COUNSEL TO THE TRUSTEE, PURSUANT TO 11 U.S.C. §327(e), EFFECTIVE AS OF SEPTEMBER 1, 2014

**PLEASE TAKE NOTICE**, that on the **9th day of October, 2014 at 12:00 p.m.** (the "Presentment Date"), Alex Spizz, as Chapter 7 trustee (the "Trustee") of Ampal-American Israel Corporation, debtor herein (the "Debtor"), shall present the annexed "Order Authorizing Retention of Freshfields Bruckhaus Deringer LLP as Special Counsel to the Trustee, Pursuant to 11 U.S.C. §327(e), Effective as of September 1, 2014" (the "Proposed Order") for approval to the Honorable Stuart M. Bernstein, United States Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, at the Judge's Chambers located at One Bowling Green, New York, New York 10004.

286821v1

**PLEASE TAKE FURTHER NOTICE**, that the Trustee has filed the attached Application, Declaration and Proposed Order seeking to retain Freshfields Bruckhaus Deringer LLP as special counsel to the Trustee in the above-captioned case.

**PLEASE TAKE FURTHER NOTICE**, that any objections to the Proposed Order or any requests for a hearing on the attached Application, shall be filed with the Clerk of the Court and received on or before **11:30 A.M. on October 9, 2014** by: (i) Spizz Cohen & Serchuk, P.C., attorneys for the Trustee, 425 Park Avenue, New York, New York 10022, Attn: Alex Spizz, Esq., Arthur Goldstein, Esq. and Jill Makower, Esq.; (ii) the Chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004; and (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014-1408, Attn: Andrew D. Velez-Rivera, Esq.

**PLEASE TAKE FURTHER NOTICE**, that in the event objections to the entry of the Proposed Order are timely served and filed, the Court may schedule a hearing thereon.

Dated: New York, New York
October 2, 2014

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, as Chapter 7 Trustee of Ampal-American Israel Corporation**


By:   s/ Jill Makower
        Alex Spizz, Esq.
        Arthur Goldstein, Esq.
        Jill Makower, Esq.
425 Park Avenue
New York, New York 10022
(212) 754-9400

Presentment Date and Time:  October 9, 2014 at 12:00 Noon
Objection Deadline:          October 9, 2014 at 11:30 A.M.

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, Chapter 7 Trustee**
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                          Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,              Case No. 12-13689 (SMB)

                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ORDER AUTHORIZING RETENTION OF FRESHFIELDS BRUCKHAUS
DERINGER LLP AS SPECIAL LITIGATION COUNSEL TO THE
TRUSTEE, PURSUANT TO 11 U.S.C. § 327(e), EFFECTIVE AS OF
SEPTEMBER 1, 2014**

Upon the application dated October 2, 2014 (the "Application") filed by Alex

Spizz, as Chapter 7 trustee (the "Trustee") of Ampal-American Israel Corporation, the

debtor herein (the "Debtor"), by his general bankruptcy counsel, Spizz Cohen & Serchuk,

P.C., for an order pursuant to §327(e) of title 11, United States Code (the "Bankruptcy

Code"), authorizing the Trustee to employ Freshfields Bruckhaus Deringer LLP

("FBD") to represent him as special counsel, and upon the Declaration of Noah

Rubins, dated September 30, 2014 (the "Rubins Declaration"), and no objection

having been made to the Trustee's Application; and after due deliberation it appearing

that FBD neither holds nor represents any interest adverse to the Debtor's estate with

286815v1

respect to the matter on which FBD is to be employed, and that the employment of FBD is necessary and would be in the best interests of the Debtor's estate; it is

ORDERED, that Trustee is hereby authorized to appoint and employ FBD as special counsel to represent him in the ICSID Arbitration (as such term defined in the Application) on the terms and conditions set forth in the Application and the Rubins Declaration pursuant to §327(e) of the Bankruptcy Code, effective as of September 1, 2014; and it is further

ORDERED, that the compensation of FBD as special counsel for the Trustee shall be fixed by this Court after application, in the manner prescribed by §§330 and 331 of the Bankruptcy Code and the U.S. Trustee's Guidelines and that FBD may make application for fees not more than once every 60 days; and it is further

ORDERED, that the services that FBD shall provide to the Trustee will not duplicate or overlap with the services to be provided by the Trustee's general bankruptcy counsel; and it is further

ORDERED, that in the event FBD increases its rates, FBD shall provide prior notice of such rate increases to the Trustee, the Trustee's counsel and the United States Trustee.

