Hearing:    October 16, 2014 (10:00 a.m.)
Objections: October 14, 2014

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
: Chapter 7
In re :
:
AMPAL-AMERICAN ISRAEL CORP., : Case No. 12-13689 (SMB)
:
Debtor. :
:
-------------------------------------------------------- x

**UNITED STATES TRUSTEE'S OBJECTION TO TRUSTEE'S
APPLICATION FOR ORDER AUTHORIZING RETENTION OF FRESHFIELDS
BRUCKHAUS DERINGER LLP AS SPECIAL LITIGATION COUNSEL**

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), hereby respectfully objects to the Trustee's Application Pursuant to 11 U.S.C. § 327(e) for an Order Authorizing Retention of Freshfields Bruckhaus Deringer LLP as Special Litigation Counsel to the Trustee, Effective as of September 1, 2014 ("Application"), filed by Alex Spizz, as elected Chapter 7 trustee ("Trustee").  Dkt. No. 503.

**I. SUMMARY STATEMENT**

The Trustee seeks to retain Freshfields Bruckhaus Deringer LLP ("Freshfields") as Special Litigation Counsel under Bankruptcy Code § 327(e) for the purpose of representing the Chapter 7 estate of Ampal-American Israel Corp. ("Debtor") in an upcoming arbitration before the World Bank's International Centre for Settlement of Investment Disputes ("ICSID Arbitration").  This objection concerns solely one feature of the Trustee's proposed retention – *i.e.*, a provision permitting Freshfields to file interim fee applications in a shortened 60-day

1

frequency, rather than the default 120-day frequency of Bankruptcy Code § 331 ("60-Day Provision").

Under the circumstances of this case, the 60-Day Provision is not in the best interest of the estate under § 327(e), and should be denied. The Application fails to meet the Trustee's burden of setting forth why Freshfields, considered either in isolation or vis-a-vis the Trustee and all of his other retained professionals, should receive such singularly special treatment in this Chapter 7 liquidation case. No reasons supporting this type of rare request can be discerned from the Application or from the record, other than the firm's ordinary desire to be paid as soon as possible. And no such reasons appear to exist to accord Freshfields such favored treatment. Freshfields is one of Europe's most prominent law firms, and it has not alleged that payment under the default 120-day provision of § 331 would impose a hardship upon it.

## II.  FACTS

**A.    General**

1.    The Debtor filed a Voluntary Petition for relief under Chapter 11 on August 29, 2012. Dkt. No. 1.

2.    On May 2, 2013, the case was converted to one under Chapter 7. Dkt. No. 258.

3.    The Trustee was elected as Chapter 7 Trustee on May 20, 2013. Dkt. No. 275.

**B.    The Trustee's Professionals**

4.    With Court approval, the Trustee has retained general bankruptcy counsel, two special counsels (excluding Freshfields), and two accounting firms.

5. On June 27, 2013, the Court authorized the Trustee's retention of Spizz Cohen & Serchuk, P.C. ("Spizz Cohen") as his general bankruptcy counsel, effective as of May 20, 2013. Dkt. No. 298.

6. On August 22, 2013, the Court authorized the Trustee's retention of Reid Collins & Tsai, LLP ("Reid Collins") as special counsel. Dkt. No. 336.

7. On May 28, 2014, the Court authorized the Trustee's retention of Troutman Sanders, LLP as special litigation counsel. Dkt. No. 412.

8. On July 2, 2013, the Court authorized the Trustee's retention of EisnerAmper LLP as his accountants, effective as of May 20, 2013. Dkt. No. 305.

9. On September 21, 2013, the Court authorized the Trustee's retention of Kesselman & Kesselman, Pwc Israel ("Kesselman") as his Israeli accountants, effective as of May 20, 2013. Dkt. No. 341.

**C.    Prior Interim Fee Applications**

10. The Trustee has not sought allowance of an interim commission, and of his five retained professionals, only three have filed interim fee applications. *See* Docket.

11. Spizz Cohen and EisnerAmper filed their first interim fee applications on July 10, 2014. Dkt. No. 448 and 450.

12. In an order entered on July 31, 2014, the Court allowed Spizz Cohen and EisnerAmper interim compensation and reimbursement of expenses. Dkt. No. 468.

