FRESHFIELDS BRUCKHAUS DERINGER US  LLP
601 Lexington Avenue, 31st Floor
New York, NY  10022
(212) 277-4000
Abbey Walsh, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                                Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,          Case No. 12-13689 (SMB)

                                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**COVER SHEET PURSUANT TO UNITED STATES TRUSTEE FEE
GUIDELINES AND AMENDED GUIDELINES FOR FEES AND
DISBURSEMENTS FOR PROFESSIONALS IN SOUTHERN DISTRICT OF
NEW YORK BANKRUPTCY CASES (GENERAL ORDER M-447)**

**Name of Applicant**:   Freshfields Bruckhaus Deringer LLP

**Time Period:**          September 1, 2014 through December 31, 2014 ("First
                         Compensation Period")

**Date of Retention:**    October 17, 2014 (effective as of September 1, 2014)

**First Interim Fee
Application:**            Fees Requested:       $728,584.72
                         Expenses Requested:   $429,530.61

**Total Compensation
And Expenses
Previously
Awarded:**                None.  This is the first request.

FRESHFIELDS BRUCKHAUS DERINGER US  LLP
601 Lexington Avenue, 31st Floor
New York, NY  10022
(212) 277-4000
Abbey Walsh, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | Chapter 7 |
| AMPAL-AMERICAN ISRAEL CORPORATION, | Case No. 12-13689 (SMB) |
| Debtor. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### FIRST INTERIM APPLICATION OF FRESHFIELDS BRUCKHAUS DERINGER LLP, AS SPECIAL LITIGATION COUNSEL TO THE CHAPTER 7 TRUSTEE, FOR ALLOWANCE OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO SECTIONS 330 AND 331 OF THE BANKRUPTCY CODE

Freshfields Bruckhaus Deringer LLP ("FBD"), as special litigation counsel to Alex Spizz in his capacity as chapter 7 trustee (the "Trustee") for the estate of Ampal-American Israel Corporation ("Ampal" or the "Debtor"), submits this application (the "Application") pursuant to Sections 330 and 331 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 2016-1 for interim professional compensation and reimbursement of expenses for the period from September 1, 2014 through and including December 31, 2014 (the "First Compensation Period").  In support of the Application, FBD respectfully represents as follows:

## BACKGROUND

1.      On August 29, 2012, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.      On or about May 2, 2013, the Debtor's case was converted to a case under chapter 7 of the Bankruptcy Code, and on May 3, 2013, the Trustee was elected as chapter 7 trustee of the Debtor's estate.

3.      The Debtor is one of several claimants involved in international arbitration proceedings against Egypt seeking damages relating to Egypt's termination of certain gas supply contracts between Egyptian General Petroleum Company and Egyptian Natural Gas Holding Company (EGPC/EGAS), on the one hand, and East Mediterranean Gas Company, S.A.E. (EMG), on the other hand.  The Debtor owns 8.21% of EMG through its subsidiary Merhav Ampal Group, Ltd. and 4.29% of EMG through its 50% ownership interest in Merhav Ampal Energy Holdings, LP.  The arbitrations were commenced in 2012, prior to the Debtor's bankruptcy filing, and the claimants jointly retained FBD to represent them in the arbitration proceedings.  The Debtor has a direct stake and is a named claimant in an arbitration proceeding before the World Bank's International Centre for Settlement of Investment Disputes (ICSID). The other claimants in the ICSID arbitration are EGI-Fund (08-10) Investors LLC, EGI-Series Investments LLC, BSS-EMG Investors LLC, and David Fischer.  The Debtor also has an indirect stake in certain other, related arbitration proceedings through its ownership interest in other claimants in those proceedings.  In total, through the arbitration proceedings, the claimants are seeking damages of no less than $3.5 billion.

