TARTER KRINSKY & DROGIN LLP
Proposed Substitute Counsel to the Chapter 7 Trustee
1350 Broadway, 10th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re

AMPAL-AMERICAN ISRAEL CORPORATION

Debtor.
----------------------------------------------------------------X

Chapter 7
Case No. 12-13689 (SMB)

**TARTER KRINSKY & DROGIN LLP'S RESPONSE TO: (1) THE OBJECTION OF YOSEF A. MAIMAN AND THE CONTROLLING SHAREHOLDERS TO THE RETENTION OF TARTER KRINSKY & DROGIN LLP IN PLACE OF SPIZZ COHEN & SERCHUK, P.C. AS SUBSTITUTE COUNSEL TO THE TRUSTEE; AND (2) CROSS-MOTION TO DISQUALIFY ALEX SPIZZ AS CHAPTER 7 TRUSTEE**

Tarter Krinsky & Drogin LLP ("TKD") on its own behalf, and on behalf of Alex Spizz as Chapter 7 Trustee ("Trustee"), hereby submits this response to: (1) the objection (the "Objection") filed by Yosef A. Maiman ("Maiman") on his behalf, and on behalf of the Controlling Shareholders[1] (the "Objectors"), objecting to the retention of TKD as substitute counsel to the Trustee of Ampal American Israel Corporation ("Ampal" or the "Debtor") pursuant to §327 of Title 11 of the United States Code (the "Bankruptcy Code"); and (2) the Objectors' cross-motion pursuant to §324(a) of the Bankruptcy Code to remove the Trustee ("Cross-Motion"). In support of this response, TKD respectfully states as follows:

---

[1] Defined as Maiman, his relatives, and entities under his ownership and control, including Merhav (M.N.F.) Limited.

## PRELIMINARY STATEMENT

1. The Objection and Cross-Motion filed by the Objectors is nothing more than a punitive and retaliatory response to the Trustee's attempts to prosecute claims both in the United States and Israel against Maiman and his hand-picked officers and directors as well as his company Merhav (M.N.F) Ltd. ("Merhav"). Neither the Office of the United States Trustee nor any creditors or parties in interest have objected to TKD's retention or otherwise joined in the Objectors' Objection and/or Cross-Motion.[2] In crafting the Objection and Cross-Motion, the Objectors grossly misstate the facts as well as the law. As demonstrated herein and in the Trustee's and TKD's accompanying submissions, TKD neither holds nor represents an interest adverse to the estate, is a "disinterested person" and has no actual conflict of interest in representing the Trustee as his general bankruptcy counsel in this case. No basis exists to deny the Trustee's application to retain TKD as his general bankruptcy counsel (the "Retention Application") or to remove the Trustee.

2. In the Trustee's Retention Application, the Trustee readily disclosed TKD's prior representation of (i) Mishmeret Trust Company Services Limited ("Mishmeret"), and (ii) Shapira & Co. Advocates, an Israeli law firm that represented Mishmeret, and Ofer Shapira, its principal (together, "Shapira"). As set forth in the Supplemental Declaration filed by Arthur Goldstein in support of the Retention Application, TKD's representation of Mishmeret and Shapira was limited and ended in July 2014.[3] All of the matters that TKD represented either Shapira or Mishmeret were before this Court and a matter of public record. TKD no longer represents Shapira or Mishmeret in any matters, since all of the matters have been resolved.

---

[2] The Trustee, prior to his joining TKD, discussed the impending move to TKD with the Office of the U.S. Trustee, which was aware of TKD's prior representation of Mishmeret and Shapira, and expressed no objection to the Trustee joining TKD and retaining TKD as general bankruptcy counsel for the reasons set forth herein.

[3] TKD's representation of Shapira ended in January, 2014 and Mishmeret in July, 2014.

3. TKD and the Trustee have no divided loyalties or meaningful incentive to act contrary to the best interests of the Debtor's estate, and no interest or relationship with Shapira, Mishmeret or anyone else "that would even faintly color the independence and impartial attitude required by the Code." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998).

