**Hearing Date: November 24, 2015**
                                         **Hearing Time: 10:00 A. M.**

TARTER KRINSKY & DROGIN LLP
Attorneys for Alex Spizz, Chapter 7 Trustee
1350 Broadway
New York, New York 10018
(212) 216-8000
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

----------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| AMPAL-AMERICAN ISRAEL CORPORATION, | Case No. 12-13689 (SMB) |
| Debtor. | |

----------------------------------------x

**NOTICE OF CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING DEBTOR'S ESTATE TO MAKE LITIGATION LOAN TO MERHAV AMPAL GROUP LTD. PURSUANT TO 11 U.S.C. §363(b)**

**PLEASE TAKE NOTICE** that upon the motion dated November 10, 2015 (the "Motion") of Alex Spizz, the Chapter 7 trustee (the "Trustee") of the above-captioned debtor, Ampal-American Israel Corporation ("Debtor"), by his counsel, Tarter Krinsky & Drogin LLP, the Trustee will move before the Honorable Stuart M. Bernstein, United States Bankruptcy Court Judge, in his Courtroom at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on the **24th day of November 2015 at 10:00 A.M.,** or as soon thereafter as counsel can be heard (the "Hearing Date"), for an order, substantially in the form annexed to the Motion as Exhibit "A", authorizing the Trustee, on behalf of the Debtor's estate, to make a proposed Litigation Loan (as defined in the Motion) in the amount of One

Hundred Thirty Thousand ($130,000.00) U.S. Dollars to Debtor's indirect subsidiary Merhav Ampal Group Ltd. ("MAG"), pursuant to Bankruptcy Code section 363(b).

**PLEASE TAKE FURTHER NOTICE**, that any objections to the Motion must be filed with the Clerk of the Bankruptcy Court with a copy delivered to the Chambers of the Honorable Stuart M. Bernstein and served upon: (i) Tarter Krinsky & Drogin LLP, attorneys for the Trustee, 1350 Broadway, New York, New York 10018, Attn: Alex Spizz, Esq. and Arthur Goldstein, Esq.; and (ii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Andrew D. Velez-Rivera, Esq., so as to be filed and received at least seven (7) days prior to the Hearing Date.

Dated: New York, New York
November 10, 2015

    TARTER KRINSKY & DROGIN LLP
    Attorneys for Alex Spizz, Chapter 7 Trustee

    By: s/ Jill Makower
        Alex Spizz, Esq.
        Arthur Goldstein, Esq.
        Jill Makower, Esq.
        1350 Broadway, 11th Floor
        New York, New York 10018
        Phone: (212) 216-8000
        Fax: (212) 216-8001
        aspizz@tarterkrinsky.com
        agoldstein@tarterkrinsky.com
        jmakower@tarterkrinsky.com

Hearing Date: November 24, 2015
Hearing Time: 10:00 A. M.

TARTER KRINSKY & DROGIN LLP
Attorneys for Alex Spizz, Chapter 7 Trustee
1350 Broadway
New York, New York 10018
(212) 216-8000
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
_____x

In re:                                              Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                  Case No. 12-13689 (SMB)

                        Debtor.
_____x

## CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING DEBTOR'S ESTATE TO MAKE LITIGATION LOAN TO MERHAV AMPAL GROUP LTD. PURSUANT TO 11 U.S.C. §363(b)

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE

Alex Spizz, the Chapter 7 trustee (the "Trustee") of Ampal-American Israel Corporation, the debtor herein (the "Debtor"), submits this motion (the "Motion") seeking entry of an order, substantially in the form annexed hereto as **Exhibit "A"**, authorizing the Trustee, pursuant to section 363(b) of title 11, United States Code (the "Bankruptcy Code"), to extend, on behalf of the Debtor's estate, a certain Litigation Loan (defined below) in the amount of One Hundred Thirty Thousand ($130,000) USD, to Merhav Ampal Group Ltd. ("MAG"), a non-debtor indirect subsidiary of the Debtor, to enable MAG to pay certain tribunal costs due in connection with the arbitration proceeding entitled Yosef Maiman, Merhav (MNF) Ltd., Merhav Ampal Group, Ltd. and Merhav Ampal Energy Holding, LP v. Egypt (the "UNCITRAL

{Client/008427/BANK912/01021394.DOC;1 }

Arbitration") commenced and pending under the United Nations Commission on Trade Law Rules ("UNCITRAL"). In support of this Motion, the Trustee respectfully represents:

