TARTER KRINSKY & DROGIN LLP
Counsel to the Chapter 7 Trustee
1350 Broadway, 11th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

AMPAL-AMERICAN ISRAEL CORPORATION,

          Debtor.
----------------------------------------------------------------X

Chapter 7

Case No. 12-13689 (SMB)

**TRUSTEE STATUS REPORT**

   This status report is being filed with the Court to advise the creditors, equity holders and other interested parties of Ampal-American Israel Corporation ("Ampal") of a significant event which has recently occurred in this Chapter 7 Bankruptcy Case.

   1. As of the Petition Date, and currently, the Debtor holds a 12.5 % interest in East Mediterranean Gas Company, S.A.E., an Egyptian joint stock company ("EMG"). The Debtor holds 8.21% of EMG through its indirect subsidiary MAG and 4.29% of EMG through its 50% ownership interest in Merhav Ampal Energy Holdings, LP ("MAEH"), which holds an 8.58% interest in EMG. EMG, which was organized in 2000 in accordance with the Egyptian Special Free Zone System, was granted the right to purchase natural gas from the Egyptian General Petroleum Company and Egyptian Natural Gas Holding Company ("EGPC/EGAS") to transport and sell to Israel as well as other countries. The parties signed a Gas Purchase and Supply Agreement ("GSPA") in 2005, with guarantees and assurances from the Government of Egypt. EMG linked the Israeli energy market with the Egyptian National Gas Grid via a subsea East Mediterranean pipeline. Initial commercial

gas delivery occurred in June of 2008. EMG is the developer, owner and operator of the pipeline and its associated facilities on-shore both at the point of departure near El-Arish, Egypt and the point of entry in Ashkelon, Israel.

2.  Following the political and civil unrest in Egypt in 2011 and 2012, which (among other things) disrupted gas deliveries to EMG, in April 2012, EGPC/EGAS notified EMG of its termination of the GSPA claiming alleged breaches by EMG. EMG maintains that it did not breach the GSPA and that instead EGPC/EGAS repudiated the GSPA. As a result, three arbitration proceedings were commenced by EMG and various EMG shareholders (including the Debtor, with respect to one of the Three Arbitrations) against EGPC/EGAS or Egypt which are currently pending and which relate to the disruption of gas flow and the purported termination of the GSPA.[1] These arbitration proceedings are the following:

(a)  EMG v. EGPC, EGAS and IEC (the **"ICC Arbitration"**): EMG brought arbitration proceedings against EGPC/EGAS and IEC on October 6, 2011. EMG invoked the International Chamber of Commerce ("ICC") arbitration clauses in the GSPA and a Tripartite agreement between EGPC/EGAS, EMG, and IEC (the "Tripartite Agreement"), which serves to reinforce EGPC/EGAS' obligations towards EMG. In this ICC Arbitration proceeding, EMG sought compensation and indemnification from EGPC/EGAS in the amount of approximately $1.6 Billion as a result of EGPC and EGAS's repudiation above agreement.

(b)  Ampal-American Israel Corporation, EGI-Fund (08-10) Investors LLC, EGI-Series Investments LLC, BSS-EMG Investors LLC and David Fischer v. Egypt (the **"ICSID Arbitration"**): David Fischer, a shareholder in EMG and a German national, enjoys protection under the German-Egypt Bilateral Investment Treaty ("BIT"), and the investments of

---

[1] In addition to the Three Arbitrations discussed above, EMG commenced an arbitration against the Israel Electric Corporation ("IEC") to seek declaratory relief from EMG's obligations to deliver gas to IEC, and EGPC/EGAS also started an arbitration for breach of the GSPA against EMG in Egypt.

the other named claimants are protected by the U.S.–Egypt Bilateral Treaty as U.S. nationals. On May 2, 2012, the claimants submitted their Request for Arbitration against Egypt to the World Bank's International Centre for Settlement of Investment Disputes ("**ICSID**") pursuant to the German-Egypt BIT and the U.S.-Egypt BIT, both of which provide for the option of arbitration under the ICSID Convention. On March 1, 2013, the claimants filed their detailed Statement of Claim alleging breaches of the German-Egypt and U.S.-Egypt BITs parallel to those alleged in the **UNCITRAL** arbitration described below. The German and U.S. claimants seek compensation in the amount of $800,500,000 (exclusive of pre- and post-award interest). The proceedings have closed and the parties are awaiting a ruling from the panel.

(c)  On or about May 2, 2012, Yosef Maiman ("Maiman"), Merhav (MNF) Ltd., MAG and MAEH (collectively, the "Claimants") commenced an arbitration proceeding with the U.N. Commission on International Trade Law ("**UNCITRAL**") against Egypt under the Poland–Egypt BIT, on the basis that Maiman is a Polish national who controls the claimant companies. Claimants seek compensation from Egypt in the **UNCITRAL** Arbitration for breaches of the Polish-Egypt BIT arising from Egypt's treatment of their investments, in the total amount of $996 Million USD (exclusive of pre- and post-award interest). MAG has asserted claims of approximately $372.5 Million USD, and MAEH (of which MAG is the 50% equity owner) has asserted claims of approximately $384.4 Million USD. Based on the Debtor's indirect ownership of 100% of MAG and 50% of MAEH, the Debtor has indirect claims of approximately $564.7 Million USD in the **UNCITRAL** Arbitration. The proceedings have closed and the parties are awaiting a ruling from the panel.

3.  On December 4, 2015, the **ICC** Arbitration tribunal issued an award in favor of EMG against EGPC and EGAS in the amount of approximately $324 Million including

prejudgment interest.[2]  EGPC and EGAS were also ordered to pay a substantial portion of EMG's legal fees and arbitration costs.  The award vindicated EMG's recourse to ICC Arbitration in Geneva over EGPC and EGAS and found that EGPC and EGAS had repudiated both the general sales agreement with EMG and a Tripartite Agreement between EMG, EGPC / EGAS, and IEC.  EGPC and EGAS have vowed to appeal the ICC award in the courts of Switzerland, which is the seat of the arbitration and thus has jurisdiction over the proceedings to set aside the award.   It is impossible at this time to determine whether there will be any actual monetary benefit to the Debtor from the **ICC** award if and when it is collected, due to substantial obligations that EMG currently has as a result of EGPC and EGAS' repudiation of the agreements with EMG and IEC, as well as EGPC/EGAS's likely refusal to pay voluntarily. Notwithstanding, this award represents a significant development in the Debtor's Chapter 7 case.  The award, while substantial represents only a small portion of the claims of the Debtor and its subsidiaries in the other pending arbitrations.  If the decision of the **ICC** tribunal, which held that EGPC/EGAS repudiated its supply obligations to EMG and rejected EGPC/EGAS's defenses, is followed by the other arbitration tribunals, it may result in significant recoveries to the Debtor and the other Claimants.

Dated: New York, New York
       December 11, 2015

                                          By:    s/ Alex Spizz
                                              Alex Spizz, Esq.
                                              Chapter 7 Trustee of
                                              Ampal-American Israel Corporation

---

[2] A substantial portion of the EMG claim was not ruled upon by the ICC panel due to lack of jurisdiction and will instead be decided by the Cairo Regional Centre for International Commercial Arbitration ("CRCICA").

{Client/008427/BANK912/01037057.DOCX;1 }            4