TARTER KRINSKY & DROGIN LLP
Counsel to the Chapter 7 Trustee
1350 Broadway, 11th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

AMPAL-AMERICAN ISRAEL CORPORATION,

                      Debtor.
-----------------------------------------------------------------X

Chapter 7

Case No. 12-13689 (SMB)

## TRUSTEE'S SECOND STATUS REPORT

This Second Status Report is being filed at the request of the United States Trustee to advise creditors of Ampal-American Israel Corporation ("Ampal") the current status of the Chapter 7 Bankruptcy Case.

1.     In the First Status Report I informed creditors of the status of the three arbitration proceedings that the Debtor is involved in, including the recent ICC arbitration award in the amount of $324,000,000 in favor of East Mediterranean Gas Company, S.A.E. ("EMG"), an entity in which the Debtor holds a twelve and a half (12.5%) percent interest in, against the Egyptian General Petroleum Company and the Egyptian Natural Gas Holding Company ("EGPC/EGAS"). As indicated in the First Status Report it is impossible to determine at this time whether there will be any actual monetary benefit to the Debtor from the ICC award, if and when it is collected due to substantial obligations that EMG currently has as a result of EGPC/EGAS' repudiation of various agreements with EMG, as well as EGPC/EGAS' likely refusal to pay the award voluntarily. The decision of the ICC Tribunal was extremely favorable to EMG in that it accepted EMG's claims in

the arbitration and rejected EGPC/EGAS' defenses. It is hoped that this award will be followed by the World Bank's International Center for Settlement of Investment Disputes ("ICSID") Tribunal, as well as the U.N. Commission on International Trade Law ("UNCITRAL") Tribunal, both of which are expected to issue awards within the next six (6) months.

2. I intend to file an additional status report when an award is issued in any of the pending arbitration proceedings.

### BAY HEART LTD.

3. Bay Heart is a shopping mall in Haifa Israel which the Debtor's wholly owned subsidiary, Ampal Industries, Inc., ("AI") owns a thirty seven (37%) percent interest. The Debtor's interest in Bay Heart represents a significant asset of the Debtor's estate, and I have spent a good deal of time since my election as Trustee in attempting to sell the thirty seven (37%) percent interest at the highest and best price. I am pleased to report that we recently entered into a contract of sale ("Sale Contract") whereby AI is selling its thirty seven (37%) percent interest in Bay Heart to four (4) subsidiaries of the Menorah Insurance Company Ltd. The sale price for AI's minority interest was based upon a value for the mall of 330,000,000 NIS.[1] The 330,000,000 NIS valuation of the mall represented an 18,500,000 NIS increase over the mall's appraised value.

4. Not only were we successful selling AI's interest in Bay Heart, for an amount greater than the appraised value, the shares were sold for full value without the customary discount when selling a minority interest. The Sale Contract and all related documents have been signed, and the parties are now awaiting approval from the Israeli Anti-Trust Authorities in order to close the transaction. Given the nature of the transaction and the purchaser, the parties expect to obtain approval and close the transaction by the end of February 2016. After the deductions and reserves provided under the Sale Contract, the payment of taxes and other obligations in Israel, as well as a

---

[1] The current conversion rate is 3.9706 shekels to the dollar.

reserve for ongoing Israeli expenses, it is anticipated that approximately $8,200,000 will be up streamed to the Debtor's estate.

5.   Upon receipt of the Debtor's portion of the sale proceeds, together with the $322,622 cash that the Trustee currently has on deposit, the Trustee will have available approximately $8,500,000. From that amount, the Trustee is obligated to pay approximately $1,750,000 in repayment of the $1,500,000 Chapter 7 loan incurred in order to fund litigation against the Debtor's former officers and directors (ECF No.429).

6.   The current interim fee applications of the Trustee's professionals total $1,449,483.00.[2] Assuming the fees are approved by the Court with a twenty (20%) percent holdback, the Trustee anticipates paying $1,159,586 to the Chapter 7 professionals. In addition, the professionals have requested $45,688 in reimbursement of expenses, which will also be paid if approved by the Court. This will leave the Debtor's estate with approximately $5,500,000. I have determined in my business judgment that the Estate requires a reserve of no less than $5,000,000 for ongoing Chapter 7 expenses. These expenses include (i) enforcement and other proceedings in connection with the pending arbitrations (ii) enforcement proceedings and appeals with respect to the $28,000,000 judgment obtained against the Debtor's former CEO, Yosef Maiman (iii) continuing litigation against the Debtor's former CFO, Irit Eluz (iv) prosecuting pending preference actions (v) review and objection to claims (vi) payment of Chapter 7 professionals including holdbacks and (vii) and all other administration expenses necessarily incurred in carrying out the duties of a Chapter 7 Trustee under the Bankruptcy Code.

---

[2] A hearing is scheduled for the Court to consider the fee applications on February 2, 2016.

7. The Trustee intends to use the balance of the funds, after the above payments and reserve, to make a pro rata interim distribution to Chapter 11 administration creditors. There are $5,461,000 of Chapter 11 administrative claims filed in this case, of which approximately eighty eight (88%) percent represent claims for fees and expenses of the Chapter 11 professionals. It is my intention to schedule hearings on the Chapter 11 professionals' claims as well as file objections to any other Chapter 7 administrative claims which I determine to be improper within the next 60 days in order to determine the amount of allowed Chapter 7 administrative claims and make a pro rata distribution.

Dated: New York, New York
        January 29, 2016

                                          By:    s/ Alex Spizz
                                                 Alex Spizz, Esq.
                                                 Chapter 7 Trustee of
                                                 Ampal-American Israel Corporation