Hearing Date: May 19, 2020
Hearing Time: 10:00 a.m.

**TARTER KRINSKY & DROGIN LLP**
Counsel to Alex Spizz, Chapter 7 Trustee
 1350 Broadway, 10th Floor
New York, New York 10018
(212) 216-8000
Alex Spizz, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

———————————————————————x

In re:                                                    Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,          Case No. 12-13689 (SMB)

                            Debtor.

———————————————————————x

### CHAPTER 7 TRUSTEE'S OBJECTION TO MERHAV (M.N.F.) LTD.'S MOTION FOR AN ORDER CLARIFYING SETTLEMENT AGREEMENT AND MUTUAL RELEASE

Alex Spizz, the Chapter 7 trustee (the "**Trustee**") of Ampal-American Israel Corporation

("**Ampal**" or "**Debtor**") in the above-captioned bankruptcy case, by and through his undersigned

counsel, as and for an objection (the "**Objection**") to the Motion of Merhav (M.N.F.) Ltd.

("**MNF**") for an Order Clarifying Settlement Agreement and Mutual Release (the "**Motion**),

respectfully states as follows:

1.     There does not appear to be a material factual dispute with respect to the Motion.

The Trustee therefore objects to the Motion as a matter of law.

2.     Procedurally, the relief sought in the Motion should have properly been brought

by way of an adversary proceeding pursuant to Rule 7001(9) of the Federal Rules of Bankruptcy

Procedure (FRBP).  In the interest of efficiency and judicial economy as well as to reduce

expenses of both sides, the Trustee would consent, if the Court deems it appropriate, to convert

the Motion to an adversary proceeding and to treat this Objection as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure as made applicable by FRBP 7012.  (See Clinton Nurseries Inc., et al., v. William Harrington, 608 B.R. 96, 106 (Bankr. D. Conn. 2019)).

## UNDISPUTED FACTS

3.      On August 29, 2012, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

4.      On April 8, 2013, the Court appointed a Chapter 11 Trustee.

5.      Upon motion of the Chapter 11 Trustee the case was converted to a case under Chapter 7 of the Bankruptcy Code.

6.      On May 3, 2013, Alex Spizz was elected Chapter 7 Trustee.

7.      The largest asset of the Debtor was its indirect ownership interest through Merhav Ampal Group, Ltd. ("**MAG**") in East Mediterranean Gas Company, S.A.E. ("**EMG**").

8.      EMG at the time of the filing was a non-operating entity involved in several arbitration proceedings against the Egyptian government and its instrumentalities (the "**Arbitrations**").

9.      Since EMG had no income its shareholders, through a series of loan agreements and amendments ("**Loan Agreement**") from 2013-2019, loaned funds to EMG based upon their proportionate equity interests to meet its expenses during the Arbitrations.

10.     On or about September 26, 2018, the EMG shareholders each entered into separate Stock Purchase Agreements ("**SPAs**") whereby they sold their respective stock interest to EMED Pipeline, B.V. ("**EMED**") which resulted in the settlement of the Arbitrations.

11.     Each EMG shareholder negotiated its own SPA with EMED which was not shared with the other shareholders.

12.     All shareholders except for MNF advanced the agreed amounts required by the Loan Agreement.

13.     Since EMED would not agree to repay the shareholders loans, the shareholders agreed that on or about the closing of the SPAs that MNF would make payments to the other shareholders to equalize the loss cause by the disproportionate loan amounts.  This is referred to by MNF as the Wash-Up Payments.

14.     On November 5, 2019, the SPAs closed and MAG along with the other shareholders were paid for their respective stock interests in EMG by EMED.  MNF also made the Wash-Up Payments to the other shareholders of which MAG received $43,873.

15.     Following the closing of the SPAs, the Debtor, MAG, Ampal (Israel), Ltd., MNF and Yosef A. Maiman entered into a Settlement Agreement and Mutual Release ("**Settlement Agreement**") which was approved by the Court on December 17, 2019 (Adv. Pro. No. 15-01122 SMB – ECF Doc. No. 43).  Attached as **Exhibit "A"** is a copy of the Settlement Agreement.

