TARTER KRINSKY & DROGIN LLP
Counsel to the Chapter 7 Trustee
1350 Broadway, 11th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Alex Spizz, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

AMPAL-AMERICAN ISRAEL CORPORATION,

Chapter 7

Case No. 12-13689 (DSJ)

Debtor.
-----------------------------------------------------------------X

## TRUSTEE REPORT OF AUCTION SALE

TO: THE HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE
FOR THE SOUTHERN DISTRICT OF NEW YORK

Alex Spizz, the Chapter 7 Trustee of Ampal-American Israel Corporation ("Ampal" or "Debtor") respectfully submits this report of the sale of assets.

1. On March 19, 2024 the Trustee filed a motion (the "Motion") pursuant to sections 105(a) and 363(b), (f) and (m) of title 11, United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of New York ("LBR"), and the amended guidelines adopted by General Order M-383, (i) for entry of an order : (a) authorizing the Trustee to enter into that certain stalking horse agreement   (the "Stalking Horse Agreement"), subject to higher and better offers, for  the Trustee's sale (the "Sale") of the Debtor's bankruptcy estate's ("Estate")

interest in Yakhin Matayim Ltd. (the "Yakhin Matayim Shares")[1] and the Estate's interest in Etz Va'Nir Ltd. (the "Etz Va'Nir Shares"),[2] as more particularly described in the Stalking Horse Agreement, (b) approving the proposed bidding procedures (the "Bid Procedures") set forth in the bid process letter (the "Bid Process Letter") annexed hereto (c) approving the form of that certain *Share Purchase Agreement* (the "SPA") annexed hereto which the Trustee proposes to enter into with a competing qualified bidder for the Estate's Yakhin Matayim Shares and Etz Va'Nir Shares (collectively, the "Purchased Shares"), (d) scheduling an auction (the "Auction") of the Purchased Shares (if a qualified competing bid other than the Stalking Horse Bid is timely received) and a hearing to approve the Sale, and (e) approving the form of notice of the Bid Procedures, the Auction and the Sale; and (ii) after completion of the Sale hearing, entry of an order (the "Sale Order") pursuant to Bankruptcy Code sections 105(a) and 363(b), (f) and (m), Bankruptcy Rule 6004 and LBR 6004-1: (a) authorizing and approving the Trustee's Sale of the Purchased Shares either to Yakhin Hakal Ltd. (the "Stalking Horse Purchaser") or to another qualified bidder. [ECF # 1009]

2. The Motion was approved at a hearing on April 18, 2024, and an order approving the Motion was entered into on April 19, 2024 ("Order"). [ECF # 1011]

3. Pursuant to the Order service of a copy of the Order, bidding procedures and Motion were served upon (i) the Office of the United States Trustee; (ii) Debtor's counsel (iii) all creditors of the Debtor; (iv) all parties that are known or reasonably believed to have expressed an interest

---

[1] The Debtor is the record holder of the Yakhin Matayim Shares consisting of 1,650,000 Ordinary Shares A New-Old ILS 0.0001 (50% of the Ordinary Shares A) of Yakhin Matayim Ltd. The Yakhin Matayim Shares are property of the Debtor's Estate.

[2] The Debtor is the record holder of the Etz Va'Nir Shares consisting of 300,000 Ordinary Shares A New-Old ILS 0.0001 (50% of the Ordinary Shares A) of Etz Va'Nir Ltd. The Etz Va'Nir Shares are property of the Debtor's Estate.

in acquiring the Purchased Shares; and all parties that have requested or are to receive notice pursuant to Bankruptcy Rule 2002.

4. Pursuant to the Order an advertisement was place in a selective newspaper in Israel advertising the Sale of Purchased Shares. The advertisement ran once a week for three (3) consecutive weeks from May 10, 2024, through May 24, 2024. A copy of the advertisement which appeared in the newspapers in Hebrew is attached as **Exhibit 1**. A translated copy of the advertisement in English is also attached for the Court's convenience.

5. The auction was scheduled for June 18, 2024.

6. Following the advertisements there were ten (10) expressions of interest by various parties all of which entered into Non-Disclosure Agreements and thereafter allowed access to a virtual data room.

7. Unfortunately, none of the parties who expressed interest decided to qualify as bidder and participate in the auction.

8. Therefore, the Stalking Horse Bidder with a bid of $4,000,000 was declared the highest and best offer.

9. At the scheduled June 27, 2024 Sale hearing the Trustee intends to ask the Court to approve the Sale of the Purchased Shares to Yakhin-Hakal Ltd, the Stalking Horse Bidder.