Dated: New York, New York
_____, 2014


_____
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

Presentment Date and Time:  October 9, 2014 at 12:00 Noon
Objection Deadline:          October 9, 2014 at 11:30 A.M.

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, Chapter 7 Trustee**
425 Park Avenue
New York, NY  10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                          Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,              Case No. 12-13689 (SMB)

                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### TRUSTEE'S APPLICATION PURSUANT TO 11 U.S.C. §327(e) FOR AN ORDER AUTHORIZING RETENTION OF FRESHFIELDS BRUCKHAUS DERINGER LLP AS SPECIAL LITIGATION COUNSEL TO THE TRUSTEE, EFFECTIVE AS OF SEPTEMBER 1, 2014

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE

Alex Spizz, as Chapter 7 Trustee (the "Trustee") for the estate of Ampal-American Israel Corporation (the "Debtor" or "Ampal"), for his application (the "Application") pursuant to §327(e) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking authorization for the retention and employment of Freshfields Bruckhaus Deringer LLP ("FBD"), a limited liability partnership organized under the laws of the United Kingdom, as special litigation counsel to represent the Trustee in an

international arbitration proceeding described below and referred to as the "ICSID Arbitration", effective as of September 1, 2014, respectfully represents:

## FACTUAL BACKGROUND

1.    On August 29, 2012, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.    The Debtor operated as a debtor-in-possession until April 8, 2013, when Michael Luskin was appointed as Chapter 11 Trustee for the Debtor's estate.

3.    On May 2, 2013 the Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code and I was elected and duly qualified as the Chapter 7 Trustee.

4.    At the time of the filing of the voluntary chapter 11 petition, and currently, the Debtor holds a 12.5 % interest in East Mediterranean Gas Company, S.A.E., an Egyptian joint stock company ("EMG"). The Debtor holds 8.21% of EMG through its subsidiary Merhav Ampal Group, Ltd and 4.29% of EMG through its 50% ownership interest in Merhav Ampal Energy Holdings, LP which holds an 8.58% interest in EMG. EMG, which was organized in 2000 in accordance with the Egyptian Special Free Zone System, was granted the right to purchase natural gas from the Egyptian General Petroleum Company and Egyptian Natural Gas Holding Company ("EGPC/EGAS") to transport and sell to Israel as well as other countries.  The parties signed a Gas Purchase and Supply Agreement ("GSPA") in 2005, with guarantees and assurances from the Government of Egypt. EMG linked the Israeli energy market with the Egyptian National Gas Grid via a subsea East Mediterranean pipeline.  Initial gas delivery

occurred in May of 2008. EMG is the developer, owner and operator of the pipeline and its associated facilities on-shore both at the point of departure near El-Arish, Egypt and the point of entry in Ashkelon, Israel.

5.     Following the political and civil unrest in Egypt in 2011 and 2012, which (among other things) disrupted gas deliveries to EMG, in April 2012, EGPC/EGAS notified EMG of its termination of the GSPA claiming alleged breaches by EMG. EMG maintains that it did not breach the GSPA and that instead EGPC/EGAS repudiated the GSPA. As a result, EMG and various EMG shareholders, including the Debtor, commenced the following three arbitration proceedings against EGPC/EGAS or Egypt, which are currently pending and which relate to the disruption of gas flow and the purported termination of the GSPA[1]:

(i)     Ampal-American Israel Corporation, EGI-Fund (08-10) Investors LLC, EGI-Series Investments LLC, BSS-EMG Investors LLC and David Fischer v. Egypt (the "ICSID Arbitration"):   David Fischer, a shareholder in EMG and a German national, enjoys protection under the German-Egypt Bilateral Investment Treaty ("BIT"), and the investments of the other named claimants are protected by the U.S.–Egypt Bilateral Treaty as U.S. nationals. On May 2, 2012, the claimants submitted their Request for Arbitration against Egypt to the World Bank's International Centre for Settlement of Investment Disputes ("ICSID") pursuant to the German-Egypt BIT and the U.S.-Egypt BIT, both of which provide for the option of arbitration under the ICSID Convention. On March 1, 2013, the claimants filed their detailed Statement of Claim alleging breaches of the German-Egypt and U.S.-Egypt BITs parallel to those alleged in the UNCITRAL

---

[1] In addition to the three arbitrations listed below, EMG commenced an arbitration against the Israel Electric Corporation ("IEC") to seek declaratory relief from EMG's obligations to deliver gas to IEC. EGPC/EGAS also started an arbitration for breach of the GSPA against EMG in Egypt.

arbitration described below.  The German and U.S. claimants seek compensation in the amount of $800,500,000 (exclusive of pre- and post-award interest).  Hearings on the ICSID arbitration are scheduled for October 27, 2014 through November 7, 2014.