13. Kesselman field its first interim fee application on August 7, 2014. Dkt. No. 478.

14. The Court granted Kesselman's first interim fee allowance on August 28, 2014. Dkt. No. 491.

15. Reid Collins and Trouman Sanders have not filed prior requests for interim compensation or reimbursement of expenses. *See* Dkt.

**D.    The Application**

16. Initially, the Trustee filed a notice of presentment of the Application on October 2, 2014. Dkt. No. 503.

17. The filing of such notice gave rise to discussions between the Trustee and the Office of the United States Trustee regarding the 60-Day Provision. The Trustee and the United States Trustee were not able to agree on the provision, or alternatives thereto presented by the Trustee and Freshfields.

18. On October 8, 2014, the Trustee withdrew his notice of presentment, and set the Application for a hearing before this Court.

19. The Application requests "that the Court exercise its discretion, as allowed in section 331 of the Bankruptcy Code, to permit [Freshfields] to apply for allowance of its fees and expenses not more often than once every 60 days, rather than the default time period of 120 days." Application, ¶ 39, at 15.

20. According to the Declaration of Noah Rubins filed in support of the Application ("Declaration" or "Decl."), Freshfields "is an international law firm with over 2000 attorneys, including a group with specialized experience in representing claimants in international

arbitration proceedings including those related to bilateral investment treaties." Decl., ¶ 3, at 1-2.

21.     In support of the 60-Day Provision, the Declaration states only that Freshfields "requests that due to the nature of the services which will be performed, that it will not be limited to the 120 day provision set forth in §331 of the Bankruptcy Code and instead be permitted to apply to the Court not more often than once every sixty (60) days for compensation and reimbursement of expenses." Decl., ¶ 14, at 4.

22.     The Application seeks that Freshfields' retention be ordered effective as of September 1, 2014. Application, ¶ 10, at 6.

### III.  DISCUSSION

Bankruptcy Code § 327(e) provides that the Trustee, with Court approval, may employ counsel for a "specified special purpose . . . if in the best interest of the estate" and if the attorney does not represent or hold an interest adverse to the debtor or the estate." 11 U.S.C. § 327(e). Section 331 of the Bankruptcy Code provides for applications for interim compensation every 120 days "or more often if the court permits." 11 U.S.C. § 331. Courts determining the appropriateness of an interim fee award examine the current availability of funds, the existence of other accrued administrative obligations of the same or higher priority that may deplete the funds, the continuing need for funds to pay necessary expenses in the future, and the inability to file a final fee application in the near future. In re Kohl, 421 B.R. 115, 129 (Bankr. S.D.N.Y. 2009), *citing* U.S. Trustee v. Fishback (In re Glados, Inc.), 83 F.3d 1360, 1367 (11th Cir. 1996) (additional citations omitted).

5

Shortening the 120-day period of § 331 lies within the discretion of the Court. In re Commercial Fin. Servs., Inc., 231 B.R. 351, 354 (Bankr. N.D. Okla. 1999). It is the applicant's burden to establish that the terms and conditions of its retention, including any shortened frequencies for seeking interim compensation, are reasonable or in the best interest of the estate. In re W&W Prot. Agency, Inc., 456 B.R. 304, 307 (Bankr. W.D. Ky. 2011) (denying request for post-petition retainer).

As an initial matter, it bears recalling that the Debtor's case is pending as a liquidation case under chapter 7. But the largesse of permitting professionals to file fee applications more often than every 120 days is confined mostly to large Chapter 11 cases. As the legislative history to § 331 states: "The court may permit more frequent applications if the circumstances warrant, such as in very large cases where the legal work is extensive and merits more frequent payments." Commercial Fin'l, 231 B.R. at 354, *quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 330 (1977). *See also*, 3 Collier on Bankruptcy ¶ 331.03[1][a], at 331-14 (16th ed. 2013) ("Collier") ("it is in the large chapter 11 reorganization cases where courts allow applications for payment of interim compensation to be made in less than the 120-day period described in section 331"). And even in Chapter 11 cases, it has been held that periodic compensation that might be appropriate if the debtor in possession is reorganizing, is inappropriate once the case turns into a liquidation mode. In re Braniff, Inc., 117 B.R. 702, 704-05 (denying request for monthly payment order in light of Braniff's filing of Chapter 11 liquidation plan).