## RETENTION OF FBD

4.      Up until now, the Debtor has not been charged by FBD and has not paid FBD any compensation relating to the arbitration proceedings or any other matter.  This is because prior to FBD's retention in this case, FBD's work focused on the arbitrations in which the Debtor is not a direct claimant.  Once it became time to focus on the ICSID arbitration, FBD and the Trustee agreed that FBD should be retained as special counsel to the Trustee in connection with its work on the ICSID arbitration and the Trustee filed the motion to retain FBD as special litigation counsel.

5.      By order entered on October 17, 2014, attached as **Exhibit A** to this Application, the Court approved the Trustee's retention of FBD as special litigation counsel to the Debtor in the ICSID arbitration effective, *nunc pro tunc*, as of September 1, 2014.  The Debtor is responsible for 66.53% of FBD's fees and expenses relating to the ICSID arbitration based on its pro rata interest in any damages awarded to the claimants in the ICSID arbitration; however, the actual split of FBD's invoices has resulted in FBD allocating only 51.74% of fees charged and expenses incurred in connection with the ICSID arbitration to the Debtor.  The remainder of FBD's fees relating to the ICSID arbitration is allocated to the Debtor's co-claimants in the proceeding.  As such, the amounts sought by this Application represent 51.74% of FBD's total ICSID arbitration fees and expenses for the First Compensation Period.[1]

## RELIEF REQUESTED

6.      By this Application, FBD requests that the Court award it, on an interim basis, 100% of the Debtors' pro rata share of FBD's fees relating to the ICSID arbitration in the First

---

[1] FBD issues one aggregate invoice per month to the clients involved in the various arbitrations against Egypt.  As such, the invoices for the First Compensation Period include fees and expenses relating to the UNCITRAL arbitration.  None of the fees and expenses associated with the UNCITRAL arbitration have been charged to the Debtor.

Compensation Period, in the amount of $728,584.72. The total hours of services rendered by FBD's partners, counsel, associates and paraprofessionals during the First Compensation Period was 4,649.

7.      Attached as **Exhibit B** to this Application is (i) a summary of the total amount of time spent by FBD attorneys and paralegals on the ICSID arbitration during the First Compensation Period, (ii) a summary of the total fees charged on each invoice included in the First Compensation Period and (iii) a foreign exchange conversion chart used to convert each invoice from Euros to Dollars.[2] The conversion rate used for each invoice was based on the FBD conversion rate in effect on the date such invoice was issued. FBD updates its conversion rates on a monthly basis based on rates published in the London Financial Times.

8.      FBD also seeks reimbursement of $429,530.61 of customary and necessary out-of-pocket disbursements incurred by FBD during the First Compensation Period. Attached as **Exhibit C** is a summary of these expenses.

9.      Attached as **Exhibit D** is FBD's contemporaneous time records and expense records for the First Compensation Period, from which the summaries contained herein were prepared.[3]

10.      The bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Bankruptcy Rule 2016-1. A certification of compliance with the foregoing is attached hereto as **Exhibit E**.

---

[2] FBD's invoices for this matter are issued in Euros because the arbitrations are being handled by attorneys based FBD's Paris office.

[3] Due to the fact that the time and expense records contain information that, if publically disclosed, could be prejudicial to the Trustee's and the other arbitration claimants' interests, Exhibit D will not be filed on the docket with this Application. It will, however, be provided in full to the Court, the Trustee and the United States Trustee, and, in redacted form, upon request by other parties in interest.

## SERVICES PERFORMED AND EXPENSES INCURRED

11.     As indicated above, the Trustee retained FBD to represent the Debtor in the ICSID arbitration to gain its expert advice and representation in the arbitration proceeding and to obtain the fee sharing benefits of using the same counsel as the co-claimants.  The potential recoveries from the ICSID arbitration and the Debtor's indirect interest in the other arbitrations are the primary remaining assets of the Debtor and recoveries in these arbitrations will directly benefit the Debtor's estates and its unsecured creditors.