A. **No Private Information Has Been Disclosed**

4. The Objectors claim that the Trustee has violated this Court's Stipulation and Order entered on December 5, 2014 (Doc. No. 532) (the "Supplemental Order") because the Trustee and other former Spizz Cohen & Serchuk, P.C. ("SCS") attorneys have joined TKD and, accordingly "TKD, as Shapira's agent, is expressly prohibited from viewing the Private Information". The Objectors attempt to distort the facts in a continued effort to impugn the integrity of the Trustee. The relevant section of the Supplemental Order is ¶ 4, which states:

> "notwithstanding anything to the contrary contained herein, under no circumstances shall the Trustee or any Trustee representative disclose any private information to Ofer Shapira, the Shapira & Co. law firm, or any of its employees, representatives, or agents."

TKD is not an employee, representative or agent of Shapira, and has not represented Shapira since January, 2014. Thus, TKD's representation of Shapira ceased at least eleven months prior to entry of the Supplemental Order.

5. On Monday, April 13, 2015, Daniel A. Fliman, Esq., one of the Objectors' attorneys, sent an email to the Trustee and others regarding ¶ 4 of the Supplemental Order. The email states:

> "I see that Alex and Arthur have joined Tarter Krinsky - - gents, congrats on the move. However, this creates complications that we need to discuss ASAP. Tarter represents Shapira & Co. in the Chapter 7 case and ¶ 4 of the December 5, 2014 Stipulation and Order expressly prohibits any private information from being shared with representatives or agents for Shapira & Co."

The following day, the Trustee responded as follows:

> "Dan, Tarter Krinsky no longer represents Shapira & Co., the engagement was limited to defending the motion you brought for allegedly violating the stay, which was denied. That being said please be assured that everyone at TKD is aware of the prohibition on sharing private information of the D&Os with Ofer Shapira contained in the Stipulation & Order and I can assure you as Trustee the terms of the Stipulation and Order including those relating to Ofer Shapira will be complied with."

Fliman responded:

> "Thanks, Alex. Does TKD still represent any of the Ampal Bondholders or Trustees with respect to the Ampal case?"

Scott Markowitz, on behalf of TKD, responded: "No". (See Exhibit "A" to Affidavit of Alex Spizz)

6. True to form and similar to the motion to hold Ofer Shapira in contempt, the Objectors are again attempting to create an issue where none exists. In point of fact the Private Information,[4] which is not to be disclosed to Shapira, is contained on a separate portable hard drive and is not in any way part of the TKD computer files. The only person at TKD who has had access to the hard drive since the attorneys from SCS joined TKD is Arthur Goldstein, Esq. who maintains the hard drive under lock and key.

7. The Supplemental Order has not been violated merely by having attorneys at the Trustee's former law firm now employed with TKD. All TKD attorneys and paralegals involved in bankruptcy matters have been made aware of the Supplemental Order and the prohibition of disclosing Private Information as defined therein. The Objectors seem to be contending, without any basis, that other attorneys at TKD may intentionally violate the Supplemental Order. TKD has established a procedure limiting access to the Private Information contained on the hard drive to Alex Spizz, Arthur Goldstein and Jill Makower. It is the Trustee's obligation to make sure that the terms of the Supplemental Order continue to be complied with as they have in the past.

---

[4] As defined in the Supplemental Order.

There has been no allegation that Private Information has been disclosed to Shapira. The only allegation is the absurd claim that as a result of SCS attorneys joining TKD the disclosure provisions of the Supplemental Order have automatically been violated notwithstanding that TKD no longer represents Shapira. This interpretation has no basis in either law or fact.

**B.** **Shapira Has No Actual Conflict of Interest**

8. Shapira is not a creditor of the Debtor and has not filed a proof of claim against the Debtor's Estate. Shapira has no actual conflict with the Debtor's Estate and no economic interest in the Ampal Estate.