## JURISDICTION

1.    This Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## FACTS

**A.    General**

2.    On August 29, 2012 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code.

3.    The Debtor is an investment company, incorporated in New York, which primarily acquired interests in companies located or operating in Israel in the energy, chemicals, real estate, project development and leisure sectors. As of the Petition Date, the Debtor's principal assets were its direct and indirect equity holdings in over 80 corporations (the "Subsidiaries"), and the Debtor's business consisted of managing its equity investments in the Subsidiaries. None of the Debtor's Subsidiaries is a debtor in this or any other U.S. Bankruptcy Court and none is the subject of any bankruptcy case, insolvency proceeding or receivership proceeding outside of the United States except for the shares of Gadot Chemical Tankers and Terminals Ltd. ("Gadot"), which were in receivership in Israel and sold in the receivership for $73.3 million.[1]

---

[1] The proceeds of the sale were used to pay the obligation of MAG to Israel Discount Bank ("IDB"). The Debtor guaranteed MAG's obligation to IDB and IDB filed a claim in these proceedings in the amount of $76,107.151. As a result of the sale IDB has withdrawn its claim.

{Client/008427/BANK912/01021394.DOC;1 }    2

4. On September 25, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee").

5. On April 8, 2013, the Court ordered the appointment of a Chapter 11 trustee and the Office of the U.S. Trustee thereafter designated Michael Luskin as Chapter 11 trustee.

6. Michael Luskin, as Chapter 11 trustee, moved to convert this case to Chapter 7 on the grounds that, among other things, the Debtor was administratively insolvent.

7. By Order dated May 2, 2013 (the "Conversion Date"), the Court converted the case to one under Chapter 7.

8. On May 3, 2013, the Office of the U.S. Trustee appointed Alan Nisselson as interim Chapter 7 trustee.

9. On May 20, 2013 (the "Election Date"), Alex Spizz was elected Chapter 7 Trustee of the Debtor pursuant to section 702 of the Bankruptcy Code and was duly qualified thereafter.

10. Pursuant to the "Order Authorizing Chapter 7 Trustee To Exercise Debtor's Shareholder Rights" entered on July 25, 2013 [Docket No. 325] (the "Shareholder Rights Order"), the Trustee was authorized, effective as of May 20, 2013, "to exercise the Debtor's shareholders rights with respect to the business and affairs of the Debtor's subsidiaries, as provided for under New York law or other applicable law that may be appropriate." (Shareholders Rights Order at p. 1-2).

11. As of the Petition Date, and currently, the Debtor holds a 12.5 % interest in East Mediterranean Gas Company, S.A.E., an Egyptian joint stock company ("EMG"). The Debtor holds 8.21% of EMG through its indirect subsidiary MAG and 4.29% of EMG through its 50% ownership interest in Merhav Ampal Energy Holdings, LP ("MAEH"), which holds an 8.58% interest in EMG. EMG, which was organized in 2000 in accordance with the Egyptian Special Free Zone System,

was granted the right to purchase natural gas from the Egyptian General Petroleum Company and Egyptian Natural Gas Holding Company ("EGPC/EGAS") to transport and sell to Israel as well as other countries. The parties signed a Gas Purchase and Supply Agreement ("GSPA") in 2005, with guarantees and assurances from the Government of Egypt. EMG linked the Israeli energy market with the Egyptian National Gas Grid via a subsea East Mediterranean pipeline. Initial gas delivery occurred in May of 2008. EMG is the developer, owner and operator of the pipeline and its associated facilities on-shore both at the point of departure near El-Arish, Egypt and the point of entry in Ashkelon, Israel.

12.    Following the political and civil unrest in Egypt in 2011 and 2012, which (among other things) disrupted gas deliveries to EMG, in April 2012, EGPC/EGAS notified EMG of its termination of the GSPA claiming alleged breaches by EMG. EMG maintains that it did not breach the GSPA and that instead EGPC/EGAS repudiated the GSPA. As a result, three arbitration proceedings (the "Three Arbitrations") (i.e., the UNCITRAL Arbitration and two other arbitrations[2]) were commenced by EMG and various EMG shareholders (including the Debtor, with

---

[2] The two other arbitrations are:

(i)    Ampal-American Israel Corporation, EGI-Fund (08-10) Investors LLC, EGI-Series Investments LLC, BSS-EMG Investors LLC and David Fischer v. Egypt (the "ICSID Arbitration"):  David Fischer, a shareholder in EMG and a German national, enjoys protection under the German-Egypt Bilateral Investment Treaty ("BIT"), and the investments of the other named claimants are protected by the U.S.-Egypt Bilateral Treaty as U.S. nationals. On May 2, 2012, the claimants submitted their Request for Arbitration against Egypt to the World Bank's International Centre for Settlement of Investment Disputes ("ICSID") pursuant to the German-Egypt BIT and the U.S.-Egypt BIT, both of which provide for the option of arbitration under the ICSID Convention. On March 1, 2013, the claimants filed their detailed Statement of Claim alleging breaches of the German-Egypt and U.S.-Egypt BITs parallel to those alleged in the UNCITRAL arbitration described below. The German and U.S. claimants seek compensation in the amount of $800,500,000 (exclusive of pre- and post-award interest); and

(ii)    EMG v. EGPC, EGAS and IEC (the "ICC Arbitration"): EMG brought arbitration proceedings against EGPC/EGAS and IEC on October 6, 2011. EMG invoked the International Chamber of Commerce ("ICC") arbitration clauses in the GSPA and a Tripartite agreement between EGPC/EGAS, EMG, and IEC (the "Tripartite Agreement"), which serves to reinforce EGPC/EGAS' obligations towards EMG. In this ICC

respect to one of the Three Arbitrations) against EGPC/EGAS or Egypt which are currently pending and which relate to the disruption of gas flow and the purported termination of the GSPA.[3] The arbitration proceeding which relates to this Motion is the UNCITRAL Arbitration, discussed below.

13. The Three Arbitrations comprise the largest portion of the assets of the Debtor. If the claimants are successful in the Three Arbitrations, it is anticipated that the recoveries shall enable the Trustee to make substantial if not 100% distributions to the creditors of the Debtor's estate.

14. Freshfields Bruckhaus Deringer US LLP ("FBD") represents all of the Claimants in the Three Arbitrations and FBD was also retained as the Trustee's counsel in the ICSID Arbitration.

B. **The UNCITRAL Arbitration And The Estate's Substantial Claims Therein**

15. On or about May 2, 2012, Yosef Maiman ("Maiman"), Merhav (MNF) Ltd., MAG and MAEH (collectively, the "Claimants") commenced the UNCITRAL Arbitration against Egypt under the Poland–Egypt BIT, on the basis that Maiman is a Polish national who controls the claimant companies. Claimants seek compensation from Egypt in the UNCITRAL Arbitration for breaches of the Polish-Egypt BIT arising from Egypt's treatment of their investments, in the total amount of $996 Million USD (exclusive of pre- and post-award interest). MAG has asserted claims of approximately $372.5 Million USD, and MAEH (of which MAG is the 50% equity owner) has asserted claims of approximately $384.4 Million USD. Based on the Debtor's indirect ownership of 100% of MAG and 50% of MAEH, the Debtor has indirect claims of approximately $564.7 Million USD in the UNCITRAL Arbitration.

---

Arbitration proceeding, EMG seeks compensation and indemnification from EGPC/EGAS in the amount of approximately $1.6 Billion.

[3] In addition to the Three Arbitrations discussed above, EMG commenced an arbitration against the Israel Electric Corporation ("IEC") to seek declaratory relief from EMG's obligations to deliver gas to IEC, and EGPC/EGAS also started an arbitration for breach of the GSPA against EMG in Egypt.

{Client/008427/BANK912/01021394.DOC;1 }    5

16. The hearings in the UNCITRAL Arbitration were held on September 1, 2014 through September 11, 2014.

C. **The Supplementary Deposit Requested By The Tribunal In The UNCITRAL Arbitration**

17. The tribunal in the UNCITRAL Arbitration, i.e., the Permanent Court of Arbitration ("PCA") is authorized to charge the parties to arbitrations with certain costs incurred by the PCA. In the UNCITRAL Arbitration, the PCA has requested a supplementary deposit of €200,000 (the "Supplementary Deposit"), one half of which is the Claimants' share and one half of which is the share of the respondent, Arab Republic of Egypt ("Respondent"). By letter dated August 28, 2015, PCA advised the Claimants that the Respondent refused to contribute to the costs of the UNCITRAL Arbitration and accordingly, PCA was requesting that the Claimants pay the entire €200,000 Supplementary Deposit in two installments, with the first installment of €100,000 (representing the Claimants' share) to be paid by October 19, 2015.