16.     The Settlement Agreement referred to various legal proceedings and claims the parties had against each other as well as the SPAs.

17.     The intent was to settle all outstanding legal proceedings and resolve all claims that any party may have against another both known and unknown.  In order to accomplish this the mutual releases are as broad as possible. The MNF release is contained in ¶4 b. of the Settlement Agreement which states as follows:

> "4 b.   For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Maiman and Merhav MNF, on behalf of themselves and their respective subsidiaries, affiliates, and assigns including Maiman family members and including officers of the above companies ("Maiman Releasors"), hereby release and forever discharge Ampal, the Ampal Parties and the Trustee in his individual and representative capacities, and each of their current and former officers, directors, subsidiaries, affiliates,

managers, and their respective representatives, attorneys, agents, beneficiaries, subsidiaries, affiliates, and assigns and the Trustee's successors-in-interest ("Ampal Released Parties"), from all actions, causes of action, obligations and duties, claims, third party claims, proofs of claim, counterclaims, cross-claims, rights of set-off, indemnification, contribution or recoupment, claims or defenses of abandonment, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty, or equity, whether known or unknown, asserted or unasserted, which the Maiman Releasors ever had or now or may have against the Ampal Released Parties by reason of any act, omission, matter, cause or thing whatsoever from the beginning of the world to the date of this release; for the avoidance of doubt, any and all indemnification claims, contribution claims or other claims, which the Maiman Releasors ever had, have now or may have in the future against any and all of the Ampal Released Parties by reason of any act, omission, matter, cause or thing whatsoever from the beginning of the world to the date of this release, relating to any past, present or future legal action initiated by any third party, are also hereby released and forever discharged; *provided* that nothing in this Agreement shall release or affect in any way any claims, rights, or obligations any Party has under this Agreement."

18.     MNF alleges that it received a demand from EMED for payment of its loan deficit and was *required* to pay EMED on January 7, 2020. (Motion ¶9)

19.     The only reason that MNF would be required to pay the loan deficit to EMED would be pursuant to the terms of the MNF SPA.

20.     After making payment to EMED, MNF came to the other shareholders seeking a repayment or in effect a recoupment of the Wash-Up Payments.

21.     While admittedly the Trustee was unaware of any obligation on the part of MNF to pay EMED for the loan deficit, he felt that the broad language of the mutual release precluded payment to MNF of the Wash-Up Payment. Although the Trustee was unaware of any potential obligation by MNF to pay EMED the loan deficit MNF by virtue of its SPA should have been

aware of any obligation. The Trustee advised MNF and its counsel that absence an order of this Court determining that the repayment of the Wash-Up Payments was not covered by the mutual release contained in the Settlement Agreement, he would decline to authorize the requested payment.

## **LEGAL ARGUMENT**

22.    A release is a contract, and its construction is governed by contract law. *Miller v. Brunner*, 164 A.D.3d 1228 (2d Dept. 2018) (quoting *Warmhold v. Zagarino,* 144 A.D.3d 672, 673 (2d Dept. 2016)). A release that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms. *Inter–Reco, Inc. v. Lake Park 175 Froehlich Farm, LLC,* 106 A.D.3d 955, 955 (2d Dept. 2013) (quoting *Alvarez v. Amicucci,* 82 A.D.3d at 688 (2d Dept. 2011)). Its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was given. *Cahill v. Regan*, 5 N.Y.2d at 299 (1959).

23.    A party may give a release so broad in scope that it discharges all existing claims, both known and unknown, provided that such a result was the intention of the parties and that the parties did not act under mistake, fraud, or duress. Accordingly, a valid general release may encompass unknown claims if the parties so intend and the agreement is fairly and knowingly made. *Rivera v. Wyckoff Hgts. Med. Ctr.,* 113 A.D.3d 667, 670–671 (2d Dept. 2014) (quoting *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.,* 17 N.Y.3d 269, 276 (2011)).