10. The trustee will request at the Sale hearing that the Court enter the proposed order approving the Sale in the form of **Exhibit 2**.

Dated: New York, New York
June 18, 2024

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Alex Spizz, Chapter 7 Trustee*

By*: /s/ Alex Spizz*
Alex Spizz, Esq.
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
aspizz@tarterkrinsky.com

**EXHIBIT 1**

Legal notices page (Hebrew) — TheMarker classifieds: tenders, asset auctions and public announcements. Contact: lawhtz@haaretz.co.il / 03-5634616/9 / 1-800-800-724.

# **Ampal American Israel Corporation**

## **An invitation to participate in a bidding process for the sale of Yakhin Matayim Ltd. and Etz Va'Nir Ltd. Shares**

Offers are hereby invited for the purchase of Ampal-American Israel Corporation, a company under Chapter 7 proceedings ordered by the United States Bankruptcy Court Southern District of New York ("**Ampal**") holdings in Yakhin Matayim Ltd. (1,650,000 Ordinary Shares A New-Old ILS 0.0001 which constitutes 50% of the Ordinary Shares A) and Etz Va'Nir Ltd. (300,000 Ordinary Shares A New-Old ILS 0.0001 which constitutes 50% of the Ordinary Shares A) (together, the "**Acquired Shares**").

The bidding process (the "**Auction**") has been approved by the applicable Bankruptcy Court on April 19, 2024.

The Acquired Shares shall be sold in their AS-IS condition free of all liens and interests at an auction that will be held on **June 18, 2024**. The auction may be adjourned by the Trustee. Any bidder has sole responsibility to review the Acquired Shares and conduct due diligence at its own expense. A virtual data room has been established for that purpose. It is clarified that the information in this ad is general and does not constitute any representation by Ampal or the Acquired Shares, and Ampal or the Acquired Shares shall not be held liable in any way towards any bidder.

The minimum price for the shares is set as US$ 4.5 million (four and a half million U.S. dollars) and the Auction will be held on in increments of US$ 10,000.

Any bidder that wishes to participate in the Auction shall be required to provide: a deposit in the amount of US$ 450,000, sign a non-disclosure agreement, sign a SPA and be considered as a qualified bidder.

It is made clear that Ampal's trustee has sole discretion to determine who is a qualified bidder and who is the successful bidder.

Israel tender laws and related regulations shall not apply to the Auction, and Ampal's trustee has wide discretion in connection with the Auction procedures. Any actual purchase of the Acquired Shares is subject to the approval of the applicable Bankruptcy Court.

If you wish to:
   A. Receive additional information;
   B. Copies of all filling with the Bankruptcy Court regarding the sale motion;
   C. Access to the virtual data room;
   D. Bid in the Auction.

Please contact Adv. David Azimov at azimovd@herzoglaw.co.il, and further information shall be provided to you.

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------x
In re:                                                              Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION,                                  Case No. 12-13689 (DSJ)

                           Debtor.
------------------------------------------------------------x

# ORDER AUTHORIZING AND APPROVING THE SALE OF THE PURCHASED SHARES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND GRANTING RELATED RELIEF

Upon consideration of the motion [*ECF No. 1009*] (the "Motion")[1] of Alex Spizz as Chapter 7 trustee (the "Trustee") of Ampal-American Israel Corporation, the above-captioned debtor (the "Debtor"), for, among other things, the entry of an order pursuant to sections 105(a) and 363(b), (f) and (m) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") and the Guidelines For The Conduct of Asset Sales, updated June 17, 2013 (the "Sale Guidelines"), (a) authorizing and approving the Trustee's Sale of the Purchased Shares, free and clear of all liens, claims, encumbrances and interests, to the Stalking Horse Purchaser or to another qualified bidder submitting the highest or best offer at the Auction, and (b) granting related relief (the "Sale Relief"); and the Court having entered on April 19, 2024 its *Order Pursuant To Sections 105(a) And 363(b), (f) And (m) Of The Bankruptcy Code And Bankruptcy Rule 6004, (I) Authorizing And Approving Trustee's Entry Into A Stalking Horse Purchase Agreement For Trustee's Sale Of Estate's Interest In Yakhin Matayim Ltd. And Estate's Interest In Etz Va'Nir Ltd., (II) Approving Auction Procedures And Notice Of The Auction Relating Thereto, (III)*

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Motion.