(ii)    Yosef Maiman, Merhav (MNF) Ltd., Merhav Ampal Group, Ltd. and Merhav Ampal Energy Holding, LP v. Egypt (the "UNCITRAL Arbitration"):  Yosef Maiman, Merhav (MNF) Ltd., Merhav Ampal Group, Ltd. and Merhav Ampal Energy Holding, LP commenced an arbitration proceeding against Egypt under the Poland–Egypt BIT, on the basis that Mr. Maiman is a Polish national who controls the claimant companies.  ICSID arbitration was not an option under this BIT, and the claimants commenced arbitration proceedings under the the United Nations Commission on Trade Law Rules ("UNCITRAL") on May 2, 2012.  Claimants seek compensation from Egypt for breaches of the Polish-Egypt BIT arising from Egypt's treatment of their investments. Claimants seek compensation in the amount of $996,000,000 (exclusive of pre- and post-award interest).   The hearings were held on September 1, 2014 through September 11, 2014.

(iii)    EMG v. EGPC, EGAS and IEC (the "ICC Arbitration"):  EMG brought arbitration proceedings against EGPC/EGAS and IEC on October 6, 2011. EMG invoked the International Chamber of Commerce ("ICC") arbitration clauses in the GSPA and a Tripartite agreement between EGPC/EGAS, EMG, and IEC (the "Tripartite Agreement"), which serves to reinforce EGPC/EGAS' obligations towards EMG.  In this ICC Arbitration proceeding, EMG seeks compensation and indemnification from EGPC/EGAS in the amount of approximately $1.6 Billion.  The hearings in connection with this arbitration concluded in January 2014 and the parties are awaiting the

issuance of an award.

6.    The three above-referenced arbitrations comprise the largest portion of the assets of the Debtor. If those arbitrations result in recoveries for the claimants, including the Debtor, it will enable the Trustee to make substantial if not 100% distributions to the creditors of the Debtor's estate. Without any recovery from such arbitrations, the estate does not anticipate having sufficient assets to make more than minimal distributions to creditors. As such, the Trustee believes that the retention of FBD to prosecute the ICSID Arbitration claims is a prudent use of estate resources.

7.    From the inception, all of the claimants in the three above-referenced arbitrations have been represented by FBD. Claimants chose FBD as their counsel based on FBD's well-recognized expertise in the area of international arbitration, and especially BIT arbitration.

8.    As set forth above, the Debtor is only a claimant in the ICSID Arbitration. The Debtor did not seek to formally retain FBD during its chapter 11 proceeding and the Trustee did not seek to retain FBD before now, because the majority of the services performed by FBD during that time related to the arbitrations to which the Debtor is not a claimant. As a result, FBD has not billed the Debtor for any of FBD's fees since the commencement of the Debtor's chapter 11 case. These services have been performed for the Debtor's subsidiaries Merhav Ampal Group, Ltd. and Merhav Ampal Energy Holdings, LP. Those subsidiaries have paid FBD directly for the services rendered on their behalf.

9.    Inasmuch as the ICSID Arbitration, in which the Debtor is a direct claimant, goes to hearing from October 27, 2014 through November 7, 2014, the

Trustee has determined that it is now necessary and appropriate for the Trustee to formally retain FBD so that FBD will have sufficient time to prepare for the hearing and represent the Debtor's estate's interest in the ICSID Arbitration.  In addition, FBD will be able to seek payment from the Debtor's estate for its pro rata share of FBD fees and expenses for that arbitration.

## RELIEF REQUESTED

10.    By this Application, and pursuant to section 327(e) of the Bankruptcy Code, the Trustee seeks to employ FBD as his special counsel to perform the legal services described herein, effective as of September 1, 2014. The Trustee submits that the retention of FBD under the terms described herein is necessary and appropriate under section 327(e) of the Bankruptcy Code.  The Trustee believes that FBD and its professionals are well qualified to act as special counsel on behalf of the Trustee in this case.