Similarly, the monthly compensation procedures established this Court apply only in Chapter 11 cases, and even then only on case-by-case basis, at the discretion of the Court. *See* United States Bankruptcy Court for the Southern District of New York, Bankruptcy Local Rule 2016-1(c) (Compensation of Professionals), and <u>Procedures for Monthly Compensation and Reimbursement of Expenses</u> (April 11, 2013). In sharp contrast, the Court has not authorized periodic payment procedures in Chapter 7 cases filed in this Judicial District.

In Chapter 11 reorganization cases, "the main factor that influences courts to reduce the period is the extensive amount of time that the professionals are putting in on the case to achieve a successful reorganization." <u>Collier</u>, ¶ 331.03[1][a], at 331-15. The bankruptcy courts also have focused on other factors, including the debtor in possession's cash needs, the debtor's ability to reorganize, the reputation of counsel, and assurances that counsel is able to repay any subsequently disallowed fees. *Id*., at 331-14-15 . In addition, where professionals in small practices have been involved, the courts have looked to potential hardship to the professional. <u>United States Trustee v. Knudsen Corp.</u> (<u>In re Knudsen Corp.</u>), 84 B.R. 668, 672 (Bankr. 9th Cir. 1988).

Here, even though it is anticipated that the Chapter 7 phase of this case will endure for an extended period of time in light of the litigation-intensive nature of the case, there is no allegation that Freshfields will be providing services to the Trustee over such extended period. Quite the contrary, it appears that the bulk of the Firm's services will be rendered in an imminent, yet fleeting time frame, as the ICSID Arbitration is expected to have only a very

limited temporal duration. The arbitration "goes to hearing from October 27, 2014 through November 7, 2014." Application, ¶ 9, at 5.

None of the Trustee's other professionals, including those expected to remain in place until the Trustee concludes his administration, have sought the extraordinary relief requested by Freshfields. To the contrary, the Trustee's main professionals, Spizz Cohen and EisnerAmper, filed their first interim fee applications over one year from their effective retention dates, and his Israeli accountant, Kesselman, did not file its first interim application until ten months from its effective retention date. *See* ¶¶ 4-15 above. The Application, which fails to set forth any authorities supporting the 60-Day Provision, makes no attempt to explain why Freshfields should be singled out with such extraordinarily-favored treatment.

Even assuming *arguendo* that Freshfields' representation of the Trustee will be ongoing, the Application does not allege that Freshfields will incur a risk of non-payment, let alone a significant risk, by filing its interim fee applications with a 120-day frequency. The Application also fails to allege that Freshfields will experience financial hardship under the default 120-day period of § 331, or explain why the firm cannot wait 120 days from September 1, 2014 (*i.e.*, the effective date of its retention) to file its first interim fee application.

Furthermore, there is no indication in the Application that, by waiting 120 days, Freshfields will be placed in the position of "financing" the Chapter 7 case, or funding the ICSID Arbitration, much less in any manner that would cause it financial hardship. In this regard, the extraordinary nature of the 60-Day Provision is underscored in case law showing that, even in Chapter 11, the bankruptcy courts have declined to shorten the default 120-day frequency in §

8

331 where the professionals have not shown undue hardship. *See, e.g.*, In re ICS Cybernetics, Inc., 97 B.R. 736, 738 (Bankr. N.D.N.Y. 1989) (conclusory statements that counsel would have to wait six months held to be insufficient for periodic payment order); Commercial Fin'l, 231 B.R. at 357 (denying Chapter 11 debtor's motion for monthly payment procedures until professionals could demonstrate "serious financial hardship.")

In summary, the Application fails to fulfill the Trustee's burden of showing that the 60-Day Provision is in the best interest of the estate, or is otherwise reasonable. The Court should, therefore, decline approval thereof.

### IV. CONCLUSION

**WHEREFORE,** the United States Trustee respectfully requests that the Court deny approval of the 60-Day Provision, and grant such other relief as is just.

Dated: New York, New York
October 14, 2014

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

**By:** **/s/ Andrew D. Velez-Rivera**
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY  10014
Tel. No. (212) 510-0500