12.     The ICSID arbitration hearing was conducted in Paris, France from October 27 through and including November 6.  FBD devoted considerable time and resources preparing for the hearing in the weeks leading up to it.  As such, FBD's fees during the First Compensation Period primarily involved the final weeks of preparation for and participation in the ICSID arbitration hearing.[4]  Egypt's final submission to the tribunal, its Rejoinder and related submissions, were submitted shortly prior to the First Compensation Period and resulted in FBD spending significant time during the First Compensation Period reviewing it and performing legal research regarding complex areas of domestic and international law that were raised in the Rejoinder, particularly where arguments raised in the Rejoinder had not been raised in Egypt's earlier submissions.  FBD's preparation for the hearing also required interviewing and preparing four fact witnesses for direct and cross examinations in the hearing.  FBD also spent substantial time working with five sets of expert witnesses in preparation for their testimony before the tribunal. This expert testimony included damages analysis and economic valuation, English contract law, Egyptian criminal law, the security situation in Egypt during the Arab Spring, the protection of pipeline infrastructure in Egypt, and business modeling in the gas industry.

---

[4] Prior to the First Compensation Period, FBD had prepared and submitted briefs to the arbitrators and done other work in preparation for the hearing.  None of this work has been billed to the Debtor; it has all been paid for by the Debtor's co-claimants.

13.     Hearing preparation also required the formulation and drafting of opening and closing statements and scripts for the cross examination of Egypt's expert witnesses. In the lead up to the hearing, FBD was also involved in reviewing and responding to frequent correspondence from Egypt and the tribunal, organizing and attending various calls and conferences with client representatives, attending to issues related to document production, reviewing factual documents and correspondence, arranging numerous translations of factual exhibits, and generally maintaining a system of file administration and information collection in connection with all of these activities.

14.     The hearing lasted ten full days, during which time FBD was not only engaged in the hearing itself, but also continued its preparation work in advance of each hearing day. In addition to the activities described above, such work entailed responding to issues arising during the hearing, such as ongoing document production and requests by the tribunal to address particular points arising during the hearing and to produce related demonstratives.

15.     Since the conclusion of the ICSID hearing, FBD has time spent responding to follow up inquiries from the arbitrators.  Such follow up inquiries may be received from time to time until the arbitrations delivered their decision, which is not expected before 2016. To date, FBD has been required to submit a post hearing brief, assemble and submit a bundle of core documents, and prepare responses to various post-hearing issues raised by the Egyptian government.

### <u>REQUEST FOR INTERIM COMPENSATION SHOULD BE ALLOWED</u>

16.     FBD respectfully submits that the services rendered and expenses incurred for which FBD seeks interim compensation and reimbursement are clearly warranted under section

330 of the Bankruptcy Code.  Section 330 sets forth the criteria for the award of compensation

and reimbursement:

> In determining the amount of reasonable compensation to be awarded to … [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
>> a. the time spent on such services;
>>
>> b.  the rates charged for such services;
>>
>> c.  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>>
>> d.  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>>
>> e.  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>>
>> f.  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

17.     All services rendered and expenses incurred were reasonable and necessary to the

prosecution of the claimant's case in the ICSID arbitration proceeding.  The arbitration claims

are extremely complex matters of international law involving the interpretation and application

of two bilateral investment treaties, the ICSID Convention, and various other international law

instruments. They further involve the interpretation of a long-term contractual arrangement for

the supply of gas from Egypt to Israel via EMG and the interaction of this contractual

arrangement with the treaties noted above. The legal issues arising from these matters of

international law and English contract law have required the engagement of legal expert reports

and corresponding testimony and examination before the tribunal. Furthermore, the dispute concerns the security situation in Egypt during the Arab Spring and, in particular, the protection and repair of gas pipeline infrastructure from terrorist attacks. The arbitral proceeding has accordingly involved the testimony and examination of a number of experts in the areas of regional security and the protection of gas pipeline infrastructure. The prosecution of the claims has also required the use of economic valuation experts in order to formulate a claim for monetary compensation. Finally, in addition to FBD's fees corresponding to these matters, it has been necessary to engage local counsel in Egypt. Such local counsel has been responsible for addressing particular points of Egyptian law and providing support during the hearing. Local Israeli counsel has also been involved in advising EMG and providing support during the hearing.