9. The Objectors erroneously infer that this Court, at the July 11, 2013 hearing on the Trustee's application to retain Shapira as special counsel to the Trustee (the "Shapira Retention Application"), urged the Trustee to withdraw the Shapira Retention Application because of some conflict, and that the Trustee thus withdrew the Shapira Retention Application at the hearing and subsequently proceeded to have Shapira retained by the non-Debtor subsidiaries. Contrary to the Objectors' inferences, however, the Court specifically found that there was no conflict on the matters with respect to which the Trustee sought to retain Shapira, stating:

> "But not - - but there's no conflict on the specific matters that are listed in the reply."

(Transcript, July 11, 2013, Pg. 12, Lines 11 – 12.)

The Court went on to state:

> "I still haven't heard what the conflicts are - - actual or potential. So if the firm is going to represent the Debtor's interest, whatever they may be, in the sale of the country club, and the windfall, what's the conflict?"

(Transcript, July 11, 2013, Pg. 12, Lines 22 – 25.)

10. The motion to retain Shapira was withdrawn at the suggestion of the Court because the Court felt that the proposed representation of Shapira was actually for the non-Debtor subsidiaries rather than for the Debtor.

> The Court: "Look I come back to how I started. You haven't convinced me that the firm is needed to represent the Estate as opposed to the nondebtor subsidiaries. And the nondebtor subsidiaries are free to hire the firm and represent them in these matters. I understand the Estate has obviously a moving interest - -
>
> Mr. Spizz: yes. Well - -
>
> The Court - - in these matters, but - -
>
> Mr. Spizz: your Honor, based on—
>
> The Court: - - MAG is free to take whatever position it wants in the IDB matter.
>
> Mr. Spizz: Your Honor, based upon the - - the Court's statement, I would ask that I can withdraw the motion without prejudice.
>
> The Court: Any objection to that?
>
> Mr. Novack: No, Judge.
>
> The Court: Alright. I'll - - just write a letter withdrawing the motion without prejudice but I think the easiest thing is to have the subsidiaries retain the firm.
>
> Mr. Spizz: Correct.
>
> The Court: The subsidiaries' going to pay them anyway.
>
> Mr. Spizz: Yes, they can.

(Transcript p. 13 line 25; p. 14 lines 1-22)

11. The record demonstrates that the Trustee withdrew the Shapira Retention Application at the suggestion of the Court since the services to be rendered by Shapira were to directly benefit the Debtor's subsidiaries as opposed to the Debtor's Estate. The Court found no actual conflict on the part of Shapira.

12. The Objectors again attempt to claim that Shapira has a conflict as a result of this Court's decision dated December 16, 2013 (the "Stay Decision") (Doc. No. 382) denying the Objectors' motion for relief against Shapira and Mishmeret for violating the automatic stay (the "Stay Violation Motion"). It is true that the Court found a *prima facia* showing that Shapira had violated the automatic stay by writing a letter dated October 4, 2013 on behalf of the Indenture Trustees demanding payment from the Objectors and others for breach of fiduciary duty, waste and mismanagement. The Court, however, found that the Stay Violation Motion was an overreaction to the October 4th letter motivated by the Objectors' concern about being sued, not about the effect the lawsuit would have on the Debtor's Estate. The Court then held that there was no conflict on the part of Shapira and denied the movant's motion to compel the Trustee to terminate Shapira's representation of the non-Debtor subsidiaries. The Court found that any conflict was potential and hypothetical since Shapira had not taken any steps to collect on the Debtor's D&O insurance policy or act on the October 4th letter (Stay Decision at p. 21). The Objectors cannot cite to any action taken by Shapira since this Court's Stay Decision of December 16, 2013 which would demonstrate that Shapira now has a conflict.

13. The Objectors further assert that TKD is conflicted because of its former representation of Mishmeret as proposed post-petition lender to the Ampal Estate. This is another example of the Objectors' misstating the facts in order to serve their own purposes. Paragraph 8 of the June 24, 2014 Order approving the litigation loan (Doc. No. 429) provided as follows:

> "The Indenture Trustees shall have the right to assign their rights and obligations under the LFA and this Order to Klirmark Opportunity Fund L.P. and Meitav Gemel & Pension Ltd., identified on Annex A to the LFA as the funders of the litigation loan."