18. By letter dated November 4, 2015, the PCA stated that the Supplementary Deposit remains outstanding despite the payment deadline having expired, and further advised that the PCA may suspend the UNCITRAL Arbitration if the Supplementary Deposit is not paid by November 20, 2015. PCA's November 4, 2015 letter stated:

> "The Claimants are requested to advise the Tribunal of the status of their payment of the requested deposit. Should payment not be received by **20 November 2015**, the Tribunal will have to consider whether to suspend the proceedings."

19. The Claimants' pro rata shares of the €200,000 Supplementary Deposit are: MAG - €100,740; MAEH - €33,580 and Merhav MNF Ltd. - €65,680.

20. MAG and MAEH have very limited funds and are financially unable to pay their requested portions of the €200,000 Supplementary Deposit.

21. FBD and the Trustee believe that, based upon the PCA's November 4, 2015 letter, the PCA may suspend the UNCITRAL Arbitration absent prompt payment of the Supplementary Deposit.

22. The Trustee has been advised by FBD that no additional costs should be required by the PCA prior to the determination of the UNCITRAL Arbitration.

23. In order to avoid the possible suspension of the UNCITRAL Arbitration (and the concomitant delays in the distribution of any proceeds that may be paid to the Debtor's estate, if the Claimants are successful), the Trustee has determined in the exercise of his business judgment that it is in the best interest of the Debtor's estate to lend MAG (the Debtor's non-debtor indirect subsidiary) $130,000 USD, which will be sufficient to enable MAG to pay PCA €117,530 toward the Supplementary Deposit (representing MAG's share of €100,740 and 50% of MAEH's share of €33,580).

**D.    Proposed Litigation Loan To MAG**

24. The Trustee, on behalf of the Debtor's estate, intends to make the Litigation Loan to MAG subject to Court approval. The Litigation Loan in the sum of $130,000 USD would be made by the Trustee to MAG, to be used by MAG to pay PCA €117,530 toward the Supplementary Deposit in the UNCITRAL Arbitration.

25. The principal elements of the proposed Litigation Loan are summarized as follows:

    a.    **Amount of Litigation Loan** - The Litigation Loan is in the sum of $130,000.00 USD.

    b.    **Lender** - The funds will be loaned by the Trustee on behalf of the Debtor's estate.

    c.    **No Collateral** – The Litigation Loan will be an unsecured loan. No security is necessary because MAG is an indirect subsidiary of the Debtor and, pursuant to the Shareholders Rights Order, the Trustee was authorized, effective as of May 20, 2013, "to exercise the Debtor's shareholders rights with respect to the business and affairs of the Debtor's subsidiaries, as provided for under New York law or other applicable law that may be appropriate." Id. at p. 1-2.

    d.    **Maturity / Repayment** - The Litigation Loan (including the accrued interest) shall be repaid by MAG from any available funds MAG receives from any source after the Litigation Loan is made, as soon as practicable and within 120 days after the Litigation Loan funds are disbursed by the Trustee. For the avoidance of doubt, the Litigation Loan shall be repaid from any future proceeds received by MAG and before any other expense of MAG.

    e.    **Interest Rate** - The Litigation Loan amount shall bear annual interest at the rate of five (5%) percent during the 120 day period after the Litigation Loan funds are disbursed. Any portion of the Litigation Loan which is not repaid within 120 days after the Litigation Loan is disbursed by the Trustee shall accrue interest after the 120 day period at sixteen (16%) percent per annum. The interest on the Litigation Loan shall be accrued to the principal and paid upon payment of the principal.

    f.    **Prepayment** - MAG shall have the right to make a prepayment of the entire outstanding debt on the Litigation Loan and, in such case, shall not pay a penalty.

    g.    **Other Terms**

- The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of the Litigation Loan.

## REQUEST FOR RELIEF

26. By this Motion, the Trustee seeks an order pursuant to Bankruptcy Code section 363(b), substantially in the form annexed hereto as **Exhibit "A"**, authorizing the Trustee, on behalf of the Debtor's estate, to make the Litigation Loan to MAG.