24.    A valid general release will apply not only to known claims, but also unknown claims between the parties that may have existed prior to the release. *See Hoffmann v. Horn*, 157 A.D.3d 871 (2d Dept. 2018) (citing *Kulkarni v. Arredondo & Co., LLC*, 151 A.D.3d 705 (2d

Dept. 2017) [wherein it was held that the general release canceling customer's contract with storage facility clearly and unambiguously precluded her later action against the facility for violation of General Business Law, based on failure to return her security deposit because the release covered "all manner of action and actions, cause and causes of action, suits, [and] sums of money whatsoever in law or in equity, known and unknown" that customer "ever had, now has or may have.]); *see also In re Mercer*, 141 A.D.3d 594 (2d Dept. 2016) (held that release providing for the mutual release of obligations 'including but not limited to any claims and causes of action…that [the parties] have asserted against each other or claims they could have asserted in the [lawsuits in connection with probate of a will] to date…' barred all of the sons' claims that could have been asserted in probate proceeding regardless of whether the sons or their attorneys had knowledge of those claims at the time they executed the settlement).

25.    In *Rivera v. Wyckoff Hgts. Med. Ctr.*, the Appellate Division, Second Department found that the broad release of all claims the hospital gave to staffing provider, as consideration in return for provider's discontinuance of a payment action against the hospital, unambiguously created a general release barring hospital's contribution and indemnification claims against provider and staff physicians relating to a patient's medical malpractice action. *Rivera v. Wyckoff Hgts. Med. Ctr.*, 113 A.D.3d 667. Although the release predated both commencement of the malpractice action and interposition of hospital's third-party claims, there was no evidence that the release was not fairly and knowingly made or that the parties intended it to cover a narrower range of claims than its plain language suggested. from or relating to the [agreement] entered into between [them]…" *Id*. at 671. This language seems broader than the language in the Ampal settlement agreement.

26.    In *Miller v. Brunner*, the Second Department found that the terms of the release

clearly and unambiguously barred plaintiff's claim for breach of contract since the parties executed the release after they entered into the contract and the release broadly covered all claims by plaintiff against defendant predating release. *Miller v. Brunner*, 164 A.D.3d 1228.  The *Miller* case involved an agreement containing the following language releasing defendants from, "all actions, causes of action, suits, debts, dues, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands, in law, admiralty or equity" which the plaintiffs "ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever related, from the beginning of the world to the day of the date of this Release." *Id*. at 1230. The Court found that this language broadly covered all claims by the plaintiffs against the defendants predating the release.

27.    The SPAs and the Wash-up Payment were transactions made prior to the settlement agreement. In fact, MNF's SPA was the basis for its requirement to pay the loan deficit to EMED. Thus, any claims, whether known or not, relating to those payments were included in the release. Additionally, the release specifically included "third party claims" and "recoupment". The obligation if any to pay EMED is a third-party claim based up a contract that existed prior to mutual release.

28.    The Wash-up Payment was released regardless of whether it was in existence or not at the time of the agreement because of the clear and unambiguous language in 4b that releases all claims the releasors "may have" against the released parties and because of the language in paragraph 10 under the Whereas clause states that the parties "wish to resolve *all* (*emphasis added*) disputes between and among them, including *but not limited to* (*emphasis added*) all disputes relating to *MAG v. Merhav/Maiman, the Judgment*, *Spizz v. Merhav/Maiman*, and the Maiman Claims."

29.    MNF cites to *Chiappone v. N. Shore Univ. Hosp.*, 83 N.Y.S.3d 113, 115 (2d Dept. 2018) and *Mazzurco v. PII Sam, LLC*, 63 N.Y.S.3d 59, 60 (2d Dept. 2017) for the proposition that the broad general release may not be read to cover matters which the parties did not intend to cover.