*Scheduling An Auction And Sale Hearing, (IV) Approving Form Of Share Purchase Agreement, And (V) Granting Related Relief* [*ECF No. 1011*] (the "Bid Procedures Order"), which, *inter alia*, authorized the Trustee to enter into the Stalking Horse Agreement subject to higher and better offers, authorized and approved the Bid Procedures and notice of the Sale, approved the form of the SPA, and scheduled the Sale Hearing to consider approval of the Sale Relief; and the Auction hearing having been held on June 27, 2024; and there having been at the Auction no bidders other than the Stalking Horse Purchaser that were deemed qualified bidders; and the Trustee having determined that the highest and otherwise best offer for the Purchased Shares was made by Yakhin-Hakal Ltd, the Stalking Horse Bidder (the "Successful Bidder") in the amount of $4,000,000 (the "Successful Bid"); and the Court having conducted the Sale Hearing on June 27, 2024 to consider the approval of the Sale to the Successful Bidder; and all parties-in-interest having been heard, or having had the opportunity to be heard, regarding the approval of the Motion and the transactions contemplated thereby; and the Court having reviewed and considered the Motion and any objections thereto, and the arguments of counsel and evidence adduced related thereto; and upon the record of the Sale Hearing and the full record of this case; and it appearing that the relief requested in the Motion is in the best interests of the Estate and its creditors; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A. The Court has jurisdiction over this matter and over the property of the Debtor, including the Purchased Shares to be sold, transferred and conveyed, pursuant to 28 U.S.C. §§ 157(a) and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York.

B.  The statutory and other predicates for the relief sought in the Motion and the basis for the approvals and authorizations herein are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 2002 and 6004, Local Rule 6004-1 and the Sale Guidelines.

C.  On August 29, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

D.  By Order dated May 2, 2013 (the "Conversion Date"), the Court converted the Debtor's case to one under Chapter 7 [Docket No. 258].

E.  On May 3, 2013, the Office of the U.S. Trustee appointed Alan Nisselson as interim Chapter 7 trustee [Docket No. 260].

F.  On May 20, 2013 (the "Election Date"), Alex Spizz was elected Chapter 7 Trustee of the Debtor pursuant to section 702 of the Bankruptcy Code and was duly qualified thereafter.

G.  The Sale Relief constitutes a sale of property of the Debtor's Estate outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

H.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

I.  Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

J.  As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Bid Procedures Order, the Auction, the Sale Hearing and the Sale has been provided in accordance with Bankruptcy Code §§ 102, 105 and 363 and Bankruptcy Rules 2002, 6004, 9008 and 9014 and in compliance with the Bid Procedures Order;

(ii) such notice was good and sufficient, and appropriate under the particular circumstances of this case; and (iii) no other or further notice of the Motion, the Auction, the Sale Hearing or the Sale is or shall be required.

K.  As demonstrated by the record of the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Order, the Trustee with his counsel conducted a thorough and adequate search for interested potential purchasers, and afforded such interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Purchased Shares at the Auction.

L.  The sale process has been conducted fairly and openly in a manner reasonably calculated to produce the highest and best offer for the Purchased Shares under the circumstances and in compliance with the Bid Procedures Order.

M.  The Trustee and his professionals have complied in all material respects with the Bid Procedures Order.

N.  The Debtor is the sole lawful record owner of the Purchased Shares, as set forth in the Motion, the SPA and the Stalking Horse Agreement, and upon entry of this Order, the Trustee has the legal power and authority to convey all of the Debtor's right, title and interest in the Purchased Shares.

O.  The Trustee received no qualified bids for the Purchased Shares at the Auction, and it was determined and announced by the Trustee (or his authorized representative) at the conclusion of the Auction that the Successful Bidder submitted the highest and best bid in the amount of $4,000,000 and that such bid was the Successful Bid.

P.  Upon entry of this Order, (i) the Trustee has full power and authority to sell the

Purchased Shares to the Stalking Horse Purchaser pursuant to the Stalking Horse Agreement, and the Sale of the Purchased Shares has been duly and validly authorized by entry of this Order, (ii) the Trustee has all of the power and authority necessary to consummate the Sale contemplated by the Stalking Horse Agreement, and (iii) no consents or approvals, other than those expressly provided for in the Stalking Horse Agreement, are required for the Trustee to consummate the Sale.

Q. The Sale Relief requested in the Motion, including, without limitation, approval of the Sale of the Purchased Shares to Yakhin-Hakal Ltd in accordance with the terms and conditions of the Stalking Horse Agreement and this Order, is in the best interests of the Debtor's Estate, its creditors and all other parties in interest in this Chapter 7 case.