## APPLICABLE LEGAL AUTHORITY

**I.    RETENTION OF FBD AS SPECIAL COUNSEL TO THE TRUSTEE IS NECESSARY AND APPROPRIATE UNDER 11 U.S.C. § 327(e)**

11.    With bankruptcy court approval, a trustee has the power to employ attorneys as special counsel pursuant to section 327(e) of the Bankruptcy Code.  See Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 622 (2d Cir. 1999).  Section 327(e) provides:

> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. §327(e).

12.    "[T]he special counsel exception of §327(e) permit[s] the utilization of special knowledge and experience which may be of substantial benefit to the estate." United States Tr. v. Andover Togs, Inc. (In re Andover Togs, Inc.), 2001 U.S. Dist. LEXIS 2690 at *10 (S.D.N.Y. Mar. 13, 2001) (internal quotations omitted).

13.    Section 327(e) of the Bankruptcy Code authorizes the retention of an attorney provided that: (a) such retention is for a special purpose; (b) the purpose of the retention is not to conduct the bankruptcy case; (c) the retention is in the best interests of the estate; and (d) the attorney does not hold any interest adverse to the debtor or its estate respecting the subject of its retention. See 11 U.S.C. §327(e).

14.    As detailed below, the Trustee's proposed retention of FBD as his special counsel is necessary and appropriate under section 327(e).

## A.    Special Purpose

15.    FBD's proposed retention pursuant to section 327(e) of the Bankruptcy Code is for the limited purpose of representing the Trustee as his special counsel to represent the Trustee in the ICSID Arbitration. The Trustee submits that FBD, which is an international law firm with over 2,000 attorneys, including a group with specialized experience in representing claimants in international arbitration proceedings including those related to bilateral investment treaties, is well qualified to act as special counsel on behalf of the Trustee in the ICSID Arbitration.

## B.    Conduct of the Case

16.    FBD's proposed retention is for the discrete services discussed above and detailed in the Declaration of Noah Rubins, a partner of FBD, annexed to this

application as **Exhibit "A"** (the "Rubins Declaration").  None of the services provided by FBD will constitute conducting or administering the Debtor's bankruptcy proceeding. FBD will not render services typically performed by bankruptcy counsel.  By delineating FBD's role, the Trustee intends to ensure there will be no duplication of services with SCS.

17.     To minimize the possibility that services provided by FBD might duplicate those provided by other professionals retained by the Trustee, FBD will consult regularly with the Trustee and his other retained professionals, as circumstances may dictate.

**C.     Best Interests of the Estate**

18.     In light of the nature and complexity of the factual and legal issues presented in the ICSID Arbitration, the Trustee believes that it is necessary and appropriate to retain highly skilled and experienced special litigation counsel to represent the Debtor's estate in that arbitration.

19.     FBD's retention is in the best interests of the Debtor's estate and creditors. The Trustee is seeking to engage FBD because, among other things, its attorneys who are working on the ICSID Arbitration have extensive specified experience with representing claimants in international arbitration proceedings including those related to bilateral investment treaties, and have thorough knowledge of the relevant facts and issues from their work as counsel to claimants in the ICSID Arbitration, the ICC Arbitration and the UNCITRAL Arbitration.

20.     Retention of FBD will avoid the time and expense that other counsel would need to incur to get up to speed on the background of these extremely complicated international proceedings.   And, because FBD also represents the Debtor's co-

claimants in the ICSID Arbitration, responsibility for FBD's fees and expenses will be divided among the claimants, with the Debtor's estate bearing responsibility for 66.53 per cent of them. If the Debtor's estate were required to retain a separate counsel, the benefit of the fee sharing would be lost.

21.    Furthermore, the claimants in the various arbitrations are aligned in their interests such that FBD suffers from no conflict of interest in representing all of the claimants.

22.    Finally, FBD is ranked the leading international arbitration firm in the world in several rankings, demonstrating that the FBD team is highly qualified to represent the Debtor's interests in the ICSID Arbitration.

23.    Based on the foregoing, the Trustee submits that the retention of FBD as special litigation counsel to the Trustee in connection with the ICSID Arbitration is in the best interests of the Debtor and its estate.

**D.    No Adverse Interest With Respect To The Matters On Which FBD Is To Be Employed**

24.    Under the Second Circuit's decision in <u>AroChem</u>, the Court must inquire into whether the special counsel holds or represents an interest adverse to the estate "with respect to the matter on which [the special counsel] is to be employed." 11 U.S.C. §327(e). Further, <u>AroChem</u> held that since the role of the special counsel is, by definition, limited, the debtor need only show that there is no adverse interest related to that role itself, noting that "where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for which special counsel is retained,* there is no conflict and the representation can stand." <u>AroChem</u>, 176 F.3d at 622 (emphasis in original). <u>See also</u> <u>Hogil Pharm. Corp. v. Sapir (In re Innomed</u>

Labs, LLC), 2008 U.S. Dist. LEXIS 7017, at *8-9 (S.D.N.Y. Jan. 28, 2008).