18.    The hourly rates charged are the standard hourly rates that FBD charges its arbitration clients.

19.    The prosecution of the arbitration claims are essential and beneficial to the resolution of the Debtor's chapter 7 case, as recoveries to unsecured creditors will be largely determined by the recoveries in the arbitration proceedings.

20.    The FBD team working on this matter devote their time solely to international arbitration legal work and are highly skilled and experienced in these types of matters.

21.    All of the services for which compensation is sought herein were rendered for and on behalf of the estate solely in connection with the ICSID arbitration.  FBD has received no payment and no promises of payment for the Debtor's pro rata share of the ICSID arbitration work from any source for the services rendered or to be rendered.  There is no agreement or understanding between FBD and any other person for the sharing of compensation to be received by FBD for its services rendered to the Debtor.  For the avoidance of doubt, in connection with the representation of the Debtor and the other claimants in the arbitrations, Freshfields hired various third party professionals.  The fees charged by these professionals are being passed through to arbitration claimants as an expense incurred by FBD.  FBD is not and will not share any compensation that it receives with these third party professionals.

WHEREFORE, FBD respectfully requests that the Court enter and order approving the fees and expenses incurred by FBD during the First Compensation Period.

Dated: April 10, 2015
       New York, New York

FRESHFIELDS BRUCKHAUS DERINGER US LLP


By: _____/s/ Abbey Walsh_____
       Abbey Walsh
       601 Lexington Avenue, 31st Floor
       New York, NY  10022
       (212) 277-4000

**EXHIBIT A**

**RETENTION ORDER**

US2114379/5  158723-0001

SPIZZ COHEN & SERCHUK, P.C.
Attorneys for **Alex Spizz, Chapter 7 Trustee**
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
----------------------------------------x
In re:                                                    Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                        Case No. 12-13689 (SMB)

                                    Debtor.
----------------------------------------x

### ORDER AUTHORIZING RETENTION OF FRESHFIELDS BRUCKHAUS DERINGER LLP AS SPECIAL LITIGATION COUNSEL TO THE TRUSTEE, PURSUANT TO 11 U.S.C. § 327(e), EFFECTIVE AS OF SEPTEMBER 1, 2014

Upon the application dated October 2, 2014 (the "Application") filed by Alex

Spizz, as Chapter 7 trustee (the "Trustee") of Ampal-American Israel Corporation, the

debtor herein (the "Debtor"), by his general bankruptcy counsel, Spizz Cohen & Serchuk,

P.C., for an order pursuant to §327(e) of title 11, United States Code (the "Bankruptcy

Code"), authorizing the Trustee to employ Freshfields Bruckhaus Deringer LLP

("FBD") to represent him as special counsel, and upon the Declaration of Noah

Rubins, dated September 30, 2014 (the "Rubins Declaration"), and upon consideration

of the United States Trustee's Objection to the Application dated October 14, 2014

and the Trustee's Reply dated October 15, 2014; and upon the record of the hearing

on the Application; and after due deliberation it appearing that FBD neither holds nor

286815v2

represents any interest adverse to the Debtor's estate with respect to the matter on which FBD is to be employed, and that the employment of FBD is necessary and would be in the best interests of the Debtor's estate; it is

ORDERED, that Trustee is hereby authorized to appoint and employ FBD as special counsel to represent him in the ICSID Arbitration (as such term defined in the Application) on the terms and conditions set forth in the Application and the Rubins Declaration **except as otherwise stated in this Order** pursuant to §327(e) of the Bankruptcy Code, effective as of September 1, 2014; and it is further **[SMB: 10/17/14]**

ORDERED, that the compensation of FBD as special counsel for the Trustee shall be fixed by this Court after application, in the manner prescribed by §§330 and 331 of the Bankruptcy Code and the U.S. Trustee's Guidelines; and it is further

ORDERED, that FBD may make application for fees not more than once every 120 days; and it is further

ORDERED, that the services that FBD shall provide to the Trustee will not duplicate or overlap with the services to be provided by the Trustee's general bankruptcy counsel; and it is further

ORDERED, that in the event FBD increases its rates, FBD shall provide prior notice of such rate increases to the Trustee, the Trustee's counsel and the United States Trustee.