14. Following approval of the litigation financing, on June 25, 2014 the parties entered into a First Amendment to a Litigation Financing Agreement executed May 20, 2014 (see Exhibit "B" to Affidavit of Alex Spizz) whereby the rights and obligations of the Indenture Trustees under the Litigation Financing Agreement were transferred to Klirmark and Meitav, both of which funded the entire $1,500,000 litigation financing loan. Mishmeret is not and was not at any time a post-petition lender to the Estate. TKD has never represented Klirmark or Meitav.

**C. To The Extent There Are Any Valid Claims By The Estate Against Mishmeret and Shapira, Those Claims Can Be Asserted Using Conflicts Counsel**

15. The Objectors make unsupported allegations against the Trustee in a desperate attempt to disqualify him and TKD in hopes of getting a less worthy adversary. The Court should be sensitive to the strategic abuse of this type of disqualification motion. The causes of action which the Objectors claim belong to the Ampal Estate, and which the Trustee allegedly has failed to pursue, can be summed up as follows: Alleged, untrue and defamatory statements against Maiman and other officers and directors of the Debtor were made to the Israeli press, the result of which drove the Debtor into bankruptcy and had the effect "of dissuading the potential equity partners in the Colombia Ethanol Project from carrying out their planned investments, preventing the closing of financing that was already negotiated, thereby derailing the project entirely."

16. The bona fides of any such alleged causes of action are cast into doubt by the Debtor's own filings.

17. On August 29, 2012, the Debtor filed its Local Rule 1007-2 Declaration of Irit Eluz, the Chief Financial Officer and Senior Vice President of the Debtor ("Eluz Declaration") (Doc. No. 2). Paragraphs 21 through 31 describe the reasons for the Debtor's Chapter 11 filing.

Nowhere in the Eluz Declaration does the Debtor state that the alleged untrue and defamatory statements made to the press by Mishmeret and Shapira in any way caused the Debtor to file for bankruptcy protection.

18. In addition, the Debtor's Schedules do not list any cause of action against Mishmeret and Shapira or others that they are now claiming the Trustee has failed to pursue. (Doc. No. 37). If the Debtor had a valid prepetition cause of action against Mishmeret and Shapira, as the Objectors claim, it was the Debtor's obligation to disclose such course of action in Schedule B-21 (Contingent and unliquidated claims of every nature).

19. These alleged causes of action were not raised by Maiman or the Controlling Shareholders until late in these proceedings and <u>after</u> they became aware of the Trustee's action on the Note and Guaranty. Even now the Objectors have not identified what was done or said to the Israeli press that "impaired" Ampal. Further, the Objectors did not present to the Trustee any facts or evidence supporting any claims that the Estate allegedly has against Shapira or Mishmeret. Nor did the Objectors request the Trustee to take action on behalf of the Ampal Estate. Instead, the Objectors now raise weak and speculative claims, and complain that the Trustee has not pursued them.

20. The Trustee first learned of the alleged claim that the Colombia Ethanol Project proposed financing had been hindered as a result of the actions of others when Maiman filed a proof of claim (the "Maiman POC") on September 15, 2014 (Claim No. 6).[5] In ¶ 5 of the Maiman POC, Maiman alleges:

> "Ampal, MAG and certain representatives of Ampal's Debenture Trustees and Bondholders impeded Merhav from obtaining financing for his Colombia Ethanol producing project and actively and deliberately hindered the occurrence of the ("qualified financing date") (as defined in the Agreement). Conduct by Ampal's Debenture Trustees and

---

[5] Affidavit of Alex Spizz, ¶ 21.

> Bondholders is imputed to Ampal through their extensive control over Ampal, MAG and Mr. Spizz, Ampal's Chapter 7 Trustee".