## APPLICABLE AUTHORITY

### A. The Proposed Litigation Loan is Within the Trustee's Sound Business Judgment

27. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). In addition, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

28. To use, sell or lease property of the estate under section 363(b), the Trustee must demonstrate a legitimate business justification for the proposed transaction. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel), 722 F.2d 1063, 1071 (2d Cir.1983). See also Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 83 (S.D.N.Y.2010) ("The overriding consideration for approval of a Section 363 sale is whether a 'good business reason' has been articulated."), citing, inter alia, In re Chrysler LLC, 576 F.3d 108, 114 (2d Cir.2009); In re Iridium Operating LLC, 478 F.3d 452, 466 (2d Cir.2007). In determining whether a good business reason exists to grant a motion to approve a use, sale or lease of property of the estate pursuant to section 363(b), "a court should consider 'all of the salient factors pertaining to the proceeding' and 'act to further the diverse interests of the debtor, creditors, and equity holders.' " In re Chrysler LLC, 405 B.R. 84, 95 (Bankr.S.D.N.Y.2009), aff'd, 576 F.3d 108 (2d Cir.2009), vacated as moot, 558 U.S. 1087, 130 S.Ct. 1015, 175 L.Ed.2d

614 (2009), citing Lionel, 722 F.2d at 1071.

29.     Once the trustee articulates a sound business justification, there "'is a presumption that in making a business decision the [decision maker] acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993) (citation omitted).

30.     As demonstrated above, sound business reasons exist that justify the Litigation Loan, including the fact that the Debtor has indirect claims of approximately $564.7 Million USD in the UNCITRAL Arbitration and the Trustee's and FBD's belief that the PCA may suspend the UNCITRAL Arbitration absent prompt payment of the Supplementary Deposit. Additionally, the terms and conditions of the Litigation Loan are fair and reasonable. The Trustee submits that, for the reasons described above, the Litigation Loan constitutes a prudent and proper exercise of the Trustee's business judgment, and should be approved pursuant to section 363(b) of the Bankruptcy Code.

31.     Based on the above, the Trustee should be granted authority to enter into the Litigation Loan, pursuant to section 363(b) of the Bankruptcy Code.

## NOTICE

32.     Notice of this Motion has been given in accordance with this Court's Order Granting Chapter 7 Trustee's Motion to Limit Notice and to Establish Case Management Procedures, entered on September 12, 2013 [Docket No. 342].

## NO PRIOR MOTION

33.     No previous request for the relief sought herein has been made by the Trustee to

this or any other Court.

## CONCLUSION

34.     The Trustee respectfully requests that the Court (i) enter an order pursuant to Bankruptcy Code section 363(b), substantially in the form annexed hereto as **Exhibit "A"**, authorizing the Trustee, on behalf of the Debtor's estate, to make the Litigation Loan to MAG; and (ii) grant such other and further relief as to this Court appears just and proper.

Dated: New York, New York
       November 10, 2015

                              TARTER KRINSKY & DROGIN LLP
                              Attorneys for Alex Spizz, Chapter 7 Trustee

                     By: s/ Jill Makower
                         Alex Spizz, Esq.
                         Arthur Goldstein, Esq.
                         Jill Makower, Esq.
                         1350 Broadway, 11th Floor
                         New York, New York 10018
                         Phone: (212) 216-8000
                         Fax: (212) 216-8001
                         aspizz@tarterkrinsky.com
                         agoldstein@tarterkrinsky.com
                         jmakower@tarterkrinsky.com

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:                                                                    Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                                        Case No. 12-13689 (SMB)

                              Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING DEBTOR'S ESTATE TO MAKE LITIGATION LOAN TO MERHAV AMPAL GROUP LTD. PURSUANT TO 11 U.S.C. §363(b)

Upon the motion dated November 10, 2015 (the "Motion") filed by Alex Spizz as the Chapter 7 trustee (the "Trustee") of Ampal-American Israel Corporation ("Debtor"), for an order pursuant to section 363(b) of title 11, United States Code (the "Bankruptcy Code"), authorizing the Trustee, on behalf of the Debtor's estate, to extend the Litigation Loan[1] to Debtor's non-debtor indirect subsidiary Merhav Ampal Group Ltd. ("MAG"); and the Motion having been heard on November 24, 2015; and upon the record of the proceedings; and sufficient cause having been shown therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:**

1. The Motion is hereby granted as set forth herein.

2. The Trustee is hereby authorized, on behalf of the Debtor's estate, to make the Litigation Loan to MAG and to execute any and all documents and instruments in connection therewith.

3. MAG shall not use the Litigation Loan for any purpose except to pay $130,000 USD toward the Supplementary Deposit.

---

[1] Capitalized terms not defined herein shall have the meanings given in the Motion.

{Client/008427/BANK912/01021411.DOC;1 }

2

4.  The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of the Litigation Loan.

Dated: New York, New York
_____, 2015

_____
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

{Client/008427/BANK912/01021411.DOC;1 }    2