30.    In *Chiappone* the plaintiff on July 219, 2010 commenced a malpractice action against the hospital and doctor based upon a procedure that occurred in October 2009. On July 5, 2013, the plaintiff was again admitted to the hospital and suffered serve injuries on July 8, 2013. On June 27, 2014 parties settled the malpractice action and the plaintiff gave a broad release. On October 11, 2014, the plaintiff died, and his wife commenced another malpractice action based upon the second admission. The hospital claimed the second action was barred by the broad general release. The Appellate Division, Second Department determined as a matter of law that the release was only intended to settle the first malpractice action and found a hospital failed to establish that the broad release language in a settlement agreement extinguished claims that were not yet in dispute at the time the release was executed. Here the parties made it clear that they "wished to resolve all disputes between and among them….." including third party claims and recoupment. Unlike *Chiappone* the MNF release was not meant to settle one specific existing lawsuit.

31.    In *Mazzurco*, the Appellate Division, Second Department affirmed the lower court's decision to deny the defendants-mortgage lender's motion to dismiss. By way of background, the plaintiff in *Mazzurco* commenced the action to recover damages for breach of contract and unjust enrichment based upon his alleged overpayment of money to the defendants on a mortgage loan secured against his property located in Elmhurst. The defendants, relying on a release executed by the plaintiff in a foreclosure action for a different property, moved to

dismiss the amended complaint. MNF is correct that the Court looked to whether the release and the parties intended to cover the claim. And per the underlying papers, the release language in *Mazzurco* read as follows, "The defendant/borrower [Mazzurco], as of the date of this Agreement, acknowledges that he has no claim, whether known or unknown, against the Plaintiff, PII SAM, LLC and/or its attorneys, Deutsch & Schneider LLP. That defendant/borrower agrees to release and discharge PII SAM, LLC and its agent's, employees, attorneys from any and all claims, demands, liabilities, damages, costs attorneys' fees." The Court found that the release was ambiguous regarding whether the parties intended that it cover the claims alleged in the other foreclosure action and therefor the release did not conclusively dispose of the plaintiff's claims.

32.      *Mazzurco* is clearly distinguishable from this matter because in *Mazzurco* it appears the release and the subsequent action concerned two completely different and unrelated foreclosure actions. In this case the parties made their intension clear that they were intending to release all claims against each other whether related to existing proceedings or not.

33.      The release in question was negotiated by experienced counsel over a period of several weeks. It is hard to imagine a release that could have been broader and more comprehensive than the one before this court.

## NOTICE

34.      The Trustee is serving a copy of this Objection by mail upon: (i) United States Trustee; (ii) the Debtor; (iii) all parties who served and filed a notice of appearance and requested service of documents; and shall be given in accordance with the Order Limiting Notice entered in this case on September 12, 2013 [Docket No. 342].  This Objection is also being filed electronically with this Court.

## CONCLUSION

Based upon the foregoing, the Trustee respectfully requests that this Court deny the

Motion in all respects, and (ii) grant any further relief as this Court may deem just and proper.


Dated:  New York, New York
          May 11, 2020

                                Respectfully submitted,

                         **TARTER KRINSKY & DROGIN LLP**


                         By:_s/ Alex Spizz_____
                              Alex Spizz, Esq.
                              Jill Makower, Esq.
                              1350 Broadway, 11th Floor
                              New York, New York 10018
                              Telephone: (212) 216-8000
                              aspizz@tarterkrinsky.com
                              jmakower@tarterkrinsky.com

                              *Counsel to the Chapter 7 Trustee*

**EXHIBIT A**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made by and among **ALEX SPIZZ**, as Chapter 7 Trustee (the "Trustee") for *Ampal-American Israel Corporation* ("Ampal"), Case No. 12-13689-SMB (Bankr. S.D.N.Y.) (the "Case"), **MERHAV AMPAL GROUP, LTD.**, f/k/a MERHAV-AMPAL ENERGY, LTD. ("MAG"), an Israeli corporation, **AMPAL (ISRAEL) LTD.**, an Israeli Corporation ("Ampal Israel")(the Trustee, MAG and Ampal Israel collectively, the "Ampal Parties"), **MERHAV (M.N.F.) LIMITED** ("Merhav MNF"), an Israeli corporation, and **YOSEF A. MAIMAN** ("Maiman"), a citizen and resident of Israel (Maiman and Merhav MNF collectively, the "Maiman Parties"). The Ampal Parties and the Maiman Parties are referred to collectively as "the Parties".