R. The Trustee has exercised sound business judgment in deciding, and has shown good and sufficient justification to enter into the Stalking Horse Agreement and to sell the Purchased Shares to the Successful Bidder pursuant to the terms and conditions of the Stalking Horse Agreement. Entry into the Stalking Horse Agreement and related documents, if applicable, and consummation of the Sale in accordance with the terms and conditions thereof, constitute the Trustee's exercise of sound business judgment and such acts are in the best interests of the Debtor's Estate, in that, without exclusion, (i) the Stalking Horse Agreement was entered into in good faith and from arms'-length bargaining positions as between the Trustee and Yakhin-Hakal, Ltd, based upon the fact that Yakhin-Hakal, Ltd was the highest bidder at the Auction, (ii) the Trustee was free to deal with any other party interested in acquiring the Purchased Shares who submitted the highest bid at the Auction; and (iii) the Trustee has provided for adequate notice and an opportunity to be heard in connection with the Sale in this Chapter 7 case.

S. A fair and reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein as well as the Sale has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee; (ii) Debtor's counsel; (iii) all creditors of the Debtor; (iv) all parties that are known or reasonably believed to have expressed an interest in acquiring the Purchased Shares; and (v) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Auction and Sale Notice Parties</u>").

T.  The Successful Bidder is a third party that is unrelated to the Debtor, and not an "insider" of the Debtor, as that term is defined in Bankruptcy Code § 101, and no common identity of incorporators, directors or officers exists between the Debtor and the Successful Bidder.

U.  The Trustee and the Successful Bidder entered into the Stalking Horse Agreement in good faith, without collusion or fraud, and at arms' length, based upon the fact that the Successful Bidder submitted the highest bid at the Auction. Neither the Trustee nor the Successful Bidder engaged in any conduct that would cause or permit the Stalking Horse Agreement, the Bid Procedures, or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed under Bankruptcy Code § 363(n).

V.  The Successful Bidder is a good faith purchaser within the meaning of Bankruptcy Code § 363(m), and as such is entitled to the protections of Bankruptcy Code § 363(m).

W.  The sale process conducted by the Trustee and his retained advisors was open, fair and reasonable, conducted in good faith and free of collusion, and in compliance with the Bid Procedures. The outcome of the Auction was not the result of collusive or otherwise unlawful conduct on the part of the Successful Bidder or any other third party.

X. The $4,000,0000 offer by the Successful Bidder for the Purchased Shares is the highest and best offer received by the Trustee after a period in which third parties had sufficient opportunity to seek information and participate in the Auction for the Sale of the Purchased Shares. All persons expressing interest had an opportunity to participate at the Auction. The Purchase Price (as defined in the Stalking Horse Agreement) is fair and reasonable, and constitutes reasonably equivalent value and fair consideration for the Purchased Shares under the Bankruptcy Code and other applicable law.

Y. The Trustee may sell the Purchased Shares free and clear of all liens, claims, encumbrances and interests (collectively, "Interests or Claims") because the Purchase Price exceeds the aggregate value of the liens on the Purchased Shares. Section 363(f) of the Bankruptcy Code has been satisfied.

Z. The Sale of the Purchased Shares by the Trustee to the Successful Bidder pursuant to the Stalking Horse Agreement (i) is or will be a legal and valid and effective transfer of the Purchased Shares to the Successful Bidder and (ii) vests or will vest the Successful Bidder with all right, title and interest of the Estate in the Purchased Shares on the closing of the Sale free and clear of all Interests or Claims pursuant to Bankruptcy Code §§ 105, 363(b) and 363(f), including any claims arising under any theory of successor liability, and including any liens on the Purchased Shares.

AA. Any and all objections to Sale Relief have been resolved, overruled or withdrawn.

BB. There is cause to lift the stay contemplated by Bankruptcy Rule 6004(h).

CC. All findings of fact and conclusions of law made or announced by the Court at the Sale Hearing or in the Bid Procedures Order are incorporated herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Sale Relief requested in the Motion is GRANTED in the manner and to the extent set forth below; the Sale Relief and all other transactions contemplated under the Stalking Horse Agreement are hereby approved; and the Trustee is authorized to take the steps necessary to consummate the Sale transaction.

2. The consideration provided by the Successful Bidder for the Purchased Shares under the Stalking Horse Agreement, is fair and reasonable, and shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law. The Sale may not be avoided, or costs or damages imposed on or awarded against any party in interest in this bankruptcy case under section 363(n), or any other provision, of the Bankruptcy Code.

3. Pursuant to Bankruptcy Code §§ 363(b) and 363(f), upon the Closing, the Purchased Shares shall be transferred to the Successful Bidder free and clear of all Interests or Claims.

4. Following the Closing, no holder of any Interests or Claims against the Debtor or in the Purchased Shares shall, and any such holder is hereby enjoined from taking any actions to, interfere with Successful Purchaser's title to or use and enjoyment of the Purchased Shares based on or related to such Interests or Claims.