25.    Although the Code does not define the phrase to "hold or represent an

interest adverse to the estate," the Second Circuit has adopted the following definition:

> (1) to possess or assert any economic interest that would tend to lessen
> the value of the bankruptcy estate or that would create either an actual or
> potential dispute in which the estate is a rival claimant; or
>
> (2) to possess a predisposition under circumstances that render such a
> bias against the estate.

AroChem, 176 F.3d at 623 (quoting In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah

1985)). See Hogil Pharm. Corp., 2008 U.S. Dist. LEXIS 7017 at *6; In re JMK Constr.

Group, Ltd., 441 B.R. 222, 229 (Bankr. S.D.N.Y. 2010).

26.    The test is not retrospective; courts only examine present interests when

determining whether a party has an adverse interest. AroChem, 176 F.3d at 623-24

(observing that Congress intended only to proscribe those who presently have an

adverse interest from representing a debtor under §327(a)); JMK Constr., 441 B.R. at

229. Generally stated, the adverse interest test is objective and precludes "any interest

or relationship, however slight, that would even faintly color the independence and

impartial attitude required by the Code and Bankruptcy Rules." In re Granite Partners,

L.P., 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998); see also JMK Constr., 441 B.R. at 229; In

re Angelika Films 57th, Inc., 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998) ("The

determination of adverse interest is objective and is concerned with the appearance of

impropriety.") (citation omitted).

27.    Further, courts have recognized that a professional has a disabling conflict

if it has "either a meaningful incentive to act contrary to the best interests of the estate

and its sundry creditors—an incentive sufficient to place those parties at more than

acceptable risk—or the reasonable perception of one." Granite Partners, 219 B.R. at 33 (quoting In re Martin, 817 F.2d 175, 180 (1st Cir. 1987)); JMK Constr., 441 B.R. at 229-230. Thus, disqualification is appropriate "if it is plausible that the representation of another interest may cause the debtor's attorney to act any differently than they would without other representation." In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).

28.      Courts determine whether an adverse interest exists on a case-by-case basis, examining the specific facts in a case. AroChem, 176 F.3d at 623 ("Whether an adverse interest exists is best determined on a case-by-case basis."); Angelika Films 57th, 227 B.R. at 39 (stating that "the determination of counsel's disinterestedness is a fact-specific inquiry"). Bankruptcy courts may consider the interests of the estate and the debtor's creditors, accounting for the expeditious resolution of a case when analyzing a retention order. In re Vouzianas, 259 F.3d 103, 107 (2d Cir. 2001) (citing AroChem, 176 F.3d at 621). Courts, however, must take the requirements of section 327 seriously, as they ensure that a professional fulfils his duties in accordance with his fiduciary duties to the estate. Leslie Fay Cos., 175 B.R. at 532 ("The requirements of section 327 cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'") (quoting Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994)). Moreover, courts lack the power to authorize the "employment of a professional who has a conflict of interest." In re Mercury, 280 B.R. 35, 55 (Bankr. S.D.N.Y. 2002) (citations omitted).

29.    FBD has informed the Trustee that it does not hold or represent an interest adverse to the Debtor or its estate with respect to the matter on which it is to be employed by the Trustee, and that FBD has no conflict of interest in representing the Trustee as special counsel.

30.    As disclosed in the Rubins Declaration, FBD represents Yosef Maiman ("Maiman") and Merhav (MNF) Ltd. ("Merhav"), directly, as two (2) of the claimants in the UNCITRAL Arbitration and indirectly as shareholders of EMG in the ICC Arbitration. Although the Trustee commenced actions against Maiman and Merhav in connection with a $20,000,000 Note and Guaranty, and although Maiman and Merhav have filed claims against the Debtor in this bankruptcy case, the representation of Maiman and Merhav by FBD is completely unrelated to the Trustee's litigation against Maiman and Merhav and FBD will have no role in advising or representing Maiman or Merhav in connection with the Trustee's lawsuits against them or in connection with the prosecution of Maiman and Merhav's claims against the estate.   The interests of Maiman and Merhav in the arbitration proceedings are not adverse to the Debtor's estate, and, in fact, are aligned with the Debtor and its subsidiaries.   For the reasons stated in the Rubins Declaration and in my judgment, FBD's representation of Maiman and Merhav in connection with the UNCITRAL Arbitration does not present a conflict of interest and will not impede FBD's ability to zealously represent the interest of the Trustee and the estate in connection with the ICSID Arbitration for which FBD is being retained.