Dated: New York, New York
       October 17th, 2014

/s/ STUART M. BERNSTEIN
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**SUMMARY OF SERVICES**

US2114379/5  158723-0001

Summary of Hours Billed During First Compensation Period by Fee Earner

| Fee-earner | Position | Qualification | Rate | Total Hours | Total fees 100.00% | 51.74% |
|---|---|---|---|---|---|---|
| Reed, Lucy | Partner | New York 1985 | 600.00 € | 184.90 | 110,940.00 € | 57,400.36 € |
| Rubins, Noah | Partner | New York 2000 | 500.00 € | 187.10 | 93,550.00 € | 48,402.77 € |
| Juratowitch, Ben | Partner | Queensland 2003 England & Wales | 500.00 € | 374.75 | 187,375.00 € | 96,947.83 € |
| Walsh, Abbey | Counsel | New York 2000 | 450.00 € | 9.70 | 4,365.00 € | 2,258.45 € |
| Love, Ben | Senior associate | New York 2007 | 400.00 € | 465.20 | 186,080.00 € | 96,277.79 € |
| Kirkness, Rob | Senior associate | New Zealand 2006 | 375.00 € | 276.60 | 103,725.00 € | 53,667.32 € |
| Becker, Moritz | Senior associate | Germany 2008 | 400.00 € | 1.70 | 680.00 € | 351.83 € |
| Wendler, Carsten | Junior associate | Germany 2010 New South Wales | 325.00 € | 2.40 | 780.00 € | 403.57 € |
| Harris, Callista | Junior associate | 2012 | 325.00 € | 460.05 | 149,516.25 € | 77,359.71 € |
| Clement, Kevin | Junior associate | New York pending | 325.00 € | 393.40 | 127,855.00 € | 66,152.18 € |
| Paralegals | Paralegals | | 160.00 € | 514.25 | 82,280.00 € | 42,571.67 € |
| Trainees | Trainees | | 120.00 € | 1774.00 | 212,880.00 € | 110,144.11 € |
| | | | | 4644.05 | 1,260,026.25 € | 651,937.58 € |
| Walsh, Abbey | Counsel | | 450.00 € | 4.80 | 2,160.00 € | 2,160.00 € |
| **Totals** | | | | 4648.85 | 1,262,186.25 € | 654,097.58 € |

Abbey Walsh's time beginning in October 2014 was billed 100% to the Debtor because Ms. Walsh has only performed
services relating to the retention of FBD by the Debtor and preparation of Fee Applications

Fee Summary by Month

|  | Euros | Dollars |
|---|---|---|
| September | 63,904.20 € | $71,677.71 |
| October | 422,821.96 € | $477,148.02 |
| November | 145,225.37 € | $155,973.85 |
| December | 22,146.05 € | $23,785.13 |
| | | |
| Total | 654,097.58 € | $728,584.72 |

Conversion Rates from Euros to Dollars

| | |
|---|---|
| Sept invoice (issued Feb. 24, 2015) | 1.121643 |
| Oct invoice (issued January 30, 2015) | 1.128484 |
| Nov invoice (issued March 3, 2015) | 1.074012 |
| Dec invoice (issued March 13, 2015) | 1.074012 |

FBD conversion rates are based on the rates published in the London Financial Times
on the first day of the month in which the invoice is issued