In ¶ 6, Maiman contends:

> "As such, Ampal is obligated to compensate Maiman for any harm, cost and damages that Mr. Maiman has and/or may have in connection with the Note, the Agreement and the Guaranty."

21. As of September 15, 2014, Maiman was not alleging that the Ampal Estate had claims based upon the actions of the Bondholders and Shapira but rather that he and Merhav had claims not only against the Indenture Trustees and Bondholders but also against Ampal and its subsidiaries and therefore was seeking compensation by way of indemnification.

22. The next time Maiman and Merhav raised the issue of tortious interference by the Bondholders was when they filed their answer to the complaint brought in this Court by Merhav Ampal Group, Ltd. ("MAG") against Merhav and Maiman seeking recovery of the $20,000,000 Note and Guaranty.

23. Maiman's answer contained sixteen (16) affirmative defenses. The fifth affirmative defense dealt with the alleged tortious interference by the Bondholders and read as follows:

> "Plaintiff's claims are barred, in whole or part, because the Debtor's Bondholders and their trustees and representatives (the "Bondholder Parties") made consummation of the Colombia Ethanol Project impossible through their tortious interference. The Bondholder Parties, who asserted claims comprised nearly all of the Debtor's debts, are essentially the sole beneficiaries of this action and also exert extensive control and influence over the Trustee and the Plaintiff. Indeed, the Bondholder parties elected the Trustee as Chapter 7 Trustee, thereby hand selecting him. And, the Bondholder parties are financing this litigation by loaning funds to the Plaintiff in exchange for liens on any recoveries. For these reasons, the conduct of the Bondholder parties should be imputed to the Trustee and to Plaintiff. Otherwise, the very parties that block the Colombia Ethanol Project will receive a windfall."

24. Again Maiman asserts in his papers filed with the Court that as a result of the Bondholders' alleged tortious interference and alleged influence over the Trustee, the Bondholders as well as the Trustee are responsible for blocking the Colombia Ethanol Project. As of today, the Trustee is not aware that financing for the ethanol project was ever anywhere close to imminent or that anything was done by the Bondholders and/or the Indenture Trustees that affected the project.

25. It is interesting to note that the Trustee was elected on May 20, 2013, more than five (5) months after Maiman's and Merhav's last extension to pay under the Note and Guaranty, and thus the Trustee could not have been in any way responsible for the alleged actions of the Bondholders. Maiman and Merhav again raised the same theory in a third party complaint which they filed in connection with the Note and Guaranty action against the Indenture Trustees and Shapira. (See Exhibit "E" to Affidavit of Alex Spizz.)

26. The crux of the alleged cause of action which Maiman and Merhav contend the Debtor's Estate possessed, is that the Debtor, as a result of the actions by the Bondholders, lost the opportunity to obtain a twenty five (25%) percent interest in a Colombia ethanol project that had never gotten off the ground. Maiman's and Merhav's alleged theory, with respect to the cause of action that they claim the Debtor possesses, directly conflicts with a substantial cause of action that does exist, to wit, the claim by MAG against Merhav and Maiman on the twenty million dollar ($20,000,000) Note and Unconditional Guaranty. The clear implication of Maiman's and Merhav's position is that the Trustee should forego the Estate's claim of over $25,000,000 on the Note and Unconditional Guaranty in favor of prosecuting a cause of action that is highly suspect as to liability and completely speculative as to damages.

27. A trustee has a fiduciary obligation to pursue all claims that will benefit the Debtor's Estate. A trustee also has a fiduciary duty not to pursue expensive and time consuming

speculative claims which he believes are based upon insufficient legal grounds and will not benefit the Estate. Why did Maiman, when he was in control of the Debtor until the Trustee was appointed, not pursue these claims on behalf of the Estate if he felt that they represented a substantial asset? It was only after the Trustee commenced the action against Merhav and Maiman on the Note and the Guaranty that they asserted these alleged claims against the Bondholders. In addition, when these alleged claims were first advanced by Maiman they were not claims in favor of Ampal but rather against Ampal and the Bondholders.