**WHEREAS:**

1.      On May 20, 2013, the Trustee was elected Chapter 7 trustee in the Case.  By order entered in the Case by the United States Bankruptcy Court for the Southern District of New York (the "Court"), the Trustee was authorized to exercise the rights of a shareholder with respect to subsidiaries of Ampal as of May 20, 2013.  Ampal is an indirect controlling shareholder of MAG.

2.      In *Merhav Ampal Group, Ltd. v. Merhav (M.N.F.) Limited and Yosef A. Maiman*, Case No. 14-0235-SMB (Bankr. S.D.N.Y.) ("*MAG v. Merhav/Maiman*"), MAG obtained a money judgment against the Maiman Parties, which was entered on September 21, 2015 (the "Judgment").

3.      MAG has initiated proceedings to enforce the Judgment against the Maiman Parties and has sought domestication of the Judgment in other jurisdictions, including in the District Court of Tel Aviv, Israel, the State of Oklahoma, and the State of Florida.

4.      The Trustee filed an adversary proceeding against the Maiman Parties, *Alex Spizz v. Merhav (M.N.F.) Limited and Yosef A. Maiman*, Case No.15-01122-SMB (Bankr. S.D.N.Y.) ("*Spizz v. Merhav/Maiman*").

5.      The Maiman Parties filed proofs of claim in the Case, Claim Numbers 5, 6, 21, and 106 (the "Maiman Claims").

6.      Ampal, MAG, Merhav MNF, Maiman, and East Mediterranean Gas Company, S.A.E. ("EMG"), among others, are parties in international arbitration proceedings described in the Trustee's Sixth Status Report in the Case (Dkt. #787) (the "Arbitrations").

7.      On or about September 26, 2018, Merhav MNF and other shareholders of EMG including MAG (the "Sellers") entered into Stock Purchase Agreements (the "SPAs") with EMED Pipeline B.V. ("EMED") as purchaser. Each SPA provided for the sale to EMED by the applicable Seller of its shares in EMG.

8.      The Court authorized the Trustee to enter into a SPA on behalf of MAG by Order dated November 16, 2018 (Dkt. #822).

9.      The SPA between Merhav MNF and EMED (the "Merhav MNF SPA") provides, inter alia, for payment to MAG of $27 million, which amount will be in full satisfaction of the Judgment, on the closing date of the transaction contemplated in the Merhav MNF SPA (the "Closing").

10.     The Ampal Parties and the Maiman Parties wish to resolve all disputes between and among them, including but not limited to all disputes relating to *MAG v. Merhav/Maiman*, the Judgment, *Spizz v. Merhav/Maiman*, and the Maiman Claims.

11.     In furtherance of the resolution of all disputes, the Trustee has voluntarily stayed certain actions against the Maiman Parties, including certain actions to enforce the Judgment and

pending judicial or other proceedings against the Maiman Parties; and, pending the approval by the Court of this Agreement, the Closing and payment of the purchase price to the Trustee and/or MAG and receipt of the $27 million by the Trustee intends to stay all pending enforcement proceedings and not to commence any new actions or proceedings against the Maiman Parties or Maiman's family members.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, with the intention of being legally bound hereto, agree as follows:

1.      **Bankruptcy Court Approval.** The effectiveness of this Agreement is subject to (i) the occurrence of the Closing, (ii) the entry of an order by the Court approving the Agreement, substantially in the form of order attached to this Agreement (the "Approval Order"), and (iii) the payment of $27,000,000.00 to MAG or the Trustee pursuant to the Merhav MNF SPA. The Agreement will be effective on the date (the "Effective Date") on which all of the following conditions have been met (i) the Closing has occurred, (ii) the Approval Order is entered, and (iii) $27,000,000.00 is paid to MAG or the Trustee pursuant to the Merhav MNF SPA. The Trustee shall use best efforts to obtain the Approval Order within 45 days of the Closing.  The Approval Order must contain, at a minimum, the following holdings: (a) adequate and sufficient notice of the Agreement was given to all  creditors and Parties in interest entitled to notice in the Case; (b) the Order and terms of the Agreement are binding on all such parties, and (c) the Trustee has authority to enter into the Agreement.