5. The sale, transfer, assignment and delivery of the Purchased Shares shall not be subject to any Interests or Claims, and all Interests or Claims of any kind or nature whatsoever shall be and hereby are released, terminated and discharged as to the Successful Bidder and the Purchased Shares, and shall attach only to the net proceeds of the Sale in their order of priority. All persons holding Interests or Claims against the Purchased Shares of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped and permanently enjoined from

asserting, prosecuting or otherwise pursuing such Interests or Claims of any kind or nature whatsoever against the Successful Bidder, its property, its successors and assigns, its affiliates or the Purchased Shares, with respect to any Interests or Claims that such person or entity had, has or may have against or in the Debtor, its Estate or the Purchased Shares.

6. The transfer of the Purchased Shares to the Successful Bidder pursuant to the Stalking Horse Agreement does not require any consents other than as specifically provided for in the Stalking Horse Agreement and constitutes a legal, valid and effective transfer of the Purchased Shares, and shall vest the Successful Bidder (and/or the Successful Bidder's affiliates, designee, assignee, and/or successors, with all right, title and interest of the Debtor in and to the Purchased Shares free and clear of all Interests or Claims of any kind or nature whatsoever.

7. On the Closing and pursuant to the terms of the Stalking Horse Agreement, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Shares or a bill of sale transferring good and marketable title in the Purchased Shares to the Successful Bidder (and/or the Successful Bidder's affiliates, designee, assignee, and/or successors).

8. Except as otherwise provided in the Stalking Horse Agreement, on the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Interests or Claims against the Purchased Shares, if any, as may have been recorded or may otherwise exist.

9. Each and every filing agent, registrar, filing officer, title agent, title company, recorder of mortgages, recorder of deeds, registrar of deeds, administrative agency or unit, governmental department or unit, secretary of state, federal, state or local official, and all other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title, is hereby directed to accept any and all documents and instruments necessary and appropriate , including a certified copy of this Order, to consummate the transaction contemplated in the _ Stalking Horse Agreement (including, without limitation, striking all recorded Interests or Claims).

10. The transaction contemplated by the Stalking Horse Agreement, the Bid Procedures and the Bid Procedures Order has been bargained for and undertaken by Successful Bidder and the Trustee at arms' length, without collusion and in good faith within the meaning of Bankruptcy Code § 363(m). The consideration provided by the Successful Bidder for the Purchased Shares under the Stalking Horse Agreement, is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law. The Successful Bidder and the Trustee have not engaged in any conduct that would cause or permit the Stalking Horse Agreement or the Sale to be avoided. The Successful Bidder is a buyer in good faith as the term is used in Bankruptcy Code § 363(m) and upon the granting of this Order by this Court with respect to the Stalking Horse Agreement, the Successful Bidder shall be entitled to the protection of Bankruptcy Code § 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization is duly stayed pending such appeal. The transaction contemplated by the Stalking Horse Agreement may not be avoided, or costs or damages imposed on or awarded against any party in interest in this bankruptcy case under Bankruptcy Code § 363(n), or any other provisions of the Bankruptcy Code.

11. The Trustee is hereby authorized to execute such documents and do such acts as

are necessary or desirable to carry out the transaction contemplated by the terms and conditions of the Stalking Horse Agreement, the Bid Procedures, the Bid Procedures Order and this Order.

12. The Trustee shall be, and hereby is, authorized to take all such actions and execute and deliver to the Successful Bidder such other and further agreements and documents as may be necessary to consummate the Sale and effectuate the terms of this Order, without further Order of this Court.

13. This Order and the Stalking Horse Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors and assigns of the Successful Bidder, the Debtor, all other parties in interest.

14. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the interpretation, implementation and enforcement of this Order.

15. The failure specifically to include or to reference any particular provision of the Stalking Horse Agreement, the Bid Procedures or the Bid Procedures Order in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse Agreement and the Sale pursuant to the Bid Procedures and Bid Procedures Order be authorized and approved in its entirety.

16. The Stalking Horse Agreement, if applicable, and the Bid Procedures, and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's Estate.

17. The provisions of this Order are nonseverable and mutually dependent.

18. In the event of any inconsistency between this Order, on the one hand, and the

Stalking Horse Agreement or other documents related to the Sale, on the other hand, the terms of this Order shall control.

19. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order and the Stalking Horse Agreement, in all respects and to decide any disputes arising between the Trustee and the Successful Bidder.

20. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry.

Dated: New York, New York
            _____, 2024

                                            HONORABLE DAVID S. JONES
                                            UNITED STATES BANKRUPTCY JUDGE