31.    To the best of the Trustee's knowledge, information and belief, and except as set forth herein and in the Rubins Declaration, neither FBD nor any attorney or

counsel of FBD has any connection with or any interest adverse to the Debtor, its

creditors or any significant party in interest, or their respective attorneys or accountants

or to the United States Trustee or any person employed in the office of the United

States Trustee.    Moreover, as set forth in the Rubins Declaration, FBD's work in

connection with the ICSID Arbitration, the ICC Arbitration and the UNCITRAL Arbitration

has provided FBD with knowledge of the relevant facts and issues that will be very

useful to the Trustee and cost effective to the estate.

32.    Where, as here, there is no conflict concerning the subject matter of the

proposed special engagement, an application to employ special counsel should be

granted.  See AroChem, 176 F.3d at 622.

## II.    FBD'S RETENTION AS TRUSTEE'S SPECIAL COUNSEL IS PROPER UNDER 11 U.S.C. § 327(c)

33.    As set forth above, FBD represents Maiman and Merhav directly, as two

(2) of the claimants in the UNCITRAL Arbitration and indirectly as shareholders of EMG

in the ICC Arbitration, and Maiman and Merhav have filed claims against the Debtor's

estate in this case.

34.    Bankruptcy Code Section 327(c) states:

(c) In a case under chapter 7, 12, or 11 of this title, a person is not
disqualified for employment under this section solely because of such
person's employment by or representation of a creditor, unless there is
objection by another creditor or the United States trustee, in which case
the court shall disapprove such employment if there is an actual conflict of
interest.

11 U.S.C. § 327(c).

35.    Pursuant to section 327(c), an attorney who represents a creditor is not

prohibited from simultaneously serving as special counsel to the trustee, unless there is

an actual conflict of interest with respect to the matter on which special counsel is to be

retained.  See Hogil Pharm. Corp. v. Sapir (In re Innomed Labs, LLC), 2008 U.S. Dist.

LEXIS 7017, at *17-18 (S.D.N.Y. Jan. 28, 2008)(affirming order granting application to

employ special counsel to the Chapter 7 trustee; "an attorney who represents a creditor

is not prohibited from serving as special counsel to the trustee as well, unless there is

an actual conflict of interest... When the trustee retains special, rather than general,

counsel, all section 327 requires is that the interests of counsel be identical to the

interests of the estate with respect to the matter for which counsel has been retained.");

Nisselson v. Wong (In re Best Craft Gen. Contr. & Design Cabinet, Inc.), 239 B.R. 462,

464 (Bankr. E.D.N.Y. 1999)(approving retention of special litigation counsel for Chapter

7 trustee, where that firm simultaneously represented the largest creditor of the debtor);

Shodeen v. Petit (In re Burghoff), 2006 Bankr. LEXIS 3889 at *17 (Bankr. S.D. Iowa

Dec. 11, 2006)("Thus 'where the trustee seeks to appoint counsel only as 'special

counsel' for a specific matter, there need only be no conflict between the trustee and

counsel's creditor client with respect to the specific matter itself.'  In other words, an

attorney for the trustee that concurrently represents a creditor 'must not represent an

adverse interest relating to the services which are to be performed by that attorney.'"

(quoting Best Craft, 239 B.R. at 468)); In re Contractor Tech., Ltd., 2006 U.S. Dist.

LEXIS 34466, at *23-25 (S.D. Tex. May 30, 2006) (affirming decision which authorized

Chapter 7 trustee to employ a law firm as special litigation counsel, which firm

simultaneously represented creditors).

36.      "Thus, if a creditor's attorney employed as special counsel does not

otherwise hold or represent interests adverse to the estate, where there  is an identity of

interest between the creditor and the estate "*with respect to the matter for which special counsel is retained*, there is no conflict and the representation can stand." <u>Best Craft Gen. Contr.</u>, 239 B.R. at 468 (emphasis in original).

37.    FBD's representation of Maiman and Merhav as described above is not an impediment to this application.  As set forth above, FBD has informed the Trustee that it has no actual conflict of interest with respect to the matter for which it is to be retained as special counsel.  Therefore, retention of FBD is proper under Section 327(c).