**EXHIBIT C**

**REIMBURSABLE EXPENSE SUMMARY**

| Disbursement categories | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|
| In-house expenses / Meals | 274.41 € | 2,499.45 € | 2,430.46 € | 2,157.34 € | 7,361.66 € |
| In-house expenses / Taxis | 574.10 € | 1,517.08 € | 2,268.00 € | 1,292.92 € | 5,852.10 € |
| Translations | 789.27 € | 1,067.60 € | 0.00 € | 334.79 € | 2,191.66 € |
| Travel | 0.00 € | 10,877.90 € | 13,585.96 € | 0.00 € | 24,283.86 € |
| Courier | 0.00 € | 279.26 € | 483.79 € | 28.11 € | 791.16 € |
| Telephone and conference call | 0.00 € | 386.86 € | 219.39 € | 101.33 € | 707.58 € |
| Research | 0.00 € | 6.59 € | 0.00 € | 0.00 € | 6.59 € |
| Co-counsel fees (Firon) | 1,083.94 € | 22,200.17 € | 8,503.59 € | 286.85 € | 32,074.55 € |
| Co-counsel fees (Sarwat A. Shahid) | 0.00 € | 3,712.39 € | 31,385.59 € | 17,788.65 € | 52,886.63 € |
| Expert Services (FTI Consulting) | 0.00 € | 128,418.18 € | 47,073.70 € | 1,752.98 € | 175,244.82 € |
| Expert Services (Daniel Muthmann) | 0.00 € | 11,946.25 € | 0.00 € | 0.00 € | 11,946.25 € |
| Expert Services (Giora Elland) | 0.00 € | 7,249.98 € | 0.00 € | 0.00 € | 7,249.98 € |
| Expert Services (Baker & O'Brien) | 0.00 € | 0.00 € | 51,886.13 € | 0.00 € | 51,886.13 € |
| Expert Services (Bernard Rix) | 0.00 € | 0.00 € | 18,014.00 € | 0.00 € | 18,014.00 € |
| | 2,721.72 € | 187,961.69 € | 175,850.61 € | 23,742.95 € | 390,276.97 € |
| US$ | $3,052.80 | $212,111.85 | $188,865.74 | $25,500.22 | $429,530.61 |

The expenses set forth above represent 51.74% of the total expenses incurred by FBD in connection with the ICSID arbitration.

**EXHIBIT D**

**TIME RECORDS**

**[REDACTED COPIES OF FBD'S TIME AND EXPENSE RECORDS ARE AVAILABLE
UPON REQUEST]**

**EXHIBIT E**

**RUBINS CERTIFICATION**

FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
(212) 277-4000
Abbey Walsh, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
--------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| AMPAL-AMERICAN ISRAEL CORPORATION, | Case No. 12-13689 (SMB) |
| Debtor. | |

--------------------------------------------x

## CERTIFICATION OF NOAH RUBINS

I, Noah Rubins, certify as follows:

1. I am a partner in the law firm of Freshfields Bruckhaus Deringer LLP ("FBD"). I submit this certification with respect to the First Interim Application of Freshfields Bruckhaus Deringer LLP, as Special Litigation Counsel to the Chapter 7 Trustee for Allowance of Professional Compensation and Reimbursement of Expenses Pursuant to Sections 330 and 331 of the Bankruptcy Code (the "First Interim Fee Application").

2. I make this certification in accordance with Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York updated as of June 17, 2013 (the "Amended Guidelines").

3. In connection therewith, I hereby certify that to the best of my knowledge:

    a. I have read the First Interim Fee Application.

    b. To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought in the First Interim Fee Application fall within the Amended Guidelines, except as specifically noted herein.

US21143797/7  158723-0001

c. Except to the extent that fees or disbursements are prohibited by the Amended Guidelines, the fees and disbursements sought in the First Interim Fee Application are billed at rates and in accordance with practices customarily employed by FBD and generally accepted by FBD's clients.

d. In providing reimbursable services, FBD does not make a profit on the service, whether the service is performed by FBD in-house or through a third party.

e. Prior to filing the First Interim Fee Application, FBD provided the Trustee with a statement of the fees and disbursements accrued during each month included in the First Interim Fee Application and, simultaneously with the filing of the First Interim Fee Application, FBD provided the Trustee a copy of such application, giving the Trustee at least fourteen (14) days' notice before the date set by the Court for the hearing on such application.

Dated: April 10, 2015

Paris, France

_/s/Noah Rubins_____

Noah Rubins