28. Notwithstanding the fact that the Trustee does not believe there would be any benefit to the Estate in prosecuting the claims advanced by Maiman, the Trustee has the benefit of allowing the ongoing judicial proceedings to be resolved before making any final and definitive determination. The Bondholders and Shapira, who are represented by Akin Gump Strauss Hauer & Feld LLP with respect to the third party complaint, have filed a motion to dismiss Merhav and Maiman's third party complaint. If this Court, or any other court, finds merit in the claims advanced by Maiman, and that the Debtor's Estate was possibly damaged as a result, those claims can and will be pursued in Israel, which has a seven (7) year statute of limitation on the type of tortious acts alleged by Maiman and Merhav.[6]

29. The Bankruptcy Code provides for creditors to elect a Chapter 7 trustee. It would be incorrect for a Court to infer that there is a special bias on the part of an elected trustee toward those creditors who elected him without a factual basis for such alleged bias. Notwithstanding that the Indenture Trustees elected Spizz as Chapter 7 Trustee, Spizz would not hesitate to commence any viable cause of action against them which would benefit the Estate. As an example, shortly after the Trustee's election, a dispute between the Trustee and the Indenture

---

[6] Paragraph 18 and Exhibit 17 to the Declaration of Patrick M. Mott in Support of Third Party Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Third Party Complaint, dated February 26, 2015.

Trustees arose over ownership of pre-petition sinking funds that had been established in connection with the various indentures, which sinking funds were listed on the Debtor's Schedules as assets of the Estate. In the event the negotiations regarding ownership of the sinking funds were unsuccessful the Trustee had prepared a complaint (the "Draft Complaint") against the Indenture Trustees for turnover of the sinking funds as well as for avoidance and recovery of preferential transfers. (See Exhibit "F" to Affidavit of Alex Spizz.)

30. The Draft Complaint was delivered to the Indenture Trustees' attorneys with the caveat that if a settlement was not reached, the Draft Complaint would be filed and the claims therein pursued. A settlement was subsequently reached with the Indenture Trustees resolving the issues involving the sinking funds and the alleged preferences, and the settlement was subsequently approved by this Court.

31. The Trustee was able to resolve a difficult and complex issue relating to the sinking funds without resorting to expensive litigation because the Indenture Trustees were mindful that the Trustee was prepared to commence litigation against them if a settlement could not be reached. The record is clear that the Trustee has exercised prudent business judgment in thus far not pursuing claims which Maiman and Merhav are currently pursuing at their expense and not at the expense of the Ampal Estate as well as what the Trustee believes to be a strong case by the Estate against Merhav and Maiman based upon the Note and Unconditional Guaranty.

32. The Objectors further allege that as a result of a statement made by Mr. Shapira to the Israeli press in late 2013 that the Bondholders intended to force a sale of Gadot Tankers and Terminals Ltd. ("Gadot"), Israel Discount Bank ("IDB") nominated a receiver for the Gadot shares in an effort to try to recover on financing it had made to acquire such shares. They further claim that the appointment of the Israeli receiver caused Ampal to lose tens of millions of dollars

in its investment in Gadot. Regardless of whether there is any cause of action against Shapira for speaking to the press about the Bondholders' intentions during negotiations with the Debtor, these assertions, like many of the other claims made by the Objectors, are patently untrue. The Objectors do not assert that this alleged cause of action was brought to the attention of the Trustee. That is because prior to the time of the Trustee's election IDB had already applied to the Israeli court for the appointment of a receiver.

33. IDB applied to the Israeli Court for the appointment of a receiver on December 6, 2012, a year before the date claimed by the Objectors. IDB's application for the appointment of a receiver, (see Exhibit "G" to Affidavit of Alex Spizz), demonstrates that IDB's decision to seek the appointment of a receiver was based upon financial reasons, including the filing of Chapter 11 by Ampal, and had nothing to do with alleged statements to the press, especially those that had not as yet occurred.