2.    **Obligations on the Effective Date of this Agreement.** On the Effective Date of this Agreement, the Trustee and MAG shall:

    a.    discontinue any and all actions to enforce or collect the Judgment against the Maiman Parties, including without limitation, conducting discovery or investigation as to assets,

    b.    not commence any proceedings or process seeking to enforce the Judgment;

    c.    discontinue any and all further proceedings or continuation of actions against Merhav MNF and/or Maiman in *Spizz v. Merhav/Maiman*;

    d.    not commence, or participate or assist in the commencement of, any proceedings or actions against Merhav MNF or Maiman in any court or forum, in any jurisdiction;

    e.    file within a reasonable time or join with Merhav MNF and Maiman in motions with the Court and all other courts or forums as may be necessary to stay any further proceedings against Merhav MNF or Maiman, and to suspend any applicable court orders or deadlines.

3.    **Obligations following the Effective Date**:

    a.    the Trustee,  MAG and/or Ampal Israel shall, within ten (10) days of the Effective Date:

        i.    file a Satisfaction of the Judgment in the appropriate US Court and make all other filings necessary to evince satisfaction and release of the Judgment with the Court and with all other courts or jurisdictions in which the Judgment has been recorded or

domesticated, or in which proceedings to recognize or enforce the Judgment have been commenced, including filing a voluntary consented to motion to dismiss the action filed in the <u>District Court of Tel Aviv,</u> Case Number 5467-07-17; the Maiman Parties, the Maiman Released Parties and anyone on their behalf hereby grant their consent to such motion, to the extent such consent is required;

ii. file a Stipulation of Dismissal with prejudice in *Spizz v. Merhav/Maiman;*

iii. file releases and/or any other filings necessary to release any and all claims or liens against the property of Merhav MNF, Maiman, and members of his immediate family;

b. Ampal Israel shall, within fifteen (15) days of the Effective Date, file a voluntary consented to motion to dismiss the action filed in District Court of Tel Aviv, Case Number 40663007015; the Maiman Parties, the Maiman Released Parties and anyone on their behalf hereby grant their consent to such motion, to the extent such consent is required;

c. the Maiman Parties shall, within fifteen (15) days of the Effective Date obtain a voluntary consented to dismissal of the action filed in Labor Court Tel Aviv, Number 37555-10-17;

d. the Trustee and MAG shall within fifteen (15) days of the closing of the Case:

i. make reasonable efforts to cause to be returned to Merhav MNF and/or Maiman all of the physical computer servers and hard drives delivered

to MAG's computer consultant Force Majeure during discovery, and all copies of data from such servers and hard drives, including providing any necessary instructions and authorizations to Force Majeure and Tic Tac Technologies for the return of all such materials at the Maiman Parties expense. For the avoidance of doubt, providing such instructions to any third party who is in possession or control of such materials (including, but not limited, to Force Majeure and Tic Tac) for the return of such materials will constitute making the required reasonable efforts with respect to materials in the possession or control of such third party, and the Trustee and MAG will not be liable for any refusal or non-compliance from such third party or for any action or omission of such third party. In addition, the Maiman parties obligation for the expenses under this section is limited to the direct expenses of the return, and shall not include any existing or unrelated obligations of the Ampal Parties or any other party;

ii.  make reasonable efforts to destroy all hard copies in their possession and control of confidential financial documents or information provided to them by Merhav MNF and/or Maiman during settlement discussions with MAG in 2016 or in subsequent discovery proceedings.

iii.  certify in writing that reasonable efforts have been made to delete or otherwise destroy all copies in their possession and control of confidential financial documents or information provided by Merhav

MNF and/or Maiman in electronic or digital form, whether in

settlement negotiations or in formal discovery.

e.     Maiman and Merhav MNF shall, within 10 days of the Effective Date, file

with the Court a withdrawal of the Maiman Claims.