<u>PROFESSIONAL COMPENSATION</u>

38.    No retainer or payments have been made by the Debtor's estate to FBD in connection with this case.

39.    FBD will make an application for payment of fees and reimbursement of expenses pursuant to the terms and provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, and the U.S. Trustee Guidelines pertaining to the payment of retained professionals.  It is respectfully requested that the Court exercise its discretion, as allowed in section 331 of the Bankruptcy Code, to permit FBD to apply for allowance of its fees and expenses not more often than once every 60 days, rather than the default time period of 120 days.  FBD will maintain detailed records describing the services rendered for the time spent and for the necessary expenses incurred including such professional services on behalf of the Trustee.  FBD will charge the Trustee its standard hourly rates for partners of between 500 - 600 Euros per hour, associates of between 325 - 450 Euros per hour, and paralegals of 160 Euros per hour. As stated above, FBD's fees and expenses relating to the ICSID Arbitration will be divided among the Debtor and the co-claimants in the ICSID Arbitration, with the Debtor

being charged for 66.53 per cent of such fees and expenses.

40.    These hourly charges may be increased in the ordinary course from time to time during the pendency of this case, in such event FBD will provide notice of such increase as required by the U.S. Trustee Guidelines.

## DISCLOSURE

41.    Rule 2014 of the Federal Rules of Bankruptcy Procedure dictates the information that must be contained in an application for employment, including, "all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee" and further provides that a verified statement made by prospective counsel as to such connections must be included with the application. In re Brown Publ'g Co., 2013 Bankr. LEXIS 1743, at *42-43 (Bankr. E.D.N.Y. Apr. 29, 2013).

42.    Courts have emphasized the importance of making thorough disclosures of any connections as required by Rule 2014 when seeking to employ counsel pursuant to Section 327. In re Leslie Fay, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994); In re Biddle, 2012 Bankr. LEXIS 5766, at *3-5 (Bankr. D.S.C. Dec. 6, 2012); Brown Publ'g Co., 2013 Bankr. LEXIS 1743 at *43. This obligation to make disclosure of any connection continues beyond the court's approval of an employment application, and is a continuing one. Id. at *43.

43.    This Application satisfies the requirements of Bankruptcy Rule 2014(a) and S.D.N.Y. Local Bankruptcy Rule 2014-1.

44.    The Trustee believes that FBD is well qualified to serve as special

litigation counsel in connection with the matters described herein and that the employment of FBD is in the best interest of the estate.

45.    No prior application for the same or similar relief has heretofore been made to this or any other Court.

## NOTICE

46.    Notice of this Motion has been given in accordance with this Court's Order Granting Chapter 7 Trustee's Motion to Limit Notice and to Establish Case Management Procedures, entered on September 12, 2013 [Docket No. 342].

**WHEREFORE**, the Trustee requests an order (i) authorizing him to employ and retain FBD as special litigation counsel in this case, and (ii) granting such other and further relief as this Court may deem just and proper.


Dated:  New York, New York
        October 2, 2014

                            SPIZZ COHEN & SERCHUK, P.C.
                            Attorneys for Alex Spizz, Chapter 7 Trustee


                    By:   s/ Alex Spizz
                          Alex Spizz, Esq.
                          Arthur Goldstein, Esq.
                          Jill Makower, Esq.
                          425 Park Avenue
                          New York, NY  10022
                          (212) 754-9400


286494v2                            17

**EXHIBIT "A"**

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, Chapter 7 Trustee**
425 Park Avenue
New York, NY  10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                                        Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                    Case No. 12-13689 (SMB)

                                              Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DECLARATION OF NOAH RUBINS IN ACCORDANCE WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014

Noah Rubins, declares under the penalty of perjury, the following:

1.      I am an attorney in good standing duly licensed to practice law in the State of New York.  I am a partner with the law firm of Freshfields Bruckhaus Deringer LLP ("FDB"), a limited liability partnership organized under the laws of the United Kingdom, in the Paris office located at 2-Rue Paul Cézanne, 75375 Paris CDX 08, France.

2.      I submit this Declaration in support of the Application dated October 2, 2014 (the "Application") filed by Alex Spizz, as Chapter 7 Trustee (the "Trustee") of the above captioned debtor ("Debtor") seeking an order authorizing the retention of FBD effective as of September 1, 2014 as special litigation counsel to the Trustee in connection with the ICSID Arbitration described in the Application. Capitalized terms used herein that are not defined shall have the meanings set forth in the Application.