34. The Eluz Declaration further cast doubt on the Objectors' allegations set forth in the Objection. Paragraph 19 of the Eluz Declaration discusses the acquisition of Gadot and the outstanding debt due IDB, which at the time of the filing of the Debtor's petition was 75.5 million dollars. The obligation to IDB was MAG's obligation which was in turn guaranteed by the Debtor. The Eluz Declaration states in ¶19 the following:

> "the Debtor determined that in connection with the preparation of its June 30, 2012 financial statements, it would not meet required covenants due to the Debtor's other debts (mainly, to its debenture holders), and in accordance with the terms of the IDB Credit Facility, IDB may decide to accelerate the IDB Credit Facility and set it to immediate prepayment".[7]

35. Eluz goes on in ¶ 25 of the Eluz Declaration to state:

> "In addition, Gadot's business has suffered as a result of a global economic uncertainty, particularly in Europe…." "During the last

---
[7] Declaration of Irit Eluz (Doc. No. 2, ¶ 19).

year the Debtor has taken measures aimed to partially realize value on its holdings of Gadot's stock, new investor(s) or an initial public offering. In the current market, it is not an advantageous time to procure a new investor(s) or conduct an initial public offer. The Debtor continues actively to pursue its alternatives, including negotiations with an international investor to invest in Gadot and to purchase a minority stake in Gadot from the Debtor and negotiations to sell the Debtor's stake in Gadot".

36. The IDB application for a receiver states that Maiman and Ampal were attempting to sell Gadot for more than a year prior to the December 6, 2012 application. The record is clear that IDB was aware that the Debtor would be forced to sell its interest in Gadot because of its financial problems long before any alleged statements were made to the press by the Indenture Trustees or their representatives.

### D. TKD Has No Actual Conflict of Interest

37. As demonstrated above and in the Trustee's memorandum of law, TKD neither holds nor represents an interest adverse to the Ampal Estate, is a "disinterested person", and has no actual conflict of interest in representing the Trustee as his general bankruptcy counsel in this case.

### E. Conflicts Counsel

38. While TKD neither holds nor represents any interest adverse to the Ampal Estate, is disinterested, and has no actual conflict of interest, in the event that it is determined in the exercise of the Trustee's business judgment that the Estate has one or more valuable causes of action against Mishmeret or Shapira or a contest arises involving Mishmeret's proof of claim, the Trustee agrees that those matters would not be handled by TKD but would instead be referred to special conflict counsel to be retained by the Trustee.

F.  **Ethical Wall**

39. Notwithstanding the fact that TKD does not have an actual conflict because it no longer represents either Mishmeret or Shapira, the firm in an abundance of caution has established an Ethical Wall. All attorneys and paralegals who were previously involved in the representation of Mishmeret and Shapira have been blocked from access to any of TKD's electronic files and records involving Ampal. Likewise, the SCS attorneys who joined TKD have also been blocked from access to any of the electronic files and records having to do with TKD's representation of Mishmeret and/or Shapira. In addition, any TKD attorneys or paralegals who were involved in the Mishmeret and Shapira matters will not be involved in TKD's representation of the Trustee.[8]

## CONCLUSION

40. For the reasons set forth herein, it is respectfully submitted that the Objection of Yosef A. Maiman and the Controlling Shareholders to the retention of TKD be overruled and the cross-motion to disqualify Alex Spizz as Chapter 7 trustee should be denied.

Dated: New York, New York
May 14, 2015

                                    TARTER KRINSKY & DROGIN LLP
                                    Proposed Substitute Counsel to the
                                    Chapter 7 Trustee

                                  By:  /s/ Arthur Goldstein
                                    Alex Spizz, Esq.
                                    Arthur Goldstein, Esq.
                                    Jill Makower, Esq.
                                    1350 Broadway
                                    New York, NY 10018
                                    (212) 216-8000

---

[8] Affidavit of Alex Spizz, ¶ 37.