4.     **Mutual Release**.  On the Effective Date:

a.     For good and valuable consideration, the receipt and sufficiency of which

are hereby acknowledged, the Trustee, on behalf of Ampal, the Ampal

bankruptcy estate, MAG and Ampal Israel, (the "Ampal Releasors"),

hereby release and forever discharge Maiman, Merhav MNF, and Maiman

family members  (provided that the release of any Maiman family member

shall be subject to the execution of a release by each of the respective

Maiman family members in substantially in the form of Paragraph 4b),

and their respective parents, subsidiaries, predecessors, successors,

affiliates, and assigns, including but not limited to Helit Maiman, Noa

Fanny Maiman, Ohad Maiman, and Yoav Moshe Maiman, (the "Maiman

Released Parties"), from all actions, causes of action, obligations and

duties, claims, third party claims, proofs of claim, counterclaims, cross-

claims, rights of set-off, indemnification, contribution  or recoupment,

claims or defenses of abandonment, suits, debts, dues, sums of money,

accounts, reckonings, bonds, bills, specialties, covenants, contracts,

controversies, agreements, promises, variances, trespasses, damages,

judgments, extents, executions, claims, and demands whatsoever, in law,

admiralty, or equity, whether known or unknown, asserted or unasserted,

which the Ampal Releasors ever had or now or may have against the Maiman Released Parties, by reason of any act, omission, matter, cause or thing whatsoever, from the beginning of the world to the date of this release, *provided* that nothing in this Agreement shall release or affect in any way any claims, rights, or obligations any Party has under this Agreement. For the avoidance of doubt, any and all third-party claims that are derivative or duplicative of claims asserted by the Trustee, or which otherwise could have been raised or asserted by the Trustee, against the Maiman Released Parties are expressly released and discharged pursuant to the immediately preceding sentence; Further, any and all indemnification claims, contribution claims or other claims, which the Ampal Releasors ever had, have now or may have in the future against any and all of the Maiman Released Parties by reason of any act, omission, matter, cause or thing whatsoever from the beginning of the world to the date of this release, relating to any past, present or future legal action initiated by any third party, are also hereby released and forever discharged;

b.    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Maiman and Merhav MNF, on behalf of themselves and their respective subsidiaries, affiliates, and assigns including  Maiman family members and including officers of the above companies ("Maiman Releasors"),  hereby release and forever discharge Ampal,  the Ampal Parties and the Trustee in his individual and

representative capacities, and each of their current and former officers, directors, subsidiaries, affiliates, managers, and their respective representatives, attorneys, agents, beneficiaries, subsidiaries, affiliates, and assigns and the Trustee's successors-in-interest ("Ampal Released Parties"), from all actions, causes of action, obligations and duties, claims, third party claims, proofs of claim, counterclaims, cross-claims, rights of set-off, indemnification, contribution or recoupment, claims or defenses of abandonment, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty, or equity, whether known or unknown, asserted or unasserted, which the Maiman Releasors ever had or now or may have against the Ampal Released Parties by reason of any act, omission, matter, cause or thing whatsoever from the beginning of the world to the date of this release; for the avoidance of doubt, any and all indemnification claims, contribution claims or other claims, which the Maiman Releasors ever had, have now or may have in the future against any and all of the Ampal Released Parties by reason of any act, omission, matter, cause or thing whatsoever from the beginning of the world to the date of this release, relating to any past, present or future legal action initiated by any third party, are also hereby released and forever discharged; *provided* that nothing in this Agreement shall release

or affect in any way any claims, rights, or obligations any Party has under this Agreement.

5.    **Actions Required for Closing**. Each of the Parties agree to take all actions, including executing any documents, that are required on its part by the SPA to which it is party, to cause the Closing to occur.

6.    **Proofs of Claim.**  On the Effective Date, any and all proofs of claims filed by the Maiman Released Parties (including the Maiman Claims) in the Case shall be deemed null and void and expunged for purposes of distribution by Trustee upon his filing of an interim or final distribution to creditors in the Case.

7.    **Governing Law.**  This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to its conflict of laws provisions except insofar as Israeli law and procedure is applicable to dismissal, to pending cases in Israeli courts, as provided in this Agreement, The Parties further agree that the Court shall retain jurisdiction to enforce this Agreement in accordance with terms thereof.