3.      FBD is an international law firm with over 2000 attorneys, including a

group with specialized experience in representing claimants in international arbitration proceedings including those related to bilateral investment treaties.

4.    FBD currently represents the Debtor and its co-claimants in the ICSID Arbitration described in the Application, which was commenced on May 2, 2012. FBD also represents the claimants in the ICC Arbitration and the UNCITRAL Arbitration.

5.    Each of the Arbitrations has proceeded on a different schedule. Up until now, FBD focused on the ICC Arbitration and UNCITRAL Arbitration, in which the Debtor is not a claimant, which have gone through hearings. As a result, since the commencement of the Debtor's chapter 11 case, FBD has not charged any of its fees to the Debtor. Hearings on the ICSID Arbitration are scheduled for October 27th through November 7th of 2014. As such, it is now time for FBD to begin preparing for these hearings.

6.    In compliance with the disclosure requirements of Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), FBD is disinterested as that term is defined in 11 U.S.C. §101(14) and does not hold or represent an interest that is materially adverse to the Trustee or the Debtor's estate.

7.    Except as set forth herein, FBD does not represent the Debtor or the Trustee in the arbitration proceedings listed in the Application or in any other matter, including the Trustee's planned litigation against Yosef Maiman and Merhav (MNF) Ltd.

8.    FBD does represent Yosef Maiman and Merhav (MNF) Ltd. in the UNCITRAL Arbitration described in the Trustee's Application as well as EMG in the ICC Arbitration. FBD's representation of EMG, whose shareholders include Mr. Maiman and Merhav (MNF) Ltd., as a claimant in the ICC Arbitration is not adverse to the Trustee or

the Debtor's estate and in fact Mr. Maiman's and Merhav (MNF) Ltd.'s interest in the ICC Arbitration are aligned with the Trustee and the Debtor's estate's interest in the ICSID Arbitration. FBD does not represent Mr. Maiman or Merhav (MNF) Ltd. other than as set forth herein.

9.      FBD has disclosed to the Court, the U.S. Trustee and interested parties its representation of Mr. Maiman and Merhav (MNF) Ltd. in the interest of full disclosure. However, FBD does not believe that those representations present a conflict that would preclude FBD from undertaking the proposed special counsel representation of the Trustee.

10.     For the foregoing reasons, FBD has determined that based upon our review of the information currently available, no conflict exists in connection with its proposed retention by the Trustee. In the event that any additional information comes to FBD's attention, FBD will make a supplemental disclosure.

11.     FBD will maintain detailed records describing the services rendered and the time spent and any necessary expenses incurred on the Debtor's behalf, including those of local professionals in Israel and in Egypt. The rates charged by FBD for the services rendered to the Trustee are as follows:

(i)     Partners - € 500 - 600

(ii)    Associates - € 325 - 450

(iii)   Paralegals - € 160

12.     Responsibility for FBD's fees and expenses are divided among the various claimants to the arbitrations. As such, the Debtor will only be responsible for 66.53 per cent of FBD's fees and expenses relating to the arbitrations.

286536v1                                3

13.    These hourly charges are those in effect as of the date of this declaration and may be increased in the ordinary course from time to time during the pendency of this case, subject to the notice provisions of the U.S. Trustee Guidelines. FBD agrees that any request for fees and reimbursement of expenses will be subject to noticing and approval by the Bankruptcy Court in accordance with the application provisions of 11 U.S.C. §§330 and 331 of the United States Bankruptcy Code.

14.    FBD requests that due to the nature of the services which will be performed, that it will not be limited to the 120 day provision set forth in §331 of the Bankruptcy Code and instead be permitted to apply to the Court not more than once every sixty (60) days for compensation and reimbursement of expenses. The fees and expenses incurred by the Debtor in connection with the ICSID Arbitration will be based upon the Debtor's pro-rata share of said fees and expenses with the four (4) other claimants in the ICSID Arbitration.

15.    No agreement exists between FBD and any third party for sharing of compensation received by FBD in this case, except as allowed in Bankruptcy Code §504(b) and Bankruptcy Rule 2016 with respect to the sharing of compensation among members or associates of FBD.

16.    To the best of my knowledge I believe FBD's proposed employment is not prohibited or improper under Bankruptcy Rule 5002.

17.    I make this declaration under penalty of perjury in accordance with Bankruptcy Rule 2014(a) and 9011(b) and in accordance with 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Dated:  Paris, France
        September 30, 2014

                                        /s/ Noah Rubins
                                        Noah Rubins