8.    **Binding Nature.**  This Agreement shall inure to the benefit of, and be binding upon, the Parties' respective predecessors, successors, and assigns, and upon the creditors and parties in interest of Ampal and the Ampal chapter 7 bankruptcy estate.

9.    **Entire Agreement**. This Agreement supersedes all prior discussions and agreements between the Parties and contains the sole and entire agreement among the parties with respect to the subject matter of this Agreement. This Agreement may not be altered or modified except in writing signed by all the Parties.

10.    **Full Authority.**  The Parties represent and warrant that they have full, complete

and absolute authority to enter into this Agreement, and to assert, to compromise, and to dispose

of the claims, promises, and matters referenced in this Agreement.

11.    **Counterparts.** This Agreement may be executed in any number of counterparts,

including by electronic signature, each of which will be deemed an original, but all of which

together will constitute the original Agreement.

12.    **Severability; Mutual Drafting.**  Whenever possible, each provision of this

Agreement shall be interpreted in such manner as to be effective and valid under applicable law.

If any provision of this Agreement should be held invalid or unenforceable under applicable law,

such provision shall be ineffective to the extent of such prohibition or invalidity but shall not

invalidate the remainder of such provision or the remaining provisions of this Agreement.  This

Agreement shall be deemed to have been mutually prepared by the Parties and shall not be

construed against any Party solely by reason of authorship.

13.    **Opportunity to Consult Counsel.**  The Parties confirm that they have been given

the opportunity to engage and consult independent counsel regarding the terms and effect of this

Agreement.

14.    **Survival.**  All representations, warranties, agreements, covenants, and obligations

set forth in this Agreement shall be deemed continuing and shall survive the full execution of this

Agreement.

Signed in counterpart as of this ~~17~~ day of ~~November~~, December 2019.

_____
Alex Spizz
TARTER KRINSKY & DROGIN LLP
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000
Fax: (212) 216-8001
aspizz@tarterkrinsky.com

_____
Yosef A. Maiman
Havatzelet ha-Sharon Street 33
Herzliya
Israel
yossi@merhav.com

*Chapter 7 Trustee of Ampal-American Israel Corporation*

MERHAV AMPAL GROUP, LTD.

By: _____
    Shlomi Kelsi
    ITS: _____

MERHAV (M.N.F.) LIMITED

By: _____
    Yosef A. Maiman
    ITS: _____

Ampal (Israel) LTD.

By: _____
    Shlomi Kelsi
ITS: _____

Signed in counterpart as of this __21st__ day of November, 2019.

_____
Alex Spizz
TARTER KRINSKY & DROGIN LLP
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000
Fax: (212) 216-8001
aspizz@tarterkrinsky.com

_Chapter 7 Trustee of Ampal-American Israel Corporation_

MERHAV AMPAL GROUP, LTD.

By: _____
Shlomi Kelsi
ITS: _____


Ampal (Israel) LTD.

By: _____
Shlomi Kelsi
ITS: _____


_____
Yosef A. Maiman
Havatzelet ha-Sharon Street 33
Herzliya
Israel
yossi@merhav.com



MERHAV (M.N.F.) LIMITED

By: _____ **MERHAV Mnf Ltd** _____
Yosef A. Maiman
ITS: _____

Signed in counterpart as of this 21st day of November, 2019.

_____
Alex Spizz
TARTER KRINSKY & DROGIN LLP
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000
Fax: (212) 216-8001
aspizz@tarterkrinsky.com

*Chapter 7 Trustee of Ampal-American Israel Corporation*

_____
Yosef A. Maiman
Havatzelet ha-Sharon Street 33
Herzliya
Israel
yossi@merhav.com

MERHAV AMPAL GROUP, LTD.

By: _____
Shlomi Kelsi
ITS: ___Director___

MERHAV (M.N.F.) LIMITED

By: _____
Yosef A. Maiman
ITS: _____

Ampal (Israel) LTD.

By: _____
Shlomi Kelsi
ITS